JOHN S. LEONARDO
United States Attorney
District of Arizona
HEATHER H. SECHRIST
Assistant U.S. Attorney
Arizona State Bar No. 023099
Two Renaissance Square
40 N. Central Ave., Suite 1200
Phoenix, Arizona  85004
Telephone:  602-514-7500
Email: heather.sechrist@usdoj.gov
Attorneys for Plaintiff

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| United States of America, | Nos. CV 13-8199-PCT-DGC |
|---|---|
| Plaintiff, | CR 10-8036-PCT-DGC |
| vs. | **GOVERNMENT'S RESPONSE TO DEFENDANT'S MOTION UNDER SECTION 2255 TO VACATE, SET ASIDE OR CORRECT SENTENCE BY A PERSON IN FEDERAL CUSTODY (28 U.S.C. 2255)** |
| Richard Larry Self, | |
| Defendant. | |

Now comes the United States of America, by and through its undersigned attorneys, hereby responds to Defendant's Motion Under Section 2255 to Vacate, Set Aside or Correct Sentence by a person in Federal Custody.  The government submits that Defendant's motion can be denied outright without any evidentiary hearing regarding this matter as Defendant has failed to meet his burden of proof.    Alternatively, the government requests that the court set an evidentiary hearing to further develop the record and thereafter, allow supplemental briefing regarding these issues.

I.      **ISSUES PRESENTED:**

Defendant-movant (hereinafter "Defendant") is currently confined at a Bureau of Prisons facility in Littleton, Colorado.  On or about July 24, 2013, he filed a pro se Motion to Vacate, Set Aside or Correct Sentence, pursuant to 28 U.S.C. § 2255.  (CV 13-

8199-PCT-DGC; CR 10-8036-PCT-DGC; CR 118.)[1]  Therein he alleged eight grounds for relief: (1) Defendant's counsel was ineffective in failing to investigate the validity of three search warrants; (2) Defendant's counsel was ineffective in allowing Defendant to be indicted, tried, and convicted in violation of Defendant's right to be free from double jeopardy; (3) Defendant's counsel was ineffective in failing to challenge prosecutorial misconduct; (4) Defendant's counsel was ineffective for failing to object to irrelevant evidence of prior bad acts; (5) Defendant's counsel was ineffective when she failed to introduce evidence that others lived in Defendant's household, had access to Defendant's AOL account and use of the computer, and that of the five computers seized "only one was dirty"; (6) Defendant's counsel was ineffective because counsel refused to let the probation officer interview Defendant, members of Defendant's family, or any of Defendant's friends; (7) Defendant's counsel was ineffective by failing to present evidence that someone else could have committed the crime; and (8) The Court abused its discretion by failing to resolve the conflict between Defendant and Defendant's counsel and for not appointing new counsel.  (CV 2, 4.)  On November 4, 2013, United States District Judge David G. Campbell ordered the government to respond to Defendant's motion.  (CV 4.)  As further set forth below, Defendant's motion should be denied because counsel was not ineffective, and the Court did not abuse its discretion by failing to appoint new counsel.[2]

---

[1]  The abbreviation "CR" refers to the district court Clerk's Record from the underlying criminal conviction, CR 10-8036-PCT-DGC, and is followed by relevant document number(s).  The abbreviation "CV" refers to the Clerk's Record from CV 13-8199-PCT-DGC.  The abbreviation "RT" refers to the Reporter's Transcript of proceedings, and will be followed by relevant dates and page numbers.

[2]  Trial counsel, Jane McClellan, was contacted regarding these issues.  She advised that she would not respond to any matters that required the disclosure of privileged communications absent a court order, but was willing to respond if such court order were in place.  The government believes this Court can adequately address and thereafter deny Defendant's motion without any additional information from Ms. McClellan.  However, if this Court disagrees, the government requests that the Court set

## II.   FACTS:

### A.  FACTS REGARDING THE OFFENSES OF CONVICTION

On November 5, 2008, the Immigration and Customs Enforcement (ICE) Cyber Crimes Center Child Exploitation Section (C3/CES) received an e-mail at an undercover e-mail account providing a Universal Resource Locator (URL) for a web site advertising paid access to child pornographic image and video files for a monthly fee.  (RT 11/9/2010 5, 8.)  The web site was known as DreamZone. (RT 11/9/2010 5.)  An ICE agent accessed the URL and verified that it was an advertising web site for DreamZone that contained images of child pornography. (RT 11/9/2010 6.)  The advertising web site only had a sample of the images offered for sale and instructions on how to purchase the material.  (RT 11/9/2010 6-7.)  The ICE agent also verified that the advertising web site offered access to a payment web site to complete the payment for access to the member restricted portion of the web site.  (RT 11/9/2010 7.)

On November 6, 2008, the ICE agent, utilizing Site Sucker, a free program that downloads files all files contained on a web site in an automated manner, captured the contents of this advertising web site and purchased a membership to the DreamZone web site.  (RT 11/9/2010 19, 24-25.)  One month access was listed at $99.00.  (RT 11/9/2010 17.)  The transaction resulted in the ICE agent being granted access to the member restricted web site located at URL http://www.dreamzone.cc/portal.  (RT 11/9/2010 21-22.)  The ICE agent received a user name and password as a result of the transaction. (RT 11/9/2010 21-22.)  The user name was the e-mail address the ICE agent used during the undercover transaction and the password appeared to be randomly generated. (RT 11/9/2010 21-22.)  The ICE agent had to use both the user name and password to gain access to the member restricted web site.  (RT 11/9/2010 23.)

---

an evidentiary hearing requiring Ms. McClellan's attendance and testimony.

On December 16, 2008, ICE C3/CES obtained and executed a federal search warrant for the payment web site and the member restricted web site.  (RT 11/9/2010 26; CR 47-1.)  ICE C3/CES reviewed the evidence received as a result of this search warrant.  (RT 11/9/2010 27.)   The evidence obtained from the member-restricted web site included, among other things, web access logs and the entire content of the member restricted web site.  (RT 11/9/2010 27-28; CR 47-1.)   The web access logs tracked activity on the web site, recorded all requests processed by the server that contains the web site, and recorded downloads and uploads to the server.  (RT 11/9/2010 27-28.)

The evidence obtained from the member-restricted web site contained web access logs from approximately November 11, 2008 through November 20, 2008.  (CR 47-1.)  ICE C3/CES organized the web access logs by Internet Protocol (IP) address and any corresponding e-mail address to identify specific members of the member-restricted web site.  (RT 11/9/2010 30-32; CR 47-1.)  In addition, ICE C3/CES was able to extract the specific files from http://www.dreamzone.cc/portal that were identified in the web access logs and, therefore, match IP addresses with specific image files that were accessed from each IP address.  (CR 47-1.)   The IP address 75.217.66.167 and the e-mail address richardrimrock@AOL.com were included in the web access logs.  (11/9/2010 31-33; CR 47-1.)  A review of the web access logs revealed that the customer accessed a member restricted web site and downloaded 106 images of child pornography.  (CR 47-1.)  These images included a video involving a nude prepubescent female engaging in sexually explicit conduct in a bathtub, as well as a video involving a nude prepubescent female performing oral sex on a dog.  (CR 47-1.)

On January 28, 2009, ICE C3/CES issued an administrative subpoena to Cellco (d/b/a Verizon Wireless) for subscriber information for the IP address 75.217.66.167 for the date and time contained in the web access logs.  (RT 11/9/2010 32-33; CR 47-1.)  On February 13, 2009, Cellco (dba Verizon Wireless) identified Richard Self with a P.O. Box in Rimrock, Arizona, as the account owner.  (RT 11/9/2010 33-34; CR 47-1.)  On December 11, 2009, ICE C3/CES also issued an administrative subpoena to America

Online (AOL) for e-mail account richardrimrock@AOL.com.  (RT 11/9/2010 32, 34; CR 47-1.)  On December 11, 2009, AOL identified Richard Self with a P.O. Box in Rimrock, Arizona, as the account owner.  (RT 11/9/2010 34-35; CR 47-1.)

On May 26, 2009, database checks of the Motor Vehicle Division records, revealed a record for Richard Self, including a residential address of 5750 North Desert Pine Road, Rimrock, Arizona.  (CR 47-1.)  On December 23, 2009, the MVD database confirmed that Richard Self was still reporting that residence as his home address.  (CR 47-1.)  On November 15, 2009, ICE agents surveilled the premises.  (CR 47-1.)  They observed a truck with a license plate.  (CR 47-1.)  A check of the Arizona Department of Transportation databases indicated that the vehicle was registered to Richard Self at 5750 North Desert Pine Road, Rimrock, Arizona.  (CR 47-1.)

On January 13, 2010, ICE SA Christopher Shrable applied for a search, seizure, and forfeiture warrant for 5750 North Desert Pine Road, Rimrock, Arizona 86335.  (CR 10-4006MB)   The magistrate judge authorized the search, seizure and forfeiture warrant for the residence, and commanded that the warrant be executed before January 27, 2010.  (CR 10-4006MB.)   However, law enforcement was unable to execute the warrant due to inclement weather conditions.  (CR 10-4006MB.)  Therefore, on January 27, 2010, SA Shrable again applied for a search, seizure, and forfeiture warrant for 5750 North Desert Pine Road, Rimrock, Arizona 86335.  (CR 47-1.)  The supporting affidavit provided information regarding the investigation of the DreamZone web site and the subsequent identification of Richard Self at that residence.  (CR 47-1.)  It explained SA Shrable's knowledge of the characteristics of individuals involved in the receipt and collection of child pornography, including subscribers to child pornography web sites, stating that such individuals almost always maintain their child pornography in the privacy and security of their home, prefer to not be without their child pornography, and maintain their collections for several years.  (CR 47-1.)  The magistrate judge again authorized the search, seizure and forfeiture warrant for the residence.  (CR 47-1.)

On February 8, 2010, ICE agents, deputies from the United States Marshal Service/Flagstaff, as well as deputies from the Yavapai County Sheriff's Office executed a federal search warrant at the residence.  (RT 11/17/2010 204-205; CR 47-2.)   The search warrant authorized the agents to search for and seize items including computer media, documents, electronic media, CDs, DVDs, and thumb drives.  (RT 11/17/2010 205; CR 47-1.) No occupants or residents were encountered during the execution of the search warrant, although neighboring family members were encountered.   (RT 11/17/2010 206; CR 47-2.)  Law enforcement learned that Defendant was a truck-driver and that he and his wife were on a cross-country trucking trip to Florida.  (CR 47-2.) This information was consistent with the observations made during surveillance of Defendant's residence where ICE agents observed a semi-tractor/truck parked in front of the residence.  (CR 47-2.)

The residence was then searched.  (RT 11/17/2010 203-04.)  During the search, computer generated printouts/documents from a child pornography advertising web site were found within the home, underneath the master bathroom sink.  (RT 11/17/2010 210; CR 47-2.)  One printout was titled "YES!TOP50 LOLITA SITES" and written under the title was "ATTENTION CREDIT CARD HOLDERS! IF YOU NEED GREAT QUALITYLOLITA SITES CLICK HERE!".  (CR 47-2.)  At the bottom of this printout, the date of August 28, 2006, and the following URL was printed:  http://yes-top.com.  (CR 47-2.)  Images of child pornography were displayed on the printout that contained the URL of http://yes-top.com.  (CR 47-2.)  Also found at the residence was a colored photograph that depicted a nude pubescent female.  (CR 47-2.)

In addition to the aforementioned items found at the residence, a stack of printed documents that described and narrated events of children being raped and sexually abused by adults were found.  (RT 11/17/2010 209.)  The printed documents appeared to be edited by hand.  (RT 11/17/2010 209.)

ICE agents thereafter contacted Stewart Transportation, the trucking company that employed Defendant.  (RT 11/17/2010 174.)   Stewart Transportation confirmed that

Defendant was on a cross-country round-trip from Arizona to Florida driving a Kenworth semi-tractor/truck owned by Stewart Transportation.  (CR 47-2.)  ICE agents learned from Stewart Transportation when Defendant planned to return to Arizona.  (RT 11/17/2010 174.)  Stewart Transportation tracked the truck via GPS and gave the location of the truck as it traveled in real time.  (RT 11/17/10 174.)

On February 17, 2010, ICE SA John Koski applied for a search, seizure, and forfeiture warrant of the Kenworth semi-tractor/truck.  (CR 47-2.)  The supporting affidavit provided information regarding the investigation of the DreamZone web site and the subsequent identification of Richard Self and his residence.  (CR 47-1.)  It described the February 8, 2010, search of that residence, as well as the seizure of the computer generated printouts from a child pornography advertising web site, the photograph of the nude pubescent female, and the documents describing the sexual abuse of children.  (CR 47-2.)  It further detailed finding an empty Acer laptop computer box just outside the room where the photograph of the nude pubescent female and the documents relating to the sexual abuse of children were found, and Verizon Wireless documents showing the purchase of a Verizon Wireless mobile broadband device that was not located within the residence.  (CR 47-2.)  SA Koski explained that Verizon Wireless mobile broadband devices are used in conjunction with a lap top computer to access the Internet from virtually any location covered by Verizon Wireless.  (CR 47-2.)  SA Koski further stated that a preliminary digital examination of the seized electronic media found no images of child pornography but did reveal web site advertising banners related to child pornography web sites that were consistent with the print-outs found under Defendant's bathroom sink.  (CR 47-2.)

The supporting affidavit also explained that a representative from Stewart Transportation provided geographical location information relating to Defendant's Kenworth semi-tractor/truck.  (CR 47-2.)  The information was obtained via a GPS system installed on every Stewart Transportation semi-tractor/truck.  (CR 47-2.)  The

GPS information showed that on February 9 and 10, 2010, the approximate geographical location of the Kenworth semi-tractor/truck was Miami, Florida.  (CR 47-2.)

SA Koski also included information that on February 12, 2010, Cellco (d/b/a Verizon Wireless) provided information related to the mobile number on the Verizon Wireless documents showing purchase of the Verizon Wireless mobile broadband device and subscription for the service pursuant to an administrative subpoena.   (CR 47-2.) Verizon Wireless stated that the account was active, the name on the account was Richard Self, and the billing address was P.O. Box 144, Rimrock, Arizona.  (CR 47-2.)  It also provided information regarding IP addresses related to account activity showing that the mobile broadband service was being utilized during the course of the cross-country trip at different geographic locations across the United States.  (CR 47-2.)  SA Koski stated that this information was consistent with the GPS information provided by Stewart Transportation about the location of the Kenworth semi-tractor/truck during the cross-country trip.  (CR 47-2.)

SA Koski concluded with the information that he believed supported finding that Defendant displayed characteristics of individuals involved in the distribution, possession, receipt, and collection of child pornography.  (CR47-2.)  He stated that "the majority of individuals who collect child pornography have been found to travel with their collections of illicit material to protect their collections from discovery, theft, and/or damage, as well as to share and to further increase their collections by trading or exchanging with other like-minded individuals."  (CR 47-2.)   The magistrate judge authorized the search, seizure and forfeiture warrant for the Kenworth semi-truck/trailer. (CR 47-2.)

On February 18, 2010, ICE agents and officers from Arizona Department of Public Safety, stopped the Kenworth semi-tractor/truck operated by Defendant as it entered the Flagstaff area and executed the second federal search warrant. (RT 11/17/2010 174-76, 178.)  Defendant's wife was a passenger in the vehicle at the time of the search.  (RT 11/17/2010 179.)  As a result of this search, law enforcement

1   discovered and seized two Acer laptop computers, several compact disks, external media

2   storage devices and a Verizon Wireless air card.  (RT 11/17/2010 184, 187, 190, 200.)

3        The media seized from the tractor/truck was forensically examined.

4   (RT 11/18/2010 314.)   The forensic examiner found images of child pornography in

5   allocated space on a CD labeled "My Documents," a CD labeled "Rick's files," and a

6   Verbatim 4GB thumb drive, serial number serial number VIGB83118447BA, labeled

7   "stay out–info only."   (RT 11/18/2010 319-322.)   A total of 880 images of child

8   pornography were found on these pieces of media.  (RT 11/18/2010 383.)   The file date

9   stamps demonstrated the child pornography collection dated back at least five years, with

10   the oldest date stamp in 2006.  (RT 11/18/2010 320.)  The forensic examiner also found

11   child pornography in unallocated space on a second Verbatim 4GB thumb drive, serial

12   number VIGB83118445BA, two RiData 2GB thumb drives, and a Simpletech thumb

13   drive.  (RT 11/18/2010 324-25, 328, 331.)

14        The Acer laptop computers seized from the tractor/truck were also forensically

15   examined.  (RT 11/18/2010 334-336.)   One of the Acer laptop computers contained a

16   user-created account titled "Richard."  (RT 11/18/2010 336.) The computer had programs

17   installed that are used to search the Internet. (RT 11/18/2010 342.)   The computer

18   contained search terms that people commonly use when seeking child pornography, such

19   as "naked lolas" and "naked preteens."  (RT 11/18/2010 343.)  The computer had been

20   used to access the DreamZone web site.  (11/18/2010 346.)  The two Verbatim thumb

21   drives had been attached to the computer, and that some of the folders containing child

22   pornography had been opened.  (RT 11/18/2010 344-346.)  The computer contained a

23   fragment of an e-mail message in unallocated space that referenced the DreamZone web

24   site addressed to richardrimrock@aol.com.  (RT 11/18/2010 346-347.)

25        The forensic examiner also reviewed text document files found on one of the

26   RiData brand thumb drives, and the CD entitled "My Documents."  (RT 11/18/2010 350.)

27   There were a total of 40 different stories spanning 529 pages. (RT 11/18/2010 349-350,

28   355.)  They included:  "Lusting for Children," an 18-page document in which the main

character engages in sexual activity with minors after seeing child pornography on the Internet; "Help with Hidden Desires," a nine-page document in which the main character is a truck driver that engages in sexual activity with minors; and "My Inherited Family I," an 18-page document with a main character named "Rick" on leave from the Vietnam war that engages in sexual activity with minors.  (Exhibits 10A, 10B, 10C.)

B.  INDICTMENT

On March 9, 2010, a federal grand jury indicted Defendant on four counts of possession of child pornography, in violation of 18 U.S.C. §§ 2252A(a)(5)(B) and 2256. (CR 1.)  On September 21, 2010, a federal grand jury charged Defendant in a superseding indictment with three counts of transportation of child pornography, in violation of 18 U.S.C. §§ 2252A(a)(1) and 2256, and three counts of possession of child pornography, in violation of 18 U.S.C. §§ 2252A(a)(5)(B) and 2256.  (CR 35.)

C.  MOTION TO SUPPRESS

Before trial, Defendant moved to suppress all evidence seized from his residence arguing the information in the search warrant affidavit was stale and did not show probable cause.  (CR 47.)  Defendant further argued that all evidence subsequently seized from the search of the Kenworth semi-truck/trailer must also be suppressed as fruits of the poisonous tree.  (CR 47.)  The government responded that the motion to suppress should be denied because (1) probable cause existed to support the search warrant and the information within the search warrant affidavit was not stale, and (2) even if the search warrant lacked probable cause, the good faith exception applied.  (CR 56.)

After oral argument on the motion, this Court denied it, concluding that "the evidence contained in Agent Shrable's affidavit on January 27, 2010, was not stale, and that the magistrate judge reasonably found a fair probability that child pornography would be located at Defendant's residence."  (CR 69.)  This Court, therefore, found no basis to suppress the search of the tractor/truck because "the search of the house was proper," and held that "even if the Court were to conclude that the evidence in this case

was too stale to support probable cause, the motion to suppress would be denied based upon the good faith exception." (CR 69.)

### D. OTHER ACTS

Before trial, the government filed notice of several factual issues that it intended to introduce against Defendant. (CR 48.) The government asserted that the evidence was part of the crimes charged, and thus, not "other act" evidence as contemplated by Fed. R. Evid. 404(b), but nonetheless requested that the Court determine the admissibility of these facts prior to trial. (CR 48.) The notice included the government's intent to introduce evidence that Defendant authored stories about incest, sexual activity with minors, and child pornography, and uncharged pieces of media contained child pornography. (CR 48.) Defendant opposed introduction of this evidence. (CR 57.) This Court heard oral argument on each category of evidence at the final pretrial conference on November 10, 2010. (CR 74.) This Court thereafter concluded that this evidence, as redacted by the government and subject to certain limitations, satisfied the admissibility requirements of Rule 404(b) and was not excluded by Rule 403.[3]

### E. MOTION FOR NEW COUNSEL

On November 10, 2010, approximately one week before trial, this Court held its Final Pretrial Conference. Defendant told Ms. McClellan that day he wanted a new attorney. (RT 11/10/2010 2-3.) This Court asked Defendant why he needed a new lawyer. (RT 11/18/2010 3.) Defendant told this Court that he was concerned that Ms.

---

[3] The government agreed to present only three stories into evidence and redact them heavily. (CR 67.) The government also proposed to have the forensic examiner testify as to the number of different stories of similar content, totaling 529 pages, located on the storage media found with Defendant's lap top. (CR 67.) The government further proposed that another law enforcement officer would testify that a stack of printed stories were found in Defendant's residence during the search, that they concerned sexual activity with children, and that some of them appeared to be edited by hand. (CR 67.) The government also indicated that a family member would testify that Defendant portrayed himself as the author. (CR 67.)

McClellan did not tell him that she thought he was innocent, and did not follow up on information he told her.[4]  (RT 11/18/2010 5.)  This Court then asked Ms. McClellan whether she felt she could represent Defendant at trial.  (RT 11/10/2010 6.)   Ms. McClellan stated that she could, and that every investigative lead had been pursued.  (RT 11/10/2010 6.)

This Court indicated that it was inclined to deny Defendant's request for a new attorney but gave Defendant another opportunity to express his concerns.  (RT 11/10/2010 8-9.)   Defendant then indicated his concern that Ms. McClellan had not investigated the prosecution witnesses to effectively cross-examine them.   (RT 11/10/2010 9.)   Defendant stated he was concerned about three government witnesses: (1) Sherry Self (his ex-wife); (2) Bea Sehm (his step-daughter); and Dean Sehm (his step-daughter's husband).  (RT 11/10/2010 10.)    Ms. McClellan responded that Sherry Self had refused an interview, that the government advised it would not call Bea Sehm, and that she was unable to contact Dean Sehm. (RT 11/10/2010 11.)

This Court then asked Defendant what he believed Ms. McClellan could do to undercut the testimony of Dean Sehm.  (RT 11/10/2010 12.)  Defendant stated that Ms. McClellan could have contacted his other children that live nearby, including his step-son, Jim Holdgrafer.  (RT 11/10/2010 12.)  Ms. McClellan advised that Jim Holdgrafer had been interviewed on several occasions, that the defense had talked to his daughter in person, and expressed her opinion they would not be favorable witnesses.   (RT 11/10/2010 14-15.)  This Court concluded it did not have a basis for changing counsel, and denied Defendant's request.  (RT 11/10/2010 16-17.)

---

[4] Defendant claimed that his wife went into the back of the semi-tractor/truck when they were pulled over by law enforcement prior to execution of the search warrant, and that his thumb drive case was missing two to three weeks prior and then showed up in the truck.  (RT 11/10/2010 6.)

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

F.  TRIAL

On November 19, 2010, after hearing all of the evidence, the jury convicted Defendant of all counts in the superseding indictment.  (CR 89-90.)

G.  SENTENCING

The United States Probation Office (USPO) prepared a presentence report and calculated Defendant's total offense level as 40 and his criminal history as category I. (PSR ¶ 69.)  The PSR stated that the applicable statutory provisions and the sentencing guidelines provided for a term of 135 to 168 months' imprisonment.  (PSR ¶ 69.)  The PSR recommended that the district court sentence Defendant to 135 months' imprisonment for counts 1, 2, and 3 and 120 months' imprisonment for counts 4, 5, and 6, all to be served concurrently and followed by a lifetime term of supervised release.  (PSR p. 19-22.)

On March 14, 2011, sentencing occurred.  (CR 95.)  This Court rejected the defendant's request for a downward departure.[5]  (RT 3/14/2011 6.)  The district court then heard argument from both parties regarding the appropriate sentence, and reviewed the 18 U.S.C. § 3553 (a) factors and explained its analysis.  (RT 3/14/2011 10-11.) Defendant was thereafter sentenced to a 135-month term of imprisonment followed by a lifetime term of supervised release as to counts 1, 2, and 3, all to be served concurrently, and 120 months as to counts 4, 5, 6, also to be served concurrently.  (RT 3/14/2011 17.)

H.  APPEAL

Defendant filed a timely notice of appeal on March 21, 2011.  (CR 98.)  On October 7, 2011, Defendant filed his opening brief in the Ninth Circuit Court of Appeals

_____

[5] Before sentencing, Defendant argued that a downward departure pursuant to United States Sentencing Guidelines Manual §§ 5H1.4 and 5K2.0 was warranted based upon his age, health, and background.  (CR 93.)  Defendant also argued for a below-guideline sentence if the district court had a policy disagreement with the child pornography guidelines because they were not based upon careful study or empirical analysis.  (CR 93.)

- 13 -

1  in which he argued: (1) that this Court had erred when it denied Defendant's motion to
2  suppress; (2) that this Court had erred when it imposed a sentence that was procedurally
3  erroneous; and (3) that this Court had erred when it imposed a sentence that substantively
4  unreasonable.  (C.A. No. 11-10128, Dkt. 14-1.)  On August 27, 2012, the Ninth Circuit
5  affirmed the judgment in an unpublished opinion, and the mandate issued on September
6  19, 2012.  (CR 117.)

7  **III.    LAW AND ARGUMENT:**

8          A federal prisoner may seek relief under 28 U.S.C. § 2255 if (1) his sentence was
9  imposed in violation of the United States Constitution or the laws of the United States;
10  (2) the sentencing court had no jurisdiction to impose the sentence on the prisoner; (3) the
11  sentence imposed exceeded the maximum sentence authorized; or (4) the sentence is
12  "otherwise subject to collateral attack." § 2255(a).  A sentence is "otherwise subject to
13  collateral attack" when it contains "a fundamental defect which inherently results in a
14  complete miscarriage of justice."  Davis v. United States, 417 U.S. 333, 346 (1974)
15  (quotation marks and citation omitted).

16          A § 2255 petition is an "extraordinary remedy," however, and "'will not be
17  allowed to do service for an appeal.'"  Bousley v. United States, 523 U.S. 614, 621
18  (1998) (quoting Reed v. Farley, 512 U.S. 339, 354 (1994)).  A prisoner may not raise a
19  claim that has already been resolved on direct appeal.  Egger v. United States, 509 F.2d
20  745, 748 (9th Cir. 1975).  If a prisoner could have raised a claim on direct appeal but did
21  not do so, he has "procedurally defaulted" on that claim and cannot present it in a § 2255
22  petition unless he shows (1) cause for failing to raise it on direct appeal and "actual
23  prejudice" from that failure or (2) that he is "actually innocent."  Bousley, 523 U.S. at
24  622; United States v. Braswell, 501 F.3d 1147, 1149 (9th Cir. 2007).  "Cause" is "some
25  objective factor external to the defense" that impeded a prisoner from properly raising the
26  claim in the lower court.  Murray v. Carrier, 477 U.S. 478, 488 (1986).  A prisoner
27  suffers "actual prejudice" if an alleged error "worked to his *actual* and substantial
28  disadvantage, infecting his entire trial with error of constitutional dimension."  United

States v. Frady, 456 U.S. 152, 170 (1982).   A prisoner is "actually innocent" for procedural default purposes if the alleged constitutional violation he seeks to raise "has probably resulted in the conviction of one who is actually innocent."   Carrier, 477 U.S. at 496.

A prisoner is not entitled to an evidentiary hearing on his habeas claim if "the motion and the files and the records of the case conclusively show that [he] is entitled to no relief."   28 U.S.C. § 2255(b).   This Court may deny a hearing if a prisoner's allegations, "viewed against the record, fail to state a claim for relief or are 'so palpably incredible or patently frivolous as to warrant summary dismissal.'"   United States v. McMullen, 98 F.3d 1155, 1159 (9th Cir. 1996) (quoting Marrow v. United States, 772 F.2d 525, 526 (9th Cir. 1985) (internal quotation marks omitted)).   To earn the right to a hearing, a prisoner must "allege specific facts which, if true, would entitle him to relief." McMullen, 98 F.3d at 1159.

A.  DEFENDANT'S TRIAL COUNSEL WAS NOT INEFFECTIVE

In Ground One, Two, Three, Four, Five, Six, and Seven of his motion, Defendant alleged ineffective assistance of counsel.   Based upon the record set forth above, Defendant's motion should be summarily dismissed and/or denied.   Defendant's counsel was not ineffective, and Defendant suffered no prejudice.

To prevail on a claim of ineffective assistance of counsel, a prisoner must prove that (1) his counsel's performance fell below an objective standard of reasonableness, and (2) the deficiency in counsel's performance prejudiced him.   Strickland v. Washington, 466 U.S. 668, 688, 692 (1984); United States v. Kwan, 407 F.3d 1005, 1014 (9th Cir. 2005).   In evaluating the reasonableness of counsel's performance, this Court "must be highly deferential."   Strickland, 466 U.S. at 689.   Because this Court must evaluate counsel's actions from counsel's perspective at the time of trial, "without the distorting effects of hindsight," this Court "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance."   Id.   In evaluating whether counsel's actions prejudiced the prisoner, this Court must determine

whether a "a reasonable probability exists that "but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694. A reasonable probability is a "probability sufficient to undermine confidence in the outcome." Id. In resolving a prisoner's ineffective assistance claim, this Court need not address the components of the claim in any particular order and need not address both components if the prisoner does not satisfy one of them:

> [A] court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies. The object of an ineffectiveness claim is not to grade counsel's performance. If it is easier to dispose of an ineffectiveness claim on the ground of sufficient lack of prejudice, which we expect will often be so, that course should be followed.

Id. at 697; accord Williams v. Calderon, 52 F.3d 1465, 1470 n.3 (9th Cir. 1995).

     1. *Ground One: Ineffective Assistance; Failure to Investigate Search Warrant*

In Ground One, Defendant contends he received ineffective assistance of counsel when his trial and appellate counsel failed to investigate the search warrants issued on the residence and the truck he was driving. (CV 2 at 1.) Defendant's counsel was not ineffective, and Defendant was not prejudiced.

Contrary to Defendant's claim, defense counsel investigated the search warrants that were issued on the residence and the truck he was driving. This is evident because McClellan filed a motion to suppress arguing the invalidity of the search warrants. (CR 47.) Specifically, Ms. McClellan argued that all evidence seized from Defendant's residence should be suppressed because the search warrant affidavit was stale and did not show probable cause, and that all the evidence seized from the search of the Kenworth semi-truck/trailer must be suppressed as fruits of the poisonous tree. (CR 47.) This Court denied the motion, and its denial was raised on appeal. (CR 69; C.A. No. 11-10128, Dkt. 14-1.) Thus, Defendant's claim that his counsel failed to investigate the validity of the search warrants is meritless.

1    Nevertheless, Defendant maintains that counsel should have challenged the search

2    warrants on an alternative basis.  (CV 2 at 1-2.)  Essentially, he argues that the search

3    warrant for his residence was invalid because the magistrate judge "reissued a second

4    warrant" based upon an affidavit identical to the first warrant.[6]  (CV 2 at 1.)  There is no

5    legal support for his claim.  Nothing requires that a second affidavit set forth additional

6    facts beyond those contained in the first affidavit.  The issue is simply whether probable

7    cause still existed to justify the second search warrant.  The magistrate judge found that it

8    did.  (CR 47-1.)  That decision was affirmed by this Court and the Ninth Circuit.  (CR 69,

9    117.)  Thus, Defendant's counsel was not ineffective in failing to raise this argument, and

10    Defendant was not prejudiced.

11    Defendant also argues that the search warrant was not properly executed because a

12    copy of the warrant, its attachments, and its affidavit were not presented to his son at the

13    outset of the execution of the search warrant.  (CV 2 at 1-2.) The defendant contends,

14    based on United States v. Gantt, 194 F.3d 987 (9th Cir. 1999), that a warrant must be

15    presented at the outset of a search.  (CV 2 at 2.) However, Gantt was overruled by United

16    States v. Grubbs, 547 U.S. 99 (2006).  There, the Supreme Court explained that:

18    Neither the Fourth Amendment nor Rule 41 of the Federal Rules of
      Criminal Procedure imposes such a requirement.  See Groh v. Ramirez, 540
19    U.S. 551, 562, n. 5, 124 S.Ct. 1284, 157 L.Ed.2d 1068 (2004). "The
      absence of a constitutional requirement that the warrant be exhibited at the
20    outset of the search, or indeed until the search has ended, is . . . evidence
      that the requirement of a particular description does not protect an interest
21    in monitoring searches." United States v. Stefonek, 179 F.3d 1030, 1034
22    (7th Cir. 1999) (citations omitted).  The Constitution protects property
      owners by not giving them license to engage the police in a debate over the

26    [6]  The magistrate judge found probable cause existed to search the defendant's
      residence on both January 13, 2010 (the date the first search warrant was authorized) and
27    January 27, 2010 (the date the second search warrant was authorized).  Law enforcement
      applied for the second search warrant after the first search warrant was not executed
28    within 14 days.

1
2
3

    basis for the warrant, but by interposing, ex ante, the deliberate, impartial judgment of a judicial officer between the citizen and the police, and by providing, ex post, a right to suppress evidence improperly obtained and a cause of action for damages.

4
5
6
7
8
9
10

Id. at 99 (internal quotation and citation omitted).  Thus, the Grubbs opinion clearly states that neither the Fourth Amendment nor Rule 41 imposes a requirement that the warrant be presented prior to the search.  Moreover, there is no requirement that the affidavit or attachments to a search warrant be presented at the time the warrant is executed.  United States v. Hurwitz, 459 F.3d 463, 472 (2006) (no constitutional mandate that an executing officer possess or exhibit the affidavit or any other document incorporated into the warrant at the time of the search in order for the warrant to be valid).

11
12
13
14
15
16
17
18

    Defendant's argument also fails because Defendant and his wife and were on a cross-country trucking trip to Florida when the search warrant was executed, and no occupants or residents were encountered.  (RT 11/17/2010 206; CR 47-2.)  The only persons encountered by law enforcement were neighboring family members.  There is no requirement that a search warrant be presented to a non-occupant caretaker, neighbor and/or family member when a residence is unoccupied at the time it is executed.[7]  Thus, Defendant's counsel was not ineffective in failing to raise these arguments, and Defendant was not prejudiced.

19
20
21
22
23

    Finally, Defendant argues that his counsel was ineffective by failing to move to suppress evidence seized from his home, vehicles and person based upon a number of other alleged constitutional violations.  (CV 2 at 2-4.)  Specifically, Defendant claims that his Fourth Amendment rights were violated when he was detained without any Miranda

24
25
26
27
28

    [7]  It should be noted, however, that the record indicates that, contrary to Defendant's claim, a copy of the search warrant may have been shown to Defendant's step-son before he unlocked Defendant's residence for law enforcement.  (RT 4/12/2010 19; RT 11/17/2010 206.)  Law enforcement also left a copy of the search warrant at the residence, as well as SA Koski's business card.  (RT 11/17/2010 212.)

warning, when his person was searched and his personal property was seized, and when his ex-wife was detained and her person and property was searched.  (CV 2 at 2-4.)  His argument is unsupported. Defendant's counsel was not ineffective in failing to raise these arguments, and Defendant was not prejudiced.

Officers executing a search warrant for contraband have "the limited authority to detain the occupants of the premises while a proper search is conducted." Michigan v. Summers, 452 U.S. 692, 705 (1981).  The detention of an occupant is warranted "because the character of the additional intrusion caused by detention is slight and because the justifications for detention are substantial." Muehler v. Mena, 544 U.S. 93, 98 (2005) (citing Summers, 452 U.S. at 701-05).  Thus, Defendant and his ex-wife were lawfully detained during the execution of the search warrant.

Miranda warnings were not required.  Miranda applies only to "custodial interrogation." Miranda v. Arizona, 384 U.S. 436, 444 (1966).  It is not triggered at detention. Id.  Therefore, no constitutional violation occurred when Defendant was detained without being provided Miranda warnings.[8]

There is no evidence in the record that Defendant was searched at the time the search warrant for his Kenworth semi-truck/trailer was executed.  However, if there was a search of Defendant's person, no evidence resulting from it was admitted at trial.[9] Therefore, Defendant suffered no prejudice, and is unable to get relief under § 2255 for this claim.

Finally, Defendant also cannot assert his ex-wife's Fourth Amendment rights. United States v. Valdovinos, 743 F.2d 1436, 1437 (9th Cir. 1984) (no standing to raise the rights of other persons whose rights may have been violated).

---

[8] In addition, the government did not elicit any testimony that Defendant made statements to law enforcement.  Therefore, Defendant suffered no prejudice, and is unable to get relief under § 2255 for this claim.

[9] The government does not concede that Defendant was searched unlawfully.

- 19 -

1    　　　**2.**　　*Ground Two: Ineffective Assistance; Double Jeopardy*

2    　　　In Ground Two, Defendant contends he received ineffective assistance of counsel

3    when his counsel allowed him to be indicted, tried and convicted in violation of his right

4    to be free from double jeopardy.  (CV 2 at 5.)  Defendant's counsel was not ineffective,

5    and Defendant was not prejudiced.

6    　　The Double Jeopardy Clause does not prohibit the government from prosecuting a

7    defendant for multiple offenses in a single prosecution.  <u>Ohio v. Johnson</u>, 467 U.S. 493,

8    500 (1984); <u>United States v. Kuchinski</u>, 469 F.3d 853, 859 (9th Cir. 2006). The

9    government, however, bears the burden of establishing multiple counts by charging and

10   proving separate offenses.  <u>See</u> <u>United States v. Schales</u>, 546 F.3d 965, 978 (2008) (citing

11   <u>United States v. Planck</u>, 493 F.3d 501, 504–05 (5th Cir. 2007)).  The government may

12   charge the defendant in a child pornography case with separate counts for each type of

13   material or media possessed.  <u>Schales</u>, 546 F.3d at 979.  In cases involving receipt of

14   child pornography, there is no double jeopardy violation when receipt of child

15   pornography downloaded from the internet is distinctly charged from possession of child

16   pornography involving images transferred to and stored on compact discs.  <u>Id</u>.

17   　　　Defendant was charged in the superseding indictment with three counts of

18   transportation of child pornography, and three counts of possession of child pornography.

19   (CR 35.)  Each transportation charge alleged that Defendant transported a separate image

20   of child pornography, and each possession charge alleged that Defendant possessed a

21   separate media storage device that contained at least one image of child pornography.

22   (CR 35.)  None of the images alleged in the possession counts were the same as those

23   alleged in the transportation counts.[10]  (CR 35.)  Thus, Defendant was convicted of

24   separate and distinct charges, and no double jeopardy concerns were implicated.

25   ────────────────────

26   　　　[10] Count 1 alleged that Defendant transported a video entitled "(pthc) Izzy 02.avi";

27   Count 2 alleged that Defendant transported an image entitled "3-10.jpg"; and Count 3

28   alleged   that   Defendant   transported   an   image   entitled
"dogg_78956_pthc_ptsc_9yo_jenny_sucking_daddys_dog6_naked._look_at_her_lil_puss

1      *3.  Ground Three: Ineffective Assistance; Prosecutorial Misconduct*

2          In Ground Three, Defendant contends he received ineffective assistance of counsel

3   when Defendant's counsel failed to challenge prosecutorial misconduct.[11]  (CV 2 at 7.)

4   Defendant argues that his counsel was ineffective by failing to show that prosecutorial

5   misconduct occurred when the government introduced evidence that stories about incest,

6   sexual activity with minors, and child pornography were found on the media seized

7   during the search of the truck.  (CV 2 at 7.)  His argument fails.  No prosecutorial

8   misconduct occurred.

9          Prior to trial, the government noticed its intent to admit evidence that Defendant

10  authored stories about incest, sexual activity with minors, and child pornography.  (CR

11  48.)  Defense counsel opposed introduction of the evidence.  (CR 57.)  This Court heard

12  oral argument on the issue, and indicated its concern that a jury reviewing the stories

13  would convict Defendant because of their highly offensive and troubling nature.  (CR

14  70.)  The government agreed to redact the stories, and carefully limit the testimony

15  regarding their content.  (CR 67.)  This Court found that the proposal by the government

16

17  _____

18  y_122_835lo.jpg";  Count 4 alleged that Defendant possessed a compact disc (CD 1) that

19  contained an image entitled "image943[1].jpg";  Count 5 alleged that Defendant

20  possessed a compact disc (referred to as CD 2) that contained an image entitled
    "m_p_1.jpg"; and Count 6 alleged that Defendant possessed a Verbatim 4GB USB thumb

21  drive that contained an image entitled "22_03797_9120522641286_122_2141lo.jpg".

22  (CR 35.)

23

24      [11]    Defendant alleges a number of instances where he believes prosecutorial
    misconduct occurred.  Some of his arguments overlap with those made in other grounds.

25  Defendant again argues that he was convicted of both the greater and lesser included

26  offenses, that the second search warrant for the residence was "re-issued" without new
    probable cause, and that the affidavit and attachments were not provided at the time the

27  search warrant for his residence was executed.  (CV 2 at 7-11.)  For the reasons described

28  *supra*, these claims are meritless, and, thus, no prosecutorial misconduct occurred.
    Defendant's remaining arguments will be discussed herein.

1   would eliminate the prospect of the jury reading graphic descriptions of sexual

2   molestation of children and of bestiality.  (CR 70.)   This Court required that the

3   government not suggest the stories were autobiographical.  (CR 70.)

4          The government called HSI SA David Potosky, a forensic examiner, as a witness

5   at trial.  (RT 11/18/2010 309.)  SA Potosky testified that he found stories on two pieces

6   of media seized from Defendant's tractor/truck, CD 1 and the RiData thumb drive.  (RT

7   11/18/2010 350.)  The government asked whether the stories appeared to be fictional, and

8   SA Potosky testified that "they do appear to be fictional."  (RT 11/18/2010 350.)  The

9   government then asked SA Potosky to describe three of the stories.  (RT 11/18/2010 350-

10  355.)   SA Potosky then described the three stories as proposed pre-trial by the

11  government, and as this Court authorized.[12]  (RT 11/18/2010 350-355.)  The three stories

12  were admitted into evidence over defense counsel's objection.[13]  (RT 11/18/2010 350-

13  355.)  SA Potosky further testified that he found 40 different fictional stories with a total

14  of 529 pages on the media.  (RT 11/18/2010 355.)  SA Potosky testified that they were of

15  similar content to the three described.  (RT 11/18/2010 355.)

16         At the conclusion of SA Potosky's testimony, this Court read a limiting instruction

17  instructing the jury that the evidence was admitted only for the limited purpose of being

18  considered on the question of the defendant's knowledge and for no other purpose.  (RT

19  11/18/2010 386.)  This Court read a similar instruction at the conclusion of the trial.  (RT

20  11/19/2010 455.)

21

22  _____

23

24         [12]  For example, SA Potosky read the unredacted portion of "Lusting for Children,
    by Richard Self."  (RT 11/18/2010 351.)  He was then asked to describe the redacted
25  portion of its content.  (RT 11/18/2010 352.)  SA Potosky testified, "This is an 18-page
    document and the main character engages in sexual activity with several young children."
26  (RT 11/18/2010 352.)

27
           [13]  Each story had been redacted as proposed pre-trial by the government, and
28  authorized by this Court.  (Trial Exhibits 10A, 10B, and 10C.)

"When prosecutorial misconduct is called in question, the issue is whether, considered in the context of the entire trial, that conduct appears likely to have affected the jury's discharge of its duty to judge the evidence fairly." United States v. Simtob, 901 F.2d 799, 805 (9th Cir. 1990). Here, the government followed this Court's directives to eliminate concerns of unfair prejudice. During the course of trial, two limiting instructions were given regarding this evidence.[14] (RT 11/18/2010 386; RT 11/19/2010 455.) Given these precautionary measures, no unfair prejudice occurred, much less prosecutorial misconduct.

Defendant also argues that his counsel was ineffective for failing to show that prosecutorial misconduct occurred "by not investigating and providing the evidence that others were using the petitioner computer to search for Lolita sites." (CV 2 at 8.) This argument is meritless. No evidence on the seized media suggested that any person other than Defendant used his computer to search for Lolita sites. Furthermore, the government provided his expert 11 items of evidence, including his computer and the seized external media, to forensically examine.[15]

---

[14]  Defendant alleges no limiting instruction was given after the government's opening, wherein the stories were mentioned. However, prior to the government's opening, this Court advised the jury that an opening statement is not evidence. (11/17/2010 147.) Ms. McClellan also stated in her opening that evidence regarding stories would be admitted at trial. (11/17/2010 166-167.) Ms. McClellan further stated Defendant was not on trial for the possession of these stories, nothing illegal about their possession, and that they are only relevant to the government's argument about knowledge. (11/17/2010 166-167.)

[15]  McClellan hired Tami Loehrs to forensically examine the evidence. Ms. Loehrs report stated in her report that she found evidence on Defendant's lap top "that the user did, at one time, have images of child pornography saved on the Acer computer and did visit additional child pornography related sites." (CV 2, Exhibit 4, pg. 4.) There is no indication in her report that she found any evidence that other persons were using Defendant's computer to search for child pornography. (CV 2, Exhibit 4.)

Defendant also claims that his counsel was ineffective in failing to show prosecutorial misconduct occurred when SA Shrable misrepresented facts and possibly perjured himself at the detention hearing.  (CV 2 at 9.)  This claim is meritless.  There is no evidence SA Shrable knowingly misrepresented facts or perjured himself, and his testimony could not have affected the trial's outcome because it occurred in a pre-trial proceeding.[16] (RT 4/12/2010 7-22.)

Defendant also claims that his counsel was ineffective in failing to allege prosecutorial misconduct because the government did not follow up with fingerprint testing.  (CV 2 at 9-10.)  This argument is also unsupported. The government performed fingerprint testing, and disclosed its results.  (CV 2, Exhibit 1.)  McClellan cross-examined ICE SA John Koski about those results at trial, and SA Koski testified that a fingerprint was found on a seized item of external media (a plastic case for a camera card) and that fingerprint was not Defendant's.  (RT 11/17/2010 214.)

Defendant also claims that his counsel was ineffective in failing to show prosecutorial misconduct when the government did not follow up with DNA testing.  (CV at 9-10.)  His argument fails.  DNA testing, at best, would have shown that someone else, at some point in time, touched the seized media.  This would not have changed the outcome.  Ms. McClellan cross-examined ICE SA Shrable about the fact that cellular material was found on some of the storage devices or adapters, and that no attempt was made by the government to obtain a blood sample from Defendant to complete the

---

[16] SA testified on direct examination that he spoke with Sharon Self shortly after the search of Defendant's residence.  (RT 4/12/2010 11.)  SA Shrable clarified on re-direct that he may have spoken with Ms. Self "after the second search warrant" and that the time frames between the search of the residence and the search of Kenworth semi-truck/trailer were so close that he could not accurately answer.  (RT 4/12/2010 20.)  SA Shrable also generally discussed what was found during the course of the investigation but never stated he was physically present at Defendant's residence when the search warrant was conducted.

1   testing.  (RT 11/18/2010 398.)  The jury still convicted Defendant on all counts in the

2   superseding indictment.

3       4.  *Ground Four: Ineffective Assistance; Bad Acts*

4       In Ground Four, Defendant contends he received ineffective assistance of counsel

5   when his counsel failed to object to evidence of other bad acts.  (CV 2 at 12.)  This

6   argument is meritless.  McClellan objected to the government's notice to admit other act

7   evidence, including the stories found in Defendant's residence and on the seized media,

8   and also objected to its introduction at trial.[17]  (RT 11/18/2010 350-55; CR 57.)  Thus,

9   McClellan was not ineffective and her actions did not prejudice Defendant.

10      5.  *Ground Five: Ineffective Assistance; Failure to Introduce: Computer Access*

11      In Ground Five, Defendant contends he received ineffective assistance of counsel

12  when Ms. McClellan failed to introduce evidence that others lived in his household, had

13  access to his AOL account and use of his computer, and that of the five computers seized

14  only one contained pornography, and it was located in unallocated space.  (CV 2 at 13-

15  16.)  His argument fails.  Ms. McClellan was not ineffective, and Defendant was not

16  prejudiced.

17      Ms. McClellan elicited evidence that others lived in Defendant's household and

18  could have accessed his AOL account when cross-examining the government's

19  witnesses.  In her cross-examination of government witness Dean Sehm, Ms. McClellan

20  elicited testimony that Defendant's ex-wife, Sherry Self, lived in his house while they

21  were married; that Defendant's neighbor had access to Defendant's house; that Defendant

22  was previously married to Mildred Self and that Mildred Self owned a computer; and that

23  Sherry Self and his daughter, Robin Self, would often accompany Defendant on trucking

24  trips for long periods of time.  (RT 11/17/2010 170-72.)  In her cross-examination of

25

26

27      [17]  Defendant's argument overlaps with those raised in Ground Three.  For this

28  reason, the government requests that this Court incorporate the arguments made in responding to Ground Three, *supra*, into its response to Ground Four.

government witness ICE SA John Koski, Ms. McClellan elicited testimony that none of the rooms in Defendant's residence were locked when the search warrant was executed and a fingerprint found on a seized item of evidence did not match Defendant's fingerprints.  (RT 11/17/2010 213-14.)  In her cross-examination of government witness Sherry Self, Ms. McClellan elicited testimony that a number of people had previously lived in Defendant's residence; that a number of people visited Defendant's residence; that six different people had keys to Defendant's residence; that Defendant was gone for extended periods of time because he was a truck driver; that both she and Robin Self would sometimes accompany Defendant on those trips; and that other persons drove Defendant's Kenworth semi-truck/trailer.   (RT 11/17/2010 260-65.)   In her cross-examination of government witness Richard Kaplan, Ms. McClellan elicited testimony that a person with Defendant's user name and password any person could access his AOL account.  (RT 11/17/2010 308.)  In her cross-examination of government witness ICE SA David Potosky, Ms. McClellan elicited evidence that SA Potosky did not have actual knowledge of who downloaded the child pornography; that SA Potosky did not know who inserted the thumb drives in the computer; that SA Potosky did not know who conducted the searches for child pornography on Defendant's computer; and that anyone using Defendant's account could have conducted the searches.  (RT 11/17/2010 384-85.)

Ms. McClellan was not ineffective when she did not to elicit testimony that images of child pornography were not found in allocated space on any seized computer.    It would not have changed the outcome.  The government did not charge Defendant with possessing child pornography on a computer.[18]  (CR 35.)

_____

[18]   The government never asserted child pornography images were found on any computer.  In fact, SA Potosky testified that Exhibit 5A, the computer with "Richard" as the user name, did not contain child pornography in saved or unallocated space.  (RT 11/18/2010 345.)   The computer was evidence that Defendant knowingly transported child pornography, and possessed it on the charged pieces of external media.  SA Potosky testified that during the forensic examination of Exhibit 5A he found Internet search

*6.  Ground Six: Ineffective Assistance; Probation Interview*

In Ground Six, Defendant contends he received ineffective assistance of counsel when McClellan refused to allow him, his family members or friends to be interviewed by the probation officer.  (CV 2 at 17.)  McClellan was not ineffective and her actions did not prejudice Defendant.

When a defendant challenges his sentence based on his attorney's failure to introduce mitigating evidence, the defendant must show there is a reasonable probability that the addition of the evidence would have changed his sentence.  Mak v. Blodgett, 970 F.2d 614, 619-20 (9th Cir. 1992).  Defendant alleges a number of reasons why Ms. McClellan was ineffective with regard to the Presentence Investigation Report and sentencing.  However, Defendant fails to show how this information would have changed his sentence.  This Court explained that it was imposing this sentence based upon the number of images Defendant possessed, the stories he possessed which demonstrate his interest in the sexual abuse, and his lack of remorse.  (RT 3/14/2011 10-11.)  There is nothing to suggest that any PSR interview with a member of Defendant's friends or family or any explanation regarding prior law enforcement contact would have changed the result.

Defendant also alleges that Ms. McClellan also refused to allow him to be interviewed.  His argument is belied by the record.  The PSR states that Defendant declined to be interviewed.  (PSR ¶ 52.)  Thus, Defendant was provided the opportunity to be interviewed, and chose not to participate.  Regardless, his participation in that interview would not have resulted in a lesser sentence.  This Court was concerned at the

---

terms associated with child pornography; evidence the charged Verbatim thumb drive containing child pornography (Exhibit 7F) was attached to the computer; evidence that folders containing child pornography on that thumb drive had been opened on the computer; evidence that its Internet browser accessed the DreamZone web site; and e-mail message fragments referencing the DreamZone web site were located in unallocated space.  (RT 11/18/2010 341-47.)

time of sentencing about Defendant's lack of remorse or acceptance of responsibility.  If Defendant had provided an interview, his lack of remorse and failure to accept responsibility would have only been more apparent.  This is evidenced by the letter Defendant wrote to this Court prior to sentencing.  (CR 100.)

### 7. *Ground Seven: Ineffective Assistance; Failure to Introduce: Other Perpetrator*

In Ground Seven, Defendant contends he received ineffective assistance of counsel when McClellan failed to present evidence that someone else could have committed the crime.  (CV 2 at 19.)[19]

Defendant argues that McClellan was ineffective because she failed to investigate the stories, failed to call defense witnesses, did not introduce evidence that computers could not have been found on lower bunk because they did not put them there, and did not challenge the character of prosecution witnesses.[20]  (CV 2 at 19-22.)  Defendant's argument fails.

Essentially, Defendant disagrees with Ms. McClellan's trial strategy.  Defendant also disagreed with that strategy at trial.  This is apparent in the discussion between Defendant and this Court that occurred the second day of trial.  Defendant told this Court that he wanted a new attorney because McClellan was not calling any witnesses on his behalf.  (RT 11/18/2010 236-237.)

---

[19]  Defendant's arguments overlap with those made in other grounds.  Defendant argues that McClellan failed to "strongly" object to admission of the stories, did not introduce evidence two of the computers found in his home did not contain child pornography, did not present evidence that other people had access to his computer and did not challenge SA Shrable for misleading the court at the detention hearing.  (CV 2 at 19-22.)  For the reasons described in Ground Three, Four and Five, *supra*, these claims are meritless. Defendant's remaining arguments will be discussed herein.

[20]  Defendant claims a witness would show he did not own a computer until May, 2008.  (CV 2 at 20.)

1    This Court asked Defendant to identify these potential witnesses.  (RT 11/18/2010

2    237.)    Defendant  identified  them  as  Robin  Self,  James  Holdfanger,  and  Karen

3    Holdfanger.  (RT 11/18/2010 237.)  Ms. McClellan stated they would not be helpful

4    because they could not say whether they knew there was any child pornography on those

5    computers, could not speak for the entire four-year period that the child pornography

6    downloaded, and would confirm that they did not put that child pornography on the

7    computers.[21]  (RT 11/18/2010 240-241.)  Ms. McClellan also indicated concerns about

8    evidence that could be elicited from them on cross-examination.  (RT 11/18/2010 240-

9    241.)  This Court denied Defendant's request to stop the trial and appoint a new attorney

10   because he could not conclude this was an improper strategy, and Defendant was not

11   receiving ineffective assistance of counsel.  (RT 11/18/2010 242-245.)  See United States

12   v. Mayo, 646 F.2d 369, 375 (9th Cir. 1981) (difference of opinion as to trial tactics does

13   not constitute denial of effective assistance).

14   Indeed, Ms. McClellan's trial strategy was not improper.  McClellan was

15   concerned  that  the  witnesses  would  have  testified  they  did  not  do  put  the  child

16   pornography on the seized media, and compromised his defense that someone else could

17   have committed the crime.  (RT 11/18/2010 240-241.)  Ms. McClellan was also aware of

18   additional  inculpatory  evidence  discovered  by  the  government  before  trial.    (RT

19   11/17/2010 22.)  This evidence included the fact that Defendant's name, address, social

---

[21]   Ms. McClellan focused her response on Robin Self and James Holdfanger, whom she interviewed.  Karen Holdfanger was not addressed.  However, it is unclear from the trial record what she would be called to testify about.  (RT 11/18/2010 240-41.) Defendant did not indicate that she would be able to testify to anything beyond what he believed Robin Self and James Holdfanger could testify about.  (RT 11/18/2010 237-39.) This included that Robin Self lived in his household during part of 2007 and up until 2008; that Robin Self had permission to drive his truck; that he rarely took his computer on the road; that he did not have his computer with him on February 6 until he returned to get his wife at her request and she brought his computer; and that he does not write well. (RT 11/18/2010 237-39.)

1   security number, credit card information, and bank information was provided to that host

2   of the DreamZone web site for the purpose of registration for the subscription.   (RT

3   11/17/2010 22.)   The government intended to introduce this evidence on rebuttal should

4   Defendant open the door.[22]   (RT 11/17/2010 23.)

5          Defendant was also not prejudiced.   There evidence obtained during the forensic

6   examination of the seized media was strong, as described throughout this response *supra*.

7   The outcome at trial would not have been different had Ms. McClellan argued that the

8   computers could not have been found on the lower bunk or attacked Sharon Self and

9   Dean Sehm's character.

10         B.  GROUND 8: ABUSE OF DISCRETION

11             *1.  Defendant Procedurally Defaulted on This Claim*

12         Defendant argues in Ground Eight that this Court abused its discretion by failing

13   to resolve the conflict between him and his counsel and for not appointing new counsel

14   prior to trial.   This is claim was not raised on direct appeal.   He has therefore

15   procedurally defaulted on this claim unless he can show cause and prejudice to excuse the

16   default, or that he is "actually innocent."   See Bousley, 523 U.S. at 622; Braswell, 501

17   F.3d at 1149.   Defendant contends that the cause for his failure to raise this claim on

18   direct appeal is because counsel failed to object and raise this claim on direct appeal.

19   Defendant cannot show that he was prejudiced by appellate counsel's failure to raise this

20   claim on direct appeal.   As discussed *infra*, these grounds for relief are meritless; thus, he

21   cannot argue ineffective assistance of appellate counsel as excusable cause for the default

22

23

_____

24         [22]   This was reiterated on the record by the government at the conclusion of its

25   case-in-chief.   (RT 11/18/2010 402.)   The government also stated that additional
     computer forensic analysis had revealed additional searches for child pornography web

26   sites on Defendant's computer, and additional images of child pornography on a thumb
     drive. (RT 11/18/2010 402.)   The government also indicated that it had shown defense

27   counsel the questions developed from that information that would be asked of Defendant
     on cross-examination.   (RT 11/18/2010 402.)

28

1   because counsel did not fall below an objective standard of reasonableness by not raising

2   these claims on appeal.  In addition, Defendant cannot show that he is actually innocent.

3       2.   *This Court Did Not Abuse Its Discretion In Denying New Counsel Request*

4       There was no legitimate basis for Defendant's request for new counsel.  United

5   States v. Torres-Rodriguez, 930 F.2d 1375, 1380 n. 2 (9th Cir. 1991), *abrogated on other*

6   *grounds*, Bailey v. United States, 516 U.S. 137 (1995); Brown v. Craven, 424 F.2d 1166,

7   1170 (9th Cir. 1970) (same) ("[A]n indigent defendant is entitled to appointed counsel,

8   but not necessarily counsel of his choice.").  Prior to trial, Ms. McClellan pursued every

9   investigative lead, spoke with potential defense witnesses, and hired a defense expert to

10  examine the seized media.  (RT 11/10/2010 6, 14-15; CV at 2, Exhibit 3.)  Thus, this

11  Court did not abuse its discretion when it denied Defendant's request for new counsel on

12  the eve of trial.  Indeed, Defendant received able and thorough representation from Ms.

13  McClellan, and Defendant has failed to show how he was prejudiced.

14  **IV.    CONCLUSION:**

15       For the reasons discussed, Defendant is not entitled to relief on any of the claims

16  raised in his motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255.

17  The motion should therefore be denied and dismissed with prejudice.

18       Respectfully submitted this 18th day of March, 2014.

19
                                    JOHN S. LEONARDO
20                                  United States Attorney
                                    District of Arizona
21

22                                   *s/Heather H. Sechrist*          .
23                                  HEATHER H. SECHRIST
                                    Assistant U.S. Attorney
24

25  / / /

26  / / /

27  / / /

28  / / /

1

**CERTIFICATE OF SERVICE**

2

3

  I hereby certify that on March 18, 2014, I electronically transmitted the attached

4

document to the Clerk's Office using the CM/ECF system for filing.

5

6

  I hereby certify that on this same date, I served the attached document by U.S.

7

mail, on the following, who may or may not be registered participants of the CM/ECF

8

System:

9

10

Richard Larry Self
# 30099-008

11

LITTLETON-CO-ENGLEWOOD-FCI

12

9595 W. Quincy Ave.
Littleton, CO 80123

13

14

 *s/Erica Lane* .

15

16

17

18

19

20

21

22

23

24

25

26

27

28