Richard Self 30099-008
Federal Correctional Institution
Englewood
9595 West Quincy
Littleton CO. 80123
Pro Se Litigant

| | |
|---|---|
| Richard Self | ) |
| | ) |
| Movent/Defendant | ) |
| | ) |
| V. | ) |
| | ) |
| United States of America | ) |
| | ) |
| Respondant | ) |

Case No. CV 13-8199-PCT-DGC
        CR 10-8036-PCT-DGC

**RESPONSE TO GOVERNMENTS RESPONSE TO PRISONER IN CUSTODY SECTION 2255 MOTION (28 U.S.C. §2255**

**NOW COMES** Richard Self Defendant/Movant (hereinafter Defendant), Pro Se. Hereby response to the Governments response to the Governments response to defendants motion under section 2255, to Vacate, Setaside, or correct sentence by a person in federal custody, 28 U.S.C. §2255.

Defendant will answer Governments Memorandum in the same order as original claims. Defendant will use same abbreviations used by Government."CR" refers to Court Clerks record from underlying criminal conviction. "CV" refers to the clerks record from "CV 13-8199-PCY-DGC. "RT" refers to repoters transcript of proceedings and followed by relivant dates and numbers.

Defendant will not go into facts of case, the court is aware of the facts in this case, and the Govenment has included some of them in their brief. Defendant will not waste Courts time or the space in this brief.

**GROUND ONE: INEFFECTIVE ASSISTANCE OF COUNSEL FOR NOT CHECKING THE LEGALITY OF THE WARRANTS, AND THE SEARCH AND SEIZURE.**

-1-

1    There were three Search, Seizure, Forfeiture warrants issued. The
2    first on January 13, 2010 (No. 10-4006MB) for the defendants Home.
3    This Warrant was never Executed, and was returned to the issuing
4    Magistrate. This Warrant became Void. On January 27, 2010 the
5    second Warrant was issued and executed 12 days later. This was a
6    Reissue of the first Warrant. A Warrant can not be reissued. See
7    **United states v. Lacy** 119 F.3d 742,745 (9th cir 1996); **United**
8    **states v. Grubbs,** 547 U.S. 90, 164 L.Ed.2d 195 n2 (2006) (citing
9    **Sgro v. United states,** 287 U.S. 206, 72 L.Ed 260 (1932)) (were it
10   states a Warrant unless executed becomes void, and that a second
11   Warrant is a new proceeding, which must have adequate support and
12   cannot be described as a reissue.
13
14                   CLASSIFIED TO SUPREME COURT DIGEST, LAWYERS EDITION
15                        (NECESSARY ADDITIONAL EVIDENCE)
16        A Search Warrant cannot be issued on the showing of probable
17   cause which formed the basis for the issuence for the first search
18   Warrant, after the first search warrant has become void, because
19   not executed and returned within the 10 days after its date. But
20   there must be additional proof of probable cause existing at the
21   time of issuing the second warrant.
22        Government is right the Magestrate reissued the Warrant using
23   the same probable cause as the first. Defense Counsel only made
24   reference to the probable cause being stale. The defendant is
25   stating that the plain language in both **Sgro** 287 **U.S.** and the
26   **Supreme Court Digest** is very unambiguous. The Same issue of
27   staleness was brought up in Appeal, but nothing of the reissue
28   facts.

1    The Government states there's no legal support for the

2   defendants claim but **Sgro 287 U.S.** and Supreme Court ruling

3   above say other wise. See <u>K-Mart Corporation V. Cartier Incorp-</u>

4   <u>oration,</u> 486 U.S. 281,291, 100 L.Ed.2d 313,313-17 (1998) In

5   assertaining the plain of [a] statute, the court must look to the

6   particular statutory language.

7        The second Warrant No. 10-04017MB issued on January 27, 2010

8   was therefore warrantless or illegal. So all seized evidence should

9   be suppressed.

10       Government state's that the defendant has no standing with

11  the claim the Warrant should be given at the outset of the search

12  and seizure by citing, <u>United States V. Grubbs,</u> 540 U.S. 90. 164

13  L.Ed.2d 195 (2006), saying this case overruled, <u>United States V.</u>

14  <u>Gantt,</u> 194 F.3d 987 (9th cir 1999). But if the Court would look at

15  <u>United States V. Hector,</u> 474 F.3d 1150, 1154 (9th cir 2009) "the

16  Supreme Court decided **Grubbs** 547 U.S. 90 specifically rejected the

17  policing rational, it is unclear whether **(Grubbs)** overruled the

18  Nineth Circuit precedent on the requirment to present a copy of the

19  Warrant to the owner of the premises at the time of the search.

20

21       In <u>United Staes V. Grubbs</u>, 540 U.S. 90 (2006) In a seperate

22  Opinion by Justice Souter, with JUstice Stevens and Ginsburg join,

23  Concuring in part and Concuring in Judgement. "it is true we have

24  declined to apply the Exclusionary Rule when police officers

25  reasonably relies on the judgement of a Magistrates faulty

26  judgement or sloppy practices. In <u>Groh V. Rameriz,</u> 157 L.Ed.2d 1068

27  The Court was careful to note that the right of an owner to demand

28  to see a copy of the Warrant before making way for the Police, had

not been determind (id at 562 n5) and remains undetermind today...
Showing an accurate Warrant reliably "assures the individual whose
property is search and seized of the lawful authority of the
executing officer, his need to search and limits of his powers.

So it would seem the Government use of a Fourth Circuit Case
**United States v. Huruitz,** 459 F.3d 463 (4th cir 2006) Stating
officers do not have to give the Warrant at the outset of the
search is still up in the air. With the Nineth Circuit case of
**United States V. Hector,** 474 F.3d 1150 (2009) Stating that the
"Notice" funtion of the Ninth Circuit is still in place.

The Government states it has the right to detain the owner
during a search under ruling by **Michigan V. Summers,** 452 U.S. 692
(1981) There are several differences in the summers case and the
case at bar. First the detainies were not searched until after the
Warrant was executed. Second the detainies were held in the home.
And third the Warrant in the case of Summers was for Contraband.
In the case at bar the defendant was immediately seperated from
his spouse. Defendant was ordered by ICE to remove all items from
pockets and place them on the hood of the patrol car. Defendant
was them patted down by Arizona Department of Public Safety (DPS)
then place in the back of a locked DPS patrol car. See (RT 11/17/
2010 223) and (CV 2 exhibit 4) with out his personal property
(license, credit cards, etc.) until the search was over. This was
a seizure not a detention. See **Williams V. County of Santa Barbara,**
272 F. Supp. 2d 995 (9th cir 2003) (citing **Ganwich V. Knapp,** 319
F.3d 1115,1122 (9th cir 2003) in Ganwich the ninth circuit held
that a detention during search violated the detainies Fourth

Amendment rights when officers held them in a waiting room, preventing them from going to the restroom unattended, preventing them from retreving their personal property. See **Merideth V. Erath, 182 F. Supp. 2d 964 (9th cir 2001)** as the Summers Court Recognized "Special Circumstances, or possibly a prolonged detention, might lead to a different conclusion in an unusual case. **Mich n21 100 S. Ct. at 2595.** While detention of occupants during the period of a search will under most circumstances prove reasonable, a detention maybe unreasonable in a particular instance either because the detention itself is improper or because, it is carried out in an unreasonable manner. **Merideth, F. Supp. 2d 979.** The Court finds it relevant that the search Warrant was not for contraband, but for evidence. The rule of detention does not necessarilly apply to a search Warrant authorized for evidence.

In the case at bar the search Warrants were for Evidence not contraband. All through the Warrants issued against the defendant state evidence.

The Government States even if they were wrong the would be granted the "Good Faith" exception. Agents Koski and Schrable are both trained in the writing and execution of search Warrants, that is why Agent Schrable was able to write a 36 page Affidavit, with 59 paragraphs, 12 additional pages with the attachements, 6 paragraphs and 28 subparagraphs, See Search And Seizure Warrants, No. 10-4006MB and No. 10-04017MB.

Agent Koski wrote a 54 page, 61 paragraph, plus 4 paragraphs with 25 subpapragraphs including attachments. It would seem that both Agents knew very well the proper contents of a Warrant and the

1   proper proceedure for executing a Warrant, and not be eligible for

2   the "Good Faith" exception.

3       Government States Warrants were for contraband but all through

4   all three of the Warrants it states evidence.

5       Finely Agents Koski and Leon at the end of the vehical search

6   came back to the patrol car and rifled through defendants wallet.

7   The Warrant was for the cab of the truck, not for the defendant,

8   In **United States V. Graham,** 638 F.2d 1111,1114 (9thcir) cert denide

9   450 U.S. 1034. a shoulder purse carried by a person at time he is

10  stopped lies within scope of Warrant authorizing search of his

11  person. Containers such as purses, while appended to body are so

12  closely associated with persons they are identified  with and

13  included within the concept of one's person. Again a show of

14  seazure. By searching person and personal propety of the person

15  that person would be seized

16  **GROUND TWO: INEFFECTIVE ASSISTANCE OF COUNSEL FOR FAILING TO SHOW**

17  **DOUBLE JEOPARDY.**

18

19      In construing a statute, the Court must first look at the

20  plain language used by Congress, and if the language of the statute

21  is unambiguous it is conclusive. **"ANY"** One or more with out

22  specification (pick any six you like). An unspecified quantity or

23  number. (Random House Webster's Dictionary. Second edition,

24  copyright 2001) So it would seem that **"ONE OR MORE"** as written in

25  **18 u.s.c** §2252, and **"ANY"** written in **18 U.S.C** §2252A would mean the

26  same thing   IN **UNITED STATES V. POLOUIZZI,** 546 F.3D 142 (2ND CIR

27  **2009)** Simultanious possession of multiple pornographic material may

28  yeild only one conviction. **United States V. Chiaradio,** 684 F.3d 265

-6-

279 (1st cir 2012) One who simultaneously possess a multitude of forbidden images, at a single time and in a sigle place will have committed only one offense...Does not provide any inkling that Congress intended to allow prosecutors to divide simultaneous possession by a single individual of several matters containing Child Pornography into multiple units of prosecution.

The Government is Citing **United States V. Schales, 546 F.3d 965,978 (2008) (citing United States V. Planck, 493 F.3d 501, 504-05 (5th cir 2007))** These are two different case's **Schales 546 F.3d** is a 2252 case and **Planck 493 F.3d** is a 2252A case Defendant was charged in a superseding indictment with 3 counts of Transportation 2252A (a)(1) and 2256, and 3 counts of possession 2252A (a)(5)(B) and 2256. Possession is the Lessor-included offense of transportation. See **United States V. Kennedy, 643 F.3d 1251 (9th cir. 2011)** it was argued that possession of child pornography is a lessor-included offense of transportation of child pornography, and Kennedy's dual conviction violated the double jeopardy clause of the Fifth Amendment. In reaching this conclusion the District Court relied on **United States V. Davenport, 519 F.3d 940 (9th cir 2008)** in which we held that possession of child pornography 2252A (a)(5)(B) is the lessor-included offense of receipt of child pornography 2252A (a)(2) because the crime of possession does not require [] proof of an element that the crime of receipt does not **519 f.3d at 945** (empheses omitted). Although we have not held that possession of child pornography is the lessor-included offense of transportation of child pornography, the Government has not appealed this determination, and therefore we need not reach the

1  issue here. We assume for the purpose of this appeal that the

2  District Court's analysis was correct. See **Carter V. United States,**

3  530 U.S. 255,257,261 (2000) Whether offense is Lessor-included

4  offense determined by textured comparison of statutory elements

5  because such test "Lends itself to certain and predictable outcomes.

6  In **Payne V. Virginia,** 468 U.S. 1062,1062 (1984)(per currion)

7  Double Jeopardy bars subsiquent prosecution for Lessor-included

8  offense following conviction of greater with also conviction of the

9  Lessor. See **United States v. Marquardt,** 786 F.2d 771, 778 (8th cir

10  1986); **United States v. ducan,** 850 F.2d 1104, 1108 (6th cir 1988)

11  Multiplicitous indictment might result in multiple sentence for one

12  crime and may suggest to jury that defendant committed several

13  crimes.

14

15     The Government states no double jeopardy concerns were

16  implicated, but in the Courts instructions to the jury states that

17  possession is the lessor-included offense of transportation. The

18  prosecution must have agreed with this because the prosecution

19  with the Defense counsel helped write the instructions for the jury.

20  The prosecution also helped write the verdict sheet which also

21  stipulates possion Lessor-included offense of transportation.

22     **GROUND THREE: INEFFECTIVE ASSISTANCE OF COUNSEL FOR NOT SHOWING**

23  **PROSECUTOR MISCONDUCT.**

24     The prosecuter showed misconduct when introduced the stories

25  found in the residence of the defendant, and on the media. The

26  prosecuter had other means to show knowledge, and used those other

27  means, as stated in (CR 31 1) "The defendants wife is also able to

28  identify other photographs on the various items   of electronic

1  media which demonstrates the defendants ownership of the media."

2  The only reason the prosecuter introduced the stories as evidence

3  was to show defendants proclivity as she calls it also on (CV 31 1).

4  This would also fall in line with her vindictive prosecution of the

5  defendant by using stories of truck drivers and military, knowing

6  this would enrage the jury. Knowing defendant was a truck driver,

7  and members of thee jury were veterans The soon to be Foreman of

8  the jury was a veteran of the war in Iraq

9      The prosecuter showed vindictiveness again when just prior to

10  Trial date (9/7/2010) she wrote a letter to defense counsel they

11  were going to supersede the indictment. Pre-trial had been set for

12  (9/17/2010) and trial on (10/12/2010)(CR 28 9/3/2010) included in

13  this letter was notice they were going to introduce the stories

14  an show a insect relationship between defendant and his daughter,

15  which she would never been able to do. All this because The

16  defendant refused to sign a plea agreement. The last paragraph

17  reads "I am hopeful that we can reach some sort of resatution

18  particularly in light of Mr. Self fully understanding the evidence

19  that the Government intends to introduce at trial" you can read

20  the vindictiveness through the whole letter. See **Neal V. Cain, 141**

21  **F.3d 207.214 (5th cir 1998)** "Vindictiveness maybe demonstrated

22  where a prosecuter brings additional charges against a defendant

23  to punish the defendant for his excercise of procedual rights"

24      Prosecutor superseded the indictment to 3 counts of 2252A (a)

25  (1) and 2256 and 3 counts of 2252A (a)(5)(B) were the the original

26  charge of possession held no manditory minimum, were the new charge

27  has a manditory minimum of 5 years.

28

1    The Prosecutor Knew Defendant had been elemenated by the

2  handwriting forensic expert, and excluded by fingerprints. So

3  prosecution refused to get the DNA test done, that was advised by

4  the Forinsic lab after finding Cellular Material on several items

5  see (CV 2 Exhibit 1) this was 28 cd's and some case's for SD cards

6  the excuse used by prosecution was there was no illegal matter

7  found on the items, and there was not time to get the test done

8  for they take up to months to years to get done. The items were

9  found in with the the items to said have the illegal matter on

10  them. Prosecution was notified by letter on 10/29/2010 (CV 2

11  exhibit 2). That would be 13 days before pre-trial and 20 days

12  before trial was to take place. See **Maryland V. King 186 L.Ed.2d**

13  **1, 25 (2013)** DNA Identification data base samples have been

14  processed in as few as two days in California, Although around 30

15  days have been average. The only reason prosecution did not want

16  to do the test was they would have shown Defendants actual

17  innocents. The Forinsic lab was ready to do the test, all they

18  needed was a purple top blood tube with Defendants blood, and a

19  letter from the United States Attorney in charge of case,

20  authorizing them to use the Cellular Material evidence.

21

22    Prosecution Showed misconduct when she represented the

23  Defendants wife as an Ex-wife, (CR 28) Marital privilege

24  memorandum. All through previous proceedings the Defendants wife

25  was all ways refered to as Ex-wife, were in actuality they were

26  still married on 11/17/2010 at trial. Defendant Richard Self

27  and Sharon Self were still Married. See Sharon Self testimony on

28  11/17/2010. Under the "Anti Marital Facts" privilege should not

-10-

have been allowed to testify. Prosecution knew they were still married and proceeded anyway with her testimony.

Government states in (CV 12 23) that there was no evidence that others used the computer to search for Lolita sites, not true, see (CV 2 Exhibit 4 4). Government also states no one but the Defendant used the computer or media, also not true see SA Potosky's testimony at trial, He states they could not say who was using the computer or the media.

**McFadden V. United States, 614 A.2d 11,15 (D.C. 1992)** On post conviction review, if no Pre-Trial findings were made, the Government must prove by clear and convincing evidence that the defendant was accorded representation at trial by an attorney who was prepared within the requisite range of competence. **Matthews V. United States, 459 A.2d 1063** Specifically, it must show that counsel (1) conferred with the defendant as often as necesarry and advised the client of his or her rights, (2) elicited from the defendant matters of defense and ascertained whether any potential defenses were available, and (3) conducted both factual and legal investigation sufficiently in advance to permit reflection and to determine whether matters of defense could develope. **Monroe V. United States, 389 A.2d 811 ID at 821.**

**GROUND FOUR: INEFFECTIVE ASSISTANCE OF COUNSEL FOR FAILING TO PROPERLY OBJECT TO "BAD ACTS" EVIDENCE AND SHOW PREJUDICE.**

Government is right defense counsel did object to the "Enextrecably intertwined and other acts" The Stories. But defense counsel only objected to them as "Cumilative", "repetative", and Misleading, when she could have shown the court there were

other means of showing possible ownership of the media. The pictures supposedly the same media, this would have been less prejudicial, and the pictures were being used at any rate. and were less predjudicial than stories of rape, incest, and sex with children. See **United States V. Johnson, 439 F.3d 884, 887 (8th cir 2006)** "to the extent the jury may have harbored doubts about whether defendant knew the file he downloaded contained child pornography, there was no doubt he knowingly possessed the highly objectionable printed material, a vacillating jurior told to consider the stories as evidence of propensity may have concluded defendants possession of the stories was sufficient to bridge any doubts about whether he knowing possessed child pornography. thus the Court could not say the improperly admitted evidence did not influence or had only slight influence on the verdict.

Defense counsel also failed to show that the name Richard Self could have been put there by someone else. Any one downloading the stories could just have easily entered the name to the stories. It would not be the first time the name Richard Self has been fraudulently used see **Jerigan V. Rayan No. 08-838-PHX-MHM (LOA) (2009) District of Arizona.** See also **United States V. Reynolds, 720 F.3d 865 (8th cir 2013)** Rule 404(b) excludes evidence of specific bad acts used to circumstantially prove that a person has a propensity to commit acts of that sort. In **Stanley V. Georgia, 394 U.S. 557, 22 L.Ed.2d 542 (1969)** On appeal the United States Supreme Court reversed and remanded. The seizure of obscene matter is a violation of the First, Fourth, and Fourteenth Amendments. So were inadmissible as evidence at trial. Justice

-12-

Black J. Concurred. Saying that he agreed with the Court that mere possession of reading matter...can not be made a crime...violating the First Amendment. **United States V. Waters, 627 F.3d 345 (9th cir 2010)** a defendants choice of reasing material will rarely have a particularly significant probative value. Attempts to use such evidence against a defendant must be viewed and reviewed with a careful and skeptical eye. **United States V. Miller 874 F.2d 1255 (9th cir. 1988)** Even though limiting instructions were given the cumulative effect of these errors made it more likely than not the JUry was influenced by the admission of prejudicial evidence. **United States V. Brooke, 4 F.3d 1480 (9th cir. 1993)** A trial Court must exclude evidence, even if relevent, if the probative value of the evidence is substantially outweight by the danger of unfair prejudice...Fed. R. Evid. 403. Fed. R. Evid. 404(b) where the evidence is of very slight, if any probative value, its abuse of discretion to admit it if there's even a modest likelihood of unfair prejudice.

**GROUND FIVE: INEFFECTIVE ASSISTANCE OF COUNSEL FOR FAILING TO INVESTIGATE AND INTRODUCE DOCUMENTARY EVIDENCE.**

Counsel did give information that others lived in the household and as many as six others had a key to the residence. But that is were she stopped. Counsel decided against Defendants wishes to not witnesses and introduce documentary evidence. To only show the Defendants lack of knowledge, and that others had access to the house and computer. But never once did she intrduce any evidence to that fact.

Defense counsel had evidence from AOL (net provider) see

(CV 2 Exhibit 3 and 5). Defense counsel had the report from defense forensic examiner that showed someone else was using the computer to search Lolita sites. Defense counsel had a copy of a receipt that showed Sharon Self (Shari) bought 6 USB thumb drives and a case for them, approximately one month before the search of the truck.

Defense counsel had witnesses that others were always in the Defendants house while he was on the road. Defense had a witness that could testify to seeing Shari load the computer in her car to carry it to Phoenix, for the trip, at the same time she tried to get someone to car for the family dog. That was when they seen her put the computer in the car. They even questioed her on why she was taken the Acer computer instead of the Asis computer the Defendant usually took on the road with him. (This wa the computer that was seized at the time of arrest and returned to him because it was clean). The advertisment was found in the shared master bathroom, under the sink were Defendants wife kept her personal hygiene belongings. The picture was found in a room with wife of the Defendant kepted box's of her pictures, DVD's, VHS tapes, and computer material. This is also the room were the stories showed up stacked on top of the fax machine. No one seems to know were they came from. Defendant was suppose to have written these stories over a period of four years, but no one said they ever seen him with them or writing them.

The United States Court of Appeals for the Ninth Circuit has defined possession as having actual or constructive control over an object. Possession of an item includes the ability and intent

to excercise control over that item. The possession requirment
is no mere technicality, rather, it is a linchpin of the statute.
Ninth Circuit constructive possession precedents have refused to
uphold convictions in the absents of some evidence tying the
defendant to the particular contraband. The only link to
Defendant was the testimony of Dean Sehm stating Defendant
presented himself as an author.

Dean Sehm and the Defendant very seldom spoke we have never
liked each, and when we did the only thing we had in common was
we were both involved with trucks. Deam Sehm did have a grudge
against the Defendant. In August of 2006 the Defendant had to have
Dean Sehm and the Defendants Step-Daughter removed from the
premises. Northern Arizona Hospic had been warning Bernata Sehm
about over medicating her mother, they had asked her to leave, she
refused, so when Defendant got home from a road trip he asked them
to leave, when they did not he called 911 to have Yavapia County
Sheriff's remove them from the premises. Again the defense attorney
did not request this information from Yavapia county, or challenge
him about it on the stand. Berneta Sehm also had a grudge against
the Defendant, she had been trying to gain custody of the
Defendants Down's Syndrome Daughter and had failed to do so. This
was in Maricopa County Court, Suprise, Arizona.
The items found in the truck were never carried, they were to
easily damaged. CD's are very easily scratched beyond use if not
careful. The 3 thumbs Defendant owned were of no use to Defendant
on the road. CD's were found out of conainers in the middle of top
bunk, as well as thumb case, in plain site in the middle of the

top bunk. See (RT 11/17/2010) Testimony by agent John Koski.

Defendants wife was found at the top bunk when the truck was stopped by Arizona Department of PUblic Safety (DPS). The testimony of SGT Ellis of the DPS, could have testified to this. He is the officer that went to the right side of the truck to have wife exit. But he was never called to testify, although he was on the original witness list.

Shari Self was a resident in the home of the Defendant and shared the master bedroom from February 1. 2009 until she left on February 21, 2010. she was also in the truck when it was stopped. In **Delgado V. United States, 327 F.2d 641,642 (9th cir. 1964)** Contraband was found in a drawer of a nightstand in the bedroom shared by the defendants, Delgado and Rodriguez, we held such proof insufficient to show that either one of the defendants had possession of the contraband. "we said"...it is fundamential to our system of criminal law that guilt is individual...here it is pure speculation as to whether Rodrequez alone, or Delgado alone, or both of them, had possession. No doubt one of them did; perhaps both did. But proof that does not give a rational basis for resolving the doubts necessarily present in the situation...is not sufficient. **ID at 642.**

By testimony of SA Potosky (RT 11/18/2010 383-84) the stories were witten in word perfect, a non windows program. Most all Windows programs are standard with MIcro-Soft Word. None of the computers had Word Perfect in them, or any sign of it ever being installed in any of the computers. Also SA Potosky states the computers had Windows Vista Installed. All laptops had XP. Home

-16-

edition installed on them, with exception of the Asis computer
it had Vista Home Edition installed.

SA Potosky testified that no images of child porn were found
in any saved or unallocated space on defendants computer. (RT 11/
18/2010 345). Only link files to external media. Supposedly
defendant accessed DreamZone and downloaded 106 images, but no
trace on the computer, or of any other site. SA Potosky states
that external media had been plugged into the defendants computer
but also states that the external media had been plugged into the
second computer (Sharis) with no chil porn found.

As stated in (CV 12 26) by the Government, they have no
knowledge of who plugged in the external media, who downloaded the
images, and who conducted the searches, that anyone could have,
that had access to the computer and AOL account.

Goverment states they are using the computer as evidence that
defendant knowingly transported child pornography. But Government
witnesses stated they never seen defentant viewing child porn, or
the stories. That would be pretty hard to miss in the small
confines of the cab of a truck.

Appeals attorney Michael Bresnehan was asigned as appeals
attorney on 4/5/2011. Mr. Michael Bresnehan of Tempe, Arizona,
was ordered to have his opening brief and excerts of record by
7/25/2011, on 7/13/2011 counsel filed for his first motion to
extend time to file opening brief, (using) "To completely represent
Mr. Self counsel must at a minimum, Familiarize himself with
the District Court record. Counsel needs to communicate (only
once did he contact the defendant, just before filing) with the

-17-

appellent regarding his case, he can not be adequatly prepared to file an opening brief by current deadline of July 25, 2011. Because obligations in other criminal and civil cases, will prevent current counsel from completing the opening brief by current deadline. The undersigned has a busy practice that includes a variety of federal criminal trial, and appellate cases. State, Local court criminal cases, bankruptcy cases, and personal injury cases. (see declaration in support of First (unopposed) motion to extend time to file opening brief 7/13/2011.

On 8/17/2011 appeals attorney again filed a motion to extend time to file brief. The excuse the counsel used was almost identical as the first. (see declaration two 8/17/2011.

Again on 9/13/2011 appeals attorney bresnehan filed for a third extention of time to file a brief, again using the same excuse, as being over worked. (see declaration 9/13/2011). On (9/29 /2011) he entered a motion to unseal records (Jury Verdict). Not sure of the Date he did file the brief (Defendant never recieved a copy). On 10/12/2011 he filed his notice of errata, with corrections to the brief On 3/5/2012 counsel filed a motion to extend time to answer reply brief (declaration 3/5/2012). Finely the reply brief was answered on 4/10/2012, one year and five days after being asigned by the court. And then he made the same challenge as trial attorney, challenging the staleness of the probable cause, and the sentence. It was again denide, conviction and sentence affirmed.

Mr. Bresnehan is a very overworked attorney as the Court can see by his own declarations. Mr. Bresnehan should never have accepted the case, with the case load he already had. See **Glover V.**

1   Miro, 262 F.3d 268 (4th cir 2001).

2   GROUND SIX: INEFFECTIVE ASSISTANCE OF COUNCEL FOR FAILING TO HAVE

3   PSR PROPERLY CORRECTED AND FOR NOT ALLOWING PROBATION INVESTIGATOR

4   TO INTERVIEW THE DEFENDANT OR FAMILY AND FRIENDS.

5       Defense counsel refused to let the Probation investigator

6   to interview the defendant or any member of his family with the

7   exception of the Sehm's nor any of his friends. See (CV 2 Exhibit

8   13 11/29 2010),(CV 2 Exhibit 13 12/3/2010) and (CV 2 Exhibit 13

9   1/12/2011), at no time did the defendant ever give his attorney

10  permission to do this.

11      In a letter to Heather Hauptly of the probation office (CV 2

12  Exhibit 13 1/27/2011) defense counsel states she reviewed the PSR

13  with the Defendant, this is not true. Defendant never seen the

14  PSR until after he arrived at Englewood Federal Correctional

15  Institution in Colorado. The Court never asked me at sentencing

16  the Court only asked Defense attorney if she reviewed the document.

17  (RT 3/14/2011 3). The only thing discussed when attorney came to

18  CCA in Florence Arizona, was the downward departure of sentence.

19

20      The PSR does have information in it that has a bearing on

21  the sentence imposed by this Court. Rule 32 Sentence and Judgement

22  Rule 32(e)(2) Disclosing the report and recommendation: (1)

23  Minimum required notice: The probation officer must give the

24  presentence report to the Defendant, The Defendants attorney, and

25  attorney for the Government at least 35 days before sentencing

26  unless Defendant waives this period. In Violation of Rule 32(e)(2)

27  The probation Department never give the Defendant a copy of the

28  report. Nor did the Defense counsel.

1    Rule 32(i)(1)(A) Must verify that the Defendant and Defendants

2  attorney have read and discussed the presentence report and any

3  addendum to the report.

4  Defendant was never asked if he had seen the PSR. So both Rules

5  32 (e)(2) and (i)(1)(A) were violated

6    Before imposing a sentence, the Court must give the Defendant

7  and Defense counsel an opportunity to commit on the PSR, if the

8  Defendant alleges that the PSR contains factual inaccuracies, the

9  Court may in its discretion, hold an evidentuary hearing allowing

10  the Defendant to introduce evidence related to the alleged factual

11  inaccuracy.

12    At no time did the Defense attorney, or the Court tell the

13  Defendant he could speak out against or rebut the PSR. See **United**

14  **States v. Ameline, 409 F.3d 1073 (9th cir 2005)** of course, the

15  District Court may rely on undisputed statements in the PSR at

16  sentencing. **United States V. Charlesworth, 217 F.3d 1155,1160 (9th**

17  **cir 2000)** However, when a Defendant raises objections to the PSR,

18  the District Court is obligated to resolve the Factual dispute,

19  see Fed. R. of Crim. P. 32(i)(3)(B) And the Government bears the

20  burden of proof to establish the factual predicate for the Courts

21  base offense level determination. The Court may not simply rely on

22  the factual statements in the PSR.

23  

24    (PSR Item 7 6) is not true, Defense counsel had both her

25  Doctors reports. (1) from the family doctor asigned to her by

26  Yavapia County Family Court and her private Dr. Dawn was Suffering

27  from hymeroids, was on medications for them and had them removed

28  years prior to this by laser. She is very prone to them.

1    If probation had been able to talk to other family members
2 and even her school teachers, they would have found Defendant and
3 his Daughter had a very Loving relationship. Dawn's going to her
4 room once she was at home was because she had developed her own
5 space there. All of her movies, computer, computer games, TV,
6 Stereo system was there, her own little world was in that room and
7 had always been that way from a very early age. Her mental age
8 is about that of a 8-10 year old, she has very little incommon
9 with other adults. Although she did like to ride her Quad with us
10 and ride bicycles with us

11    Robin Self Had permission to be on the truck with the Defendant
12 by Stewart Transport. She had a Learners Permit from the state of
13 Arizona, to learn to drive the truck. This was done with her Mothers
14 permission also. All of Stewart Transport Truck or double bunked
15 Robin Always slept on the top bunk, never in the bottom bunk unless
16 she was sleeping while I was driving. After September 17, 2007 she
17 never went on the truck with out her sister Dawn going. Robin was
18 caring for Dawn while I was on the road. I even left Stewart and
19 took a local driving job, but could not make it financially, and
20 returned to work for Stewart. Robin was married during this period
21
22    (PSR item 23 9) and (PSR item 52 13) are the same. At no time
23 did the Defendant decline to be interviewed Or give Defense counsel
24 permission to decline an interview with  probation. Defendant did
25 not refuse to sign any release forms or even knew of any release
26 forms. Defense counsel did this all on her own, She rarely talked
27 with Defendant about anything after 11/10/2010 when Court refused
28 to replace counsel.

-21-

(PSR Item 44,45,47 12) Were all the same crime. (PSR Item 46 12) charges against the Defendant were dropped when it was discovered he had nothing to do with the attempted escape. He was in the same cell as the others and according charged with the others, until investigation showed he had nothing to with it.

(PSR Item 54 13) Defendant and wife Shari were still very happy in December of 2009. It was not until after the the search of the truck that Defendants wife left, February 21, 2010. Only after ICE entered our lives did she leave. After them instructing her on different thing to do, like have Defendant removed from car insurance, Having a restraining order placed on him and peoples names to include, and  having to the marriage annulled.

The Assault charge in 1975 was set up by A person named Dan Brown and the person that brought the charges Paulette Bridgeotta. The Defendant found out after going into a construction company partnership with him, that he was stealing equiptment around the San Jose Area and transporting them to the south and resaling them, equiptment is very hard to trace, at the time a person did not have to register a piece of equiptment. Defendant also found out along with Defendants wife that Paulette was setting up loans for friends of Dan Brown's. Paulette was the Loan Manager for the local Barckly's Bank. There was not conclusive evidence of the crime so they let Defendant plead out to a false imprisonment charge and sentenced him to one year in county jail. During the investigation Paulette lost her job with the Bank, and although not enough evidence was found to bring charges against Dan Brown, he did loose his California Contracting License.

Item in 1970, Defendant was released the following morning after Detective Gene Grawford had a phone conversation with the girls father. The girl had been out with the Defendant earlier in the day they had went to dinner and dancing. Defendant had her home by 10PM on that night, and went straight home and to bed. had prove that fact by a friend next door that stopped to say Hi!. Along with his Fathers testimony that Defendant was there until 6AM the following morning, when he left to go to work 15 miles away in Hesperia, California.

Government states there is nothing in the PSR that could pejudice the Defendant, but there is· most all of the PSR is False or misconstrued. Most Items have been entered are so old there is no records left. so they were entered as reported from a computer of the FBI. But it is the items listed that gives the Probation Department the assumption that the Defendant is a very bad person and place the Defendant in a very high point level were he was sentence accordingly by the Court to 135 months and life supervised probation. Were the Average time for the same crime has been 70-78 months and 5 years supervised probation.

**GROUND SEVEN: INEFFECTIVE ASSISTANCE OF COUNSEL FOR FAILING TO INVESTIGATE, DOCUMENT, AND ADMIT EXCULPATORY EVIDENCE.**

The Government claims the Defendant is overlapping claims, this maybe so the Defendant will let the record show the evidence of this claim, other than a couple items not mentioned in any other claim.

Defense counsel had the bank statements supplied by the Defendant, to show there was a lot of illegal activity on his

1   Bank account during the period in question, August, 2008 and

2   November 2008. See(CV 2 Exhibit 6) the Court can see were some of

3   the monies was returned already, from the questioned use. This was

4   also during the period that the Dreamzone was suppose to have been

5   downloaded, and membership purchased.

6       Defense counsel had the evidence that Shari Self had twice

7   already equivocated, fabricated information about the Defendant

8   (CV 2 Exhibit 12,17) But failed to challenge her with this at trial.

9       Defense counsel had information that Agent Schrable mislead

10  the Court at the time of the Defendants detention hearing, once the

11  prosecutor opened that line of questioning, as to whether he was at

12  any of the search and seizures. (RT 11/18/2010 19).

13      Defense counsel should of challenged his truthfulness about

14  his testimony at the detention hearing on 3/18/2010 in regards to

15  the conversations with Defendants wife Shari Self.

16

17      Agent Schrable states (RT 3/18/2010 11) Q. And specifically

18  ...well let me ask you this; when did Sherry bring this to your

19  attention?  A. Shortly after the first search warrant that was

20  executed on the residence.  The questioned was reasked (RT 3/18/

21  2010 12) A. Yes first search warrant that was executed on February

22  8, 2010. So it was a short time thereafter that she contacted

23  my agency and me.  (RT 3/18/2010 13) Q. can you estimate, with in

24  a week or so when she told you when she initially made the

25  allegations of sexual abuse? A. The first alligation Q. yes

26  A. perhaps four or five days after original search warrant on

27  February 8. Agent Schrable is very sure about the February 8, 2010

28  date. Then on (RT 3/18/2010 20) agent is very confused about the

1  time period of the contact. But he had his notes with him at the

2  time. See (RT 3/18/2010 10) Court ask agent to refresh his memory

3  . Witness. May I review my case file?

4  Court. Certainly , do you have it here today? Witness. Yes I do.

5  Sherry was on the truck from February 6, 2010 until the afternoon

6  of February 19, 2010. And according to testimony by Agent Schrable

7  (RT 11/18/2010 390) he was on approved leave from the agency.

8  When someone contacts you almost every other day, you would believe

9  a persons memory would not be that blank (RT 3/18/2010 )

10

11      Next see (RT 3/18/2010 19) being questioned about the search

12  of the residence. Q. was he at the residence when you searched it?

13  A. No    Q. was anybody at the residence when you search it? A. No.

14  At trial he plainly states he was at neither search. See (RT 11/18/

15  2010 390)

16      Next see (RT 3/18/2010 5) Prosecuter states there was both

17  handwritten and typed Stories found, this is mentioned twice. Ms.

18  Bibles ask agent Schrable about the handwritten and typed stories.

19  see (RT 3/18/2010 16) but yet there were never any handwritten

20  stories produced to the Defense. The Court asked agent schrable

21  about the handwritten stories (RT 3/18/2010 17) Who authored them?

22  Who's handwriting are they in?. Answered. The Forensic examination

23  of handwriting exemplars has not been completed. Were are the

24  handwrtten stories?  defendant believes the Forensic expert

25  excluded him, so they were never produced as actual evidence,

26  same as the exclusion of the fingerprints, that excluded the

27  defendant, this also why the prosecution chose not to do the DNA

28  because with all three exclutions it would have showed Defendants

actual innocents.

The Government states this information did not prejudice the Defendant. But it most certainly did, by not challenging agent Schrable on the stand with this information once the prosecutor opened the door to this line, it allowed anything the agent stated true or false to be readily believed.

Defense counsel had the time line produced by the prosecutor to show that the Defendant never even owned a computer of his own until after April 1 2008 when he recieved his tax return. The computer in question the Acer 5720 was not even produced in 2006. This is after the the stories were written in word perfect. After CD-1 and 2 were burnt.

Defense counsel had evidence to show that Shari Self's brother was living at the residence during the period that Dream zone was accessed and was in the residence until July 2009 when he left without notice and basicly disappeared (CV 2 Exhibit 29). He did have access to both computer and internet account.

Defense counsel had the evidence that someone else could have committed the crime, but failed to introduce that evidence to the Court. See **Thomas V. Hubbard, 273 F.3d 1164 (9th cir 2001)** Evidence that someone else other than the defendant may have committed the crime is critical exculpatory evidence that the defendant is entitled to address. See also **United States V. Crosby, 75 F.3d 1343,1347 (9th cir 1996)** Fundamental standards of relavancy... require the admission of testimony which tends to prove that a person other than the defendant committed the crime that is charged. (emphisis added) (citations omitted). [sic] even if the defense

-26-

theory is speculative...the evidence would be relevent.

In **Carter V. Newland, 28 fed appx 626 (9th cir 2001)** the Court said in Hart, we vacated the conviction and issued a writ holding that "[a] lawyer who fails adequately, to investigate and introduce into evidence, records, that demonstrates his clients factual innocents, or that raises sufficient doubt as to that question to undermine confidence in the verdict, rendears deficient performance. **Hart V. Gomez 174 F.3d at 1070** See also **Woodford V. Visciotti, 288 F.3d 1097, 1110 (9th cir 2002).**

Also under criminal law and procedure, a criminal defendant has the right to have the Jury instructed on his/her theory of defense, seperate and apart from instructions given on the elements of the charged offense. A trial Court may not refuse to charge the Jury on a specific defense theory where the proposed instruction presents a valid defense and where there has been some evidence adduced at trial relevent to that defense. By defense counsel not doing this or producing witnesses, or producing fisical evidense left the Jury to doubt any defense exist. Allowing the Jury to believe there is no defense is very prejudicial to the Defendant.

**GROUND EIGHT: INEFFECTIVE ASSISTANCE OF COUNSEL FOR FAILING TO SHOW ABUSE OF DISCRETION BY THE COURT.**

Government states in (CV 12 14) that a prisoner may not raise a claim that has already been resolved on direct appeal. Then in the same document (CV 12 30) in regards to the abuse of discretion for not replacing cousel. "This claim was not raised on direct appeal he has therefore procedurally defaulted." Does the Government not know which way it is?

On November 10, 2010 the Defendant asked the Court to replace counsel. (RT 11/10/2010 2,3)  I told the Court she was not communicating with me, making decisions without input or knowledge of the Defendant, was not going to call witnesses, or admit evidence that was given to her. (RT 11/10/2010 17) you can still see the mistrust and the irreconcilable conflict between Defedant and counsel. Again on 11/18/2010 the defendant tried to get his counsel replaced, again the Court decided against the Defendant. again knowing the distrust and of the conflict between them.

See **Daniel V. Woodford, 428 F.3d 1181 (9th cir 2005)** Where a criminal defendant has with legitimate reason completely lost trust in his attorney, and the trial court refuses to remove the attorney, the defendant is constructivily denied cousel. See **Brown V. Craven 427 F2d 1166,1170 (9th cir 1970)** Our sister circuit noted that "to compel one charged with a grievous crime to undergo trial with assistance of an attorney with whom he has become embroiled in irreconcilable conflict is to deprive him of the effective assistance of any counsel whatsoever. In **United States V. Adelgo-Gonzalez, 268 F.3d 772 (9th cir 2001)** defendant argued that denial of his motions to substitute counsel deprived him of his Sixth Amendment right to counsel. The Court of Appeals found that the District Court did not make adequate inquiry and failed to recognize the material breakdown between in trust and communication between defendant and Court appointed attorney. The district Court denied defendants requests for a new attorney on three occasions... the District Courts emphasis on counsel's competence and copacity to provide adequate representation, rather than on the statue and

quality of the attorney-client relationship, was misplaced.
Headnotes: a Court may not deny a motion for substitution of
counsel in a criminal matter simply because it thinks current
counsel's representation is adequate.

It is a violation of the Sixth Amendment to improperly deny
a motion to substitute counsel in a criminal matter and an error
that must be reversed, regardless of whether prejudice results.
268 F.3d 772,775 District Court denied the motion to substitute
counsel...and that the appointed counsel "not only willing to
proceed with a vigorous defense, but he is more than capable of
doing so, with or without [defendants] cooperation. See **Musa 220
F.3d at 1102,** "even if a defendants counsel is competent, a serious
breakdown in communication can result in an inadequate  defense"
**D'Amore, 56 F.3d at 1206** "[a] Court may not deny a substitution
motion simply because it thinks current counsel's representation is
adequate" **See Moore 159 F.3d at 1180** "the Court did give both
parties a chance to speak and make limited inquiries **268 F.3d 779**
to clarify what was said, however, the Court made no inquiries to
help it understand the extent of the breakdown.

The Court also abused it's descretion when it allowed the
prosecution to admit stories defendant was suppose to have written.
The Court knew prosecution was going to introduce private pictures
found on the same media, to show possession and knowledge. The
stories were only admitted to show the Defendant as a "bad person"
In **United States V. Brown, 880 F.2d 1012, 1014 (9th cir 1988)**
under rule 404(b) evidence of a defendants prior crimes or wrongful
acts may not be introduced to show that the defendant has bad

-29-

1  character and is therefore more likely to have committed the crime
2  with which he is charged.

3      By the Court allowing these stories to be admitted it was more
4  likely than not very prejudicial to the Defendant. See **united**
5  **States V. Johnson, 439 F3d 884 (8th cir 2006); United States V.**
6  **Reynolds 720 F.3d 865 (8th cir 2013)** Rule 404(b) excludes evidence
7  of specific bad acts used to circumstantially prove that a person
8  has the propensity to commit acts of that crime.

9      District Court abused it's descretion by allowing prosecutor
10  to use wife as a witness. Defendants wife was never included as
11  a codefendant or coconspriter, so she should not have been allowed
12  to testify under the "Anti Marital facts" privilege. The privilege
13  against adverse spousal testimony. The prosecution protraded
14  Defendants wife had their marriage annulled, See (CR 31 1,2) when
15  in fact they were still married on 11/17/2010 when she testified.
16  See (RT 11/17/2010 216). The Court knew the minute she said she was
17  married to the Defendant. In **United States V. Marashi, 913 F.2d 724,**
18  **729 (9th cir 1990)** "The common law recognizes two seperate
19  privileges arising out of the marital relationship. The first, which
20  we have called the "Anti Marital Facts" privilege, prohibits one
21  spouse from testifying against the other during the length of the
22  marriage. **United States V. Bolzer, 556 F.2d 948, 951 (9th cir 1977)**
23  The second, so called marital communication privilege, bars
24  testimony concerning statements privately communicated between
25  spouses.

26  **CONCLUSION:**

27      The Defendant believes he has more than proven the violations

1  of the Fourth, Fifth, and Sixth Amendments of the Federal

2  Constitution. The Prosecutor misconduct and vindictiveness, and

3  the ineffective assistance of both trial and appeals attorneys. The

4  Abuse of descresion by the District Court. AS a reult of these not

5  being a harmless error, the Court should suppress all evidence

6  from the 3 search, seizure and forfeiture warrants, and because of

7  all the errors not being harmless, the conviction should be

8  reversed and vacated with prejudice.

9  //
   //
10 //
   //
11 //

12                                        Richard Self
                                          Pro Se representation
13                                        Federal Correctional
                                          Institution Englewood
14                                        9595 West Quincy Ave
                                          Littleton,CO 80123
15

16

17 I Richard Self Certify thst on this 11th day of June, 2014 sent by
   United States Mail a copy of this document to the Clerk of the
18 Court at:

19 U.S. District Court Clerk
   U.S. Courthouse, Suite 130
20 401 West Washington Street, SPC 16
   Phoenix, AZ 85003-2119
21

22                                        Richard Self

23 I also certify I sent a copy of this  by United States mail to
   Heather H. Sechrist Assistant U.S. Attorney at:
24 Two Renaissance Square
   40 North Central Ave. Suite 1200
25 Phoenix, AZ  85004-4408

26                                        Richard Self

27 //
   //
28 //
   //

                                -31-