**UNITED STATES DISTRICT COURT**
**DISTRICT OF ARIZONA**

Richard Larry Self,
Movant/Defendant
-vs-
United States of America,
Respondent/Plaintiff.

CV-13-8199-PCT-DGC (JFM)
CR-10-8036-PCT-DGC

**Report & Recommendation**
**on Motion to Vacate, Set Aside or**
**Correct Sentence**

## I. MATTER UNDER CONSIDERATION

Movant, following his conviction in the United States District Court for the District of Arizona, filed on July 29, 2013 a Motion to Vacate, Set Aside or Correct Sentence pursuant to 28 U.S.C. § 2255  (Doc. 1) and Memorandum in Support (Doc. 2). On March 19, 2014, Respondent filed its Response (Doc.  15).   Movant filed a Reply on June 16, 2014 (Doc.   21). On September 29, 2014, Petitioner re-filed (Doc. 24) his Memorandum in Support of his Petition because of a defect in the electronically filed version.

The Movant's Motion is now ripe for consideration.   Accordingly, the undersigned makes the following proposed findings of fact, report, and recommendation pursuant to Rule 10, Rules Governing Section 2255 Cases , Rule 72(b), Federal Rules of Civil Procedure, 28 U.S.C. § 636(b) and Rule 72.2(a)(2), Local Rules of Civil Procedure.

## II. RELEVANT FACTUAL & PROCEDURAL BACKGROUND

### A. FACTUAL BACKGROUND

In his Motion to Suppress, Movant described the factual background as follows:

This investigation began on November 5, 2008, when the Child Exploitation Section of the ICE (Immigration and Customs

1

Enforcement) Cyber Crimes Center received information regarding a website containing child pornography, known as DreamZone. ICE agents verified that the website contained pornography and that the website could be accessed by "members" to the website for a monthly fee. ICE agents accessed this site for a monthly fee of $99.00 after an agent completed the transaction with an undercover identity and credit card. The undercover agent received a user name and password, accessed the website, and found child pornography within the site. ICE then obtained the web access logs from November 11, 2008, through November 20, 2008, and matched IP addresses with specific image files that were accessed from each IP address. Pursuant to this search warrant, ICE identified the e-mail address of richardrimrock@AOL.com ("Rimrock IP") as one of the IP addresses that accessed the DreamZone website on November 18, 2008. The logs further showed that on this date the Rimrock IP downloaded numerous images of child pornography from the website.

Pursuant to further subpoenas to AOL, ICE determined that, as of January 30, 2009, the account holder for the Rimrock IP was Richard Self at a P.O. Box in Rimrock, Arizona, and that the relevant phone number was assigned to Richard Self through a Verizon account that had been effective since April 15, 2008, with the same P.O. Box in Rimrock. In May of 2009, ICE reviewed the motor vehicle database for records of Richard Self and identified a residential address on Desert Pine Road in Rimrock, Arizona.

On November 15, 2009, ICE agents conducted surveillance at the Desert Pine address and observed a motor vehicle that was registered to Mr. Self at the Desert Pine address. In December of 2009, ICE obtained another subpoena for the AOL account holder information, and it was the same as the January 2009 information for Mr. Self.

Based on this information alone, the ICE agent avowed that he believed Richard Self spent money to purchase a membership to a website devoted to child pornography and thus that Mr. Self has a sexual interest in children. Further, the application for the search warrant states that the agent believes that Mr. Self accessed and downloaded child pornography on November 18, 2010, from the DreamZone website. Thus, the agent concluded there was probable cause to believe that there was child pornography at the residence.

The application for the search warrant also contains a boilerplate section regarding "common characteristics" of persons who collect child pornography. Among other things, the application states that "[t]hese collections [of child pornography] are often maintained for several years and are kept close by, usually at the collector's residence, to enable the individual to view the collection, which is valued highly."

The search warrant was executed at the residence on February 8, 2010. Defendant was not present at his residence during the execution of the warrant. Mr. Self's step-son, who lived next door and allowed the agents into the residence, told the agents that Mr. Self had left on February 6, 2010, with his wife on a business trip driving his company's semi-tractor/truck to Florida. At the residence, agents found computer generated printouts that contained photographs of child pornography. Also, agents found several hundred pages of print documents containing narratives describing sexual conduct with children. Agents also found documents

indicating the purchase of a Verizon wireless mobile broadband device, but did not find the broadband device or a laptap computer. Agents did find two older-model tower computers that did not appear to contain any child pornography but did contain website advertising banners related to child pornography sites.

Based on the above information, another search warrant was obtained to search the semi-tractor/truck that Mr. Self was driving. This warrant was executed on February 18, 2010, pursuant to a traffic stop of the vehicle. Mr. Self and his wife were in the vehicle. During the search of the vehicle, the agents found two laptops, one of which it was later determined contained images of child pornography. The agents also found several thumb drives and other electronic material containing child pornography. An indictment was obtained against Mr. Self for possession of child pornography, and he was arrested on March 14, 2009, pursuant to a traffic stop. The agents searched the vehicle and found electronic material that later was determined to contain documents that contained narratives describing sexual activity with children, similar to the documents obtained from Mr. Self's residence.

(CR-10-8036-PCT-DGC Doc. 47 at 3-6 (citations omitted).)[1]  (Documents filed in the criminal case, CR-10-8036-PCT-DGC, are referenced hereinafter as "CR Doc. ___.")

## B. PROCEEDINGS AT TRIAL

On March 9, 2010, Movant was indicted (CR Doc. 1) in the District of Arizona case CR-10-8036-PCT-DGC on four counts of Possession of Child Pornography, with forfeiture allegations.  Counsel was appointed.  (CR Doc. 5, M.E. 3/15/10.)

On September 21, 2010, a Superseding Indictment was filed (CR Doc. 35), charging Movant with 3 counts of Transportation of Child Pornography, 3 counts of Possession of Child Pornography, and forfeiture allegations.

Counsel filed a Motion to Suppress (CR Doc. 47) seeking to suppress evidence seized at Movant's home on January 27, 2010 for lack of probable cause to support the warrant, and evidence seized in the ensuing searches of his truck and car, as fruits of the poisonous tree.  The motion was denied.  (CR Doc. 69, Order 11/12/10.)

Movant proceeded to a jury trial on November 17, 2010. (CR Doc. 78, M.E. 11/17/10.)  He was found guilty as charged.  (CR Doc. 90, Verdict.)

Counsel moved for a downward depart and variances in sentencing.  (CR Doc.

---

[1] Movant was, in fact, arrested on March 14, *2010*.  (*See* CR Doc. 19, Arrest Warrant Returned Executed.)

93.)    The motion was denied, and on March 14, 2011 Movant was sentenced to concurrent terms of 135 months on the transportation charges, and concurrent terms of 120 months on the possession charges, for an effective sentence of 135 months.  (CR Doc. 95, M.E. 3/14/11; CR Doc. 97, Judgment.)

## C.  PROCEEDINGS ON DIRECT APPEAL

Movant filed a direct appeal, appealing the denial of his motion to suppress on the basis that the lapse of time between the first lead and the search warrant was so long as to render the information stale and prevent a finding of probable cause.  Movant also challenged his sentence.  The Ninth Circuit Court of Appeals rejected his arguments, and affirmed the convictions and sentences.  (CR Doc. 117, Memorandum Decision.)

## D.  PRESENT FEDERAL HABEAS PROCEEDINGS

**Motion** – Movant commenced the current case by filing Motion to Vacate, Set Aside or Correct Sentence pursuant to 28 U.S.C. § 2255  on July 29, 2013 (Doc. 1). Movant asserts the following eight grounds for relief:

> (1) Movant's counsel was ineffective in failing to investigate the validity of three search warrants;
> (2) Movant's counsel was ineffective in allowing Movant to be indicted, tried, and convicted in violation of Movant's right to be free from double jeopardy;
> (3) Movant's counsel was ineffective for failing to challenge prosecutorial misconduct;
> (4) Movant's counsel was ineffective for failing to object to irrelevant evidence of prior bad acts;
> (5) Movant's counsel was ineffective when she failed to introduce evidence that others lived in Movant's household, had access to Movant's AOL account and use of the computer, and that of the five computers seized, "only one was dirty";
> (6) Movant's counsel was ineffective because counsel refused to let the probation officer interview Movant, members of Movant's family, or any of Movant's friends;
> (7) Movant's counsel was ineffective by failing to present evidence that someone else could have committed the crime; and
> (8) The Court abused its discretion by failing to resolve the conflict between Movant and Movant's counsel and for not appointing new counsel.

(Doc. 4, Service Order.)

**Response** - On March 19, 2014, Respondent filed its Response (Doc. 15). Respondent argues that the first seven grounds, asserting ineffective assistance, are without merit.  Respondent argues that Ground Eight is procedurally defaulted for failing to raise it on direct appeal.

**Reply** - Movant filed a Reply on June 16, 2014 (Doc. 21), addressing the merits of his ineffective assistance claims, and arguing that his Ground 8 is not procedurally defaulted.

**Supplement** – Upon reviewing the filed record, the Court observed that the electronically filed version of Movant's Memorandum in Support (Doc. 2) had become partially unreadable, and no paper versions were available.  Movant was directed to re-file his Memorandum in Support and attached exhibits.  (Order 9/15/14, Doc. 23.)  On September 29, 2014, Movant complied and again filed his Memorandum in Support and exhibits (Doc. 24).

## III. APPLICATION OF LAW TO FACTS

### A.  GROUNDS 1-8: INEFFECTIVE ASSISTANCE CLAIMS

Generally, claims of ineffective assistance of counsel are analyzed pursuant to *Strickland v. Washington*, 466 U.S. 668 (1984).  In order to prevail on such a claim, Petitioner must show:  (1) deficient performance - counsel's representation fell below the objective standard for reasonableness; and (2) prejudice - there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Id.* at 687-88.  Although the petitioner must prove both elements, a court may reject his claim upon finding either that counsel's performance was reasonable or that the claimed error was not prejudicial.  *Id.* at 697.

### 1.  Ground 1: Ineffective Assistance re Search Warrant

In his Ground 1, Movant asserts that counsel was ineffective in failing to adequately investigate the validity of the three search warrants.  (Motion, Doc. 1 at 5;

Memorandum, Doc. 2 at 1-4.)  Movant asserts four specific defects in the searches and warrants, addressed hereinafter as subparts (a) through (d). Respondent argues that defense counsel adequately investigated, and filed a motion to suppress the evidence seized during the searches.

### a.  Ground 1(a): IAC re No New Probable Cause to Search Home

Movant argues that trial counsel should have challenged the search of the home on the basis that there was no new probable cause asserted to support the second warrant to search the home which was issued after the first warrant expired unserved. Respondent argues that the motion to suppress addressed the staleness and lack of probable cause to support the search of the home, and that no new statement of probable cause was required to support the warrant. Moreover, Respondent argues this issue was addressed by the Ninth Circuit in Movant's direct appeal.   (Response, Doc. 15 at 16-17.) Movant replies that the second warrant amounted to an improper reissuance of the first warrant based upon a stale statement of probable cause. (Reply, Doc. 21 at 2-3.)

Respondent appears to conflate the staleness of the information in the probable cause statement used to support a warrant, with the staleness of the statement or affidavit itself.  The former was addressed by the Ninth Circuit in Movant's direct appeal (and may not be revisited in this proceeding). (CR Doc. 117, Mem. Dec. at 4.)[2]   The latter is the argument Movant now makes.

In support of his contention that a new probable cause statement was required, Petitioner cites to *U.S. v. Lacy*, 119 F.3d 742 (9th Cir. 1997), *U.S. v. Grubbs*, 547 U.S. 90 (2006), and *Sgro v. U.S.*, 287 U.S. 206 (1932). Nothing in these cases suggests that a new affidavit must be submitted when an expired warrant is being reissued. These cases

---

[2] The Ninth Circuit seems to have been unaware of the issuance of the earlier warrant.  It was not addressed in the trial court's ruling on the issue.  (CR Doc. 69, Order 11/12/10 on Motion to Suppress.) The parties have provided no record of the earlier warrant.  The undersigned presumes for purposes of this Report and Recommendation that there was an earlier warrant, and that the same affidavits and statement of probable cause were used for both.

simply stand for the proposition that affidavits in support of warrant requests "must be based on facts ' 'so closely related to the time of the issue of the warrant as to justify a finding of probable cause at that time.' '" *U.S. v. Lacy*, 119 F.3d 742, 745 (9ᵗʰ Cir. 1997) (indirectly quoting *Sgro*, 287 U.S. at 210).   At best, *Sgro* held that an expired warrant may not simply be reissued without a new finding of probable cause, based upon timely affidavits.

> The issue of a second warrant is essentially a new proceeding which must have adequate support…The statute in terms requires him before issuing the warrant to take proof of probable cause. This he must do by examining on oath the complainant and his witness and requiring their affidavits or depositions. The proof supplied must have appropriate relation to the application for the new warrant and must speak as of the time of the issue of that warrant. The commissioner has no authority to rely on affidavits which have sole relation to a different time and have not been brought down to date or supplemented so that they can be deemed to disclose grounds existing when the new warrant is issued.

287 U.S. at 211.   Thus, *Sgro* did not mandate new affidavits or statements, merely timely information.

Moreover, *Sgro* did not establish any time limit on when the affidavits have come to "have sole relation to a different time."   In *Lacy*, the court observed that such a determination is a fact specific inquiry.

> However, "[t]he mere lapse of substantial amounts of time is not controlling in a question of staleness." "We evaluate staleness in light of the particular facts of the case and the nature of the criminal activity and property sought." The information offered in support of the application for a  search warrant is not stale if "there is sufficient basis to believe, based on a continuing pattern or other good reasons, that the items to be seized are still on the premises."

*Lacy*, 119 F.3d at 745-46 (internal citations omitted).   Of course, in this case, the question whether the information was stale has been decided by the Ninth Circuit on Movant's direct appeal.

Movant fails to establish new affidavits or statements of probable cause were mandatory, despite the freshness of the information contained in the original.   The undersigned has found no such requirement.

Thus, the undersigned concludes that an attack based on the reliance on the same

affidavits in issuing the second warrant would have been without merit.   "The failure to raise a meritless legal argument does not constitute ineffective assistance of counsel." *Baumann v. United States*, 692 F.2d 565, 572 (9th Cir. 1982).

Accordingly, Ground 1(a) is without merit.

### b.  Ground 1(b): IAC re Warrant on Home Not Properly Served

Movant argues that trial counsel should have challenged the search of the home on the basis that the search warrant for the home was not properly served because the attachments and affidavit were not served, and the warrant was not served at the outset of the search on his son-in-law, the caretaker of the property. Respondent argues that presentation of the warrant is not required at the outset of the search, and that the affidavit or other supporting exhibits need not be presented at all. (Response, Doc. 15 at 17-18.)  Respondent further argues that a warrant need not be served on a non-occupant caretaker when a residence is unoccupied at the time the warrant is executed, and that in any event copies were left at the home, and may have been shown to the son-in-law before entry was gained.  (*Id.* at 18, and n. 7.)   Movant replies that it is unclear whether service of the warrant is required. (Reply, Doc. 21 at 3-4.)

In support of his argument that service of the warrant at the outset of the search is required, Movant relies upon *U.S. v. Gantt*, 194 F.3d 987 (9th Cir. 1999), U.*S. v. Hector*, 474 F.3d 1150, 1154 (9th Cir. 2009), and the separate opinion of Justices Souter, Stevens and Ginsburg in *U.S. v. Grubbs*, 547 U.S. 99 (2006).  (Reply, Doc. 21 at 3-4.)

In *Gantt*, the Ninth Circuit held that Federal Rule of Criminal Procedure 41(d) (now at Fed. R. Crim. P. 41(f)) required that a search warrant be served at the outset of a search.   194 F.3d at 1001-1002. Seven years later, the majority opinion in *Grubbs* appeared to have rejected that holding:

> In fact, however, neither the Fourth Amendment nor Federal Rule of Criminal Procedure 41 imposes such a requirement. "The absence of a constitutional requirement that the warrant be exhibited at the outset of the search, or indeed until the search has ended, is ... evidence that the requirement of particular description does not

> protect an interest in monitoring searches." The Constitution protects property owners not by giving them license to engage the police in a debate over the basis for the warrant, but by interposing, ex ante, the "deliberate, impartial judgment of a judicial officer ... between the citizen and the police," and by providing, *ex post*, a right to suppress evidence improperly obtained and a cause of action for damages.

*Grubbs*, 547 U.S. at 99.

Movant suggests that the special concurrence in *Grubbs* leaves the question open. And indeed, Justice Souter asserted that prior decisions of the Court left open the question whether there was a "right of an owner to demand to see a copy of the warrant before making way for the police," "and it remains undetermined today." 547 U.S. at 101. Indeed, in *U.S. v. Hector*, the Ninth Circuit addressed the decision in *Grubbs*, and concluded: "It is not clear whether [*Grubbs*] overrules the Ninth Circuit's precedent on the requirement to present a copy of the warrant to the owner of the premises at the time of the search." 474 F.3d 1150, 1154 (9th Cir. 2007). *But see U.S. v. Miller*, 2013 WL 4805616, 5 (D.Ariz. 2013) (report and recommendation concluding that *Grubbs* overrules *Gantt*) (issue avoided in Order modifying, 2013 WL 4026851, 3 (D.Ariz. 2013). At a minimum, the Ninth Circuit has recognized the *Grubbs* decision effectively reduces the "legitimate interest served by the presentation of a warrant" to be "head[ing] off breaches of the peace by dispelling any suspicion that the search is illegitimate." *U.S. v. Hector*, 474 F.3d 1150, 1155 (9th Cir. 2007). That interest is not affected when a search warrant is executed when the premises are vacant.

Movant also complains that the affidavit and other attachments were not included with the copy of the warrant eventually left at the premises. However, Rule 41 does not mandate the delivery of anything other than the warrant and a receipt for the property taken. There is no "constitutional mandate that an executing officer possess or exhibit the affidavit or any other document incorporated into the warrant at the time of the search in order for the warrant to be valid." *U.S. v. Hurwitz*, 459 F.3d 463, 472 (4th Cir. 2006). *See also Baranski v. Fifteen Unknown Agents of Bureau of Alcohol, Tobacco and Firearms,* 452 F.3d 433, 444 (6th Cir. 2006) (no constitutional requirement or

requirement under Rule 41 to leave incorporated affidavits, etc.).

Even if there were some basis to assert an obligation to serve the warrant and/or the affidavits or attachments, a motion to suppress founded upon such a service requirement would have been futile for two reasons. First, even when applying *Gantt*, the Ninth Circuit has held that suppression for violations of Rule 41 are only appropriate where:

> 1) the violation rises to a "constitutional magnitude;" 2) the defendant was prejudiced, in the sense that the search would not have occurred or would not have been so abrasive if law enforcement had followed the Rule; or 3) officers acted in "intentional and deliberate disregard" of a provision in the Rule.

*U.S. v. Williamson*, 439 F.3d 1125, 1133 (9th Cir. 2006).[3]  *Grubb* establishes that there is no violation of a constitutional magnitude. Petitioner has not proffered any prejudice in the form of the search resulting from the failure to serve the warrant at the outset. And, there is no indication that the officers acted deliberately in disregard of the rule. *See e.g. Williamson*, 439 F.3d at 1133-1134 (failure to serve not deliberate violation, even though intentional, when based on misunderstanding of requirement).

Second, Movant was not present when the warrant was executed, and thus cannot complain of the lack of service of the warrant. "Just as a person who is somewhere else cannot benefit from the 'assurance provided by the showing of a warrant, an absent person has no present stake in the contemporaneous opportunity to monitor the search for compliance with the warrant. Thus the interest in the 'notice' that showing a warrant provides, likewise, does not run to someone who is not there and who cannot exercise that option." *U.S. v. Silva*, 247 F.3d 1051, 1059 (9th Cir. 2001).

Accordingly, any attempt to mount challenges to the timing or lack of service of the warrant or its attachments, supporting affidavits, etc. would have been futile, and failure to do so would not have been ineffective assistance. *Baumann*, 692 F.2d at 572.

Therefore, Ground 1(b) is without merit.

---

[3] *Grubbs* was decided March 21, 2006. *Williamson* was decided March 13, 2006, and thus was decided without benefit of *Grubbs*.

10

### c.  Ground 1(c): IAC re Warrant on Truck Not Properly Served

Movant argues that trial counsel should have challenged the search of the truck on the basis that the search warrant for the truck was not properly served because the attachments and affidavit were not served, and the serving agent refused to provide a copy of the warrant at the outset of the search.

As discussed hereinabove, with regard to the execution of the warrant on Movant's home (with the exception of the distinction that Movant was present when the vehicle was searched), any argument based upon the timing or lack of delivery of the warrant to search the truck would be without merit.  The fact of Movant's presence would give him standing to mount the objection, but even if *Gantt* survives *Grubbs*, Movant fails to establish a constitutional violation (and cannot under *Grubbs*), asserts no prejudice, and fails to proffer anything to establish a deliberate violation of the Rule. Accordingly, this claim would also be without merit, and cannot support a claim of ineffective assistance. *Baumann*, 692 F.2d at 572.

Therefore, Ground 1(c) is without merit.


### d.  Ground 1(d):  IAC re Improper Search and Seizure of Movant and Wife

Movant argues that trial counsel should have challenged the search of his truck on the basis that Movant and his wife were searched, his effects were seized, and they were locked in a law enforcement vehicle during the search of his vehicle, all without *Miranda* warnings, even though the warrant did not extend to them or their effects. Respondent argues that the detention of occupants during a search is permitted, and no *Miranda* warnings are required.  Respondent argues there is no evidence that Movant was searched, he cannot complain of the search of his wife, and no evidence from such searches was presented at trial, precluding a finding of prejudice. (Response, Doc. 15 at 18-19.)  Movant replies that the authorities relied on by Respondent with regard to the detention and ensuing search are distinguishable on the basis that the warrants were for evidence, not contraband, and that the searches of Petitioner's effects did not occur until

the conclusion of the search of the vehicle.  (Reply, Doc. 21 at 4-6.)

**Movant's Wife** - Movant has no standing to complain about the detention and search of his wife.  "Fourth Amendment rights are personal rights which…may not be vicariously asserted…No rights of the victim of an illegal search are at stake when the evidence is offered against some other party."  *Alderman v. U.S.*, 394 U.S. 165, 174 (1969).  Consequently, any challenges by counsel on this point would have been without merit.

**Detention** - Movant attempts to distinguish cases relied upon by Respondents, *e.g. Michigan v. Summers*, 452 U.S. 692 (1981), to justify detention during a search.  He does so on the basis that the cases cited deal with searches for contraband, while the search of Movant was simply for evidence.

In a footnote, the *Summers* Court indicated they did "not decide whether the same result would be justified if the search warrant merely authorized a search for evidence." 452 U.S. at 705, n. 20.  In *Muehler v. Mena*, 544 U.S. 93 (2005), however, the Court applied *Summers* where the search was for "deadly weapons and evidence of gang membership." *Id.* at 94-95.  Moreover, this contraband/evidence distinction was explicitly rejected by the Ninth Circuit in *Dawson v. City of Seattle*, 435 F.3d 1054 (2006).  "Thus, the doctrine of *Michigan v. Summers*, permitting police officers to detain individuals during a search, and the principle of *Muehler*, holding that the authority to detain incident to search is categorical, apply to all searches upon probable cause, not just to searches for contraband." *Dawson*, 435 F.3d at 1066.

Even assuming that this remained a significant distinction, Movant's factual premise is flawed.  Here, the warrant to search the vehicle included not only evidentiary types of things (correspondence, records, etc.), but "images of child pornography and files containing images of child pornography."  (CR Doc. 47, Mot. to Supp. at Exhibit B, Warrant, at Attachment B, at 56.)  Such images would be contraband the same as the narcotics being searched for in *Summers*.

Accordingly, any challenge based upon the detention would have been without

merit.

**_Miranda_ Warnings** - Movant complains that he was not given *Miranda* warnings.   Respondent properly argues that *Miranda* only applies to "custodial interrogation", but makes the logical jump that Movant's *Summers* detention during the search did not require the warnings.  (Response, Doc. 15 at 19.)  However, in *U.S. v. Kim*, 292 F.3d 969 (9th Cir. 2002) the court explicitly rejected an argument by the government that the principles of *Summer* "support the conclusion that police officers executing a search warrant need not give *Miranda* warnings to an individual detained and questioned during a search."  *Id.* at 976.

> The police did not interrogate Summers during the detention. If they had asked questions going beyond a brief *Terry*-type inquiry, see Terry v. Ohio, 392 U.S. 1, 29, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968) (permitting a brief stop and inquiry that are "reasonably related in scope to the justification for their initiation"), Summers would, it appears, have been entitled to *Miranda* warnings.

Kim, 292 F.3d at 976.  The *Kim* court went on to conclude that the detention in that case had morphed into a custodial interrogation which required *Miranda warnings*.

Nonetheless, here Movant makes no assertions that any interrogation ensued. (*See e.g.* Memorandum, Doc. 2 at 3-4.)  Nor does Movant suggest that any statements were made by him while he was detained, nor that any such statements were entered into evidence against him.  (*Id.*)

"Our cases also make clear the related point that a mere failure to give *Miranda* warnings does not, by itself, violate a suspect's constitutional rights or even the Miranda rule."  *U.S. v. Patane*, 542 U.S. 630, 641 (2004).  "Potential violations occur, if at all, only upon the admission of unwarned statements into evidence at trial."  *Id.*

Consequently, any challenge based upon the lack of *Miranda* warnings would have been without merit.

**Search of Personal Effects** – Finally, Movant complains that he was searched as part of the search of the vehicle. However, "police officers with probable cause to search a car may inspect passengers' belongings found in the car that are capable of concealing

the object of the search." *Wyoming v. Houghton*, 526 U.S. 295, 307 (1999). Here, the categories of objects being searched for, *e.g.* passwords, encryption keys, etc. (*see* CR Doc. 47, Mot. to Supp. at Exhibit B, Warrant, at Attachment B, at 60), could easily be concealed in a pocket, wallet, etc.

Moreover, even assuming that the searches were prohibited, Movant makes no suggestion that any evidence used at trial was obtained during or derived from the search of his person, wallet, etc. as opposed to the search of the vehicle.

Consequently, any challenge based upon the search of Movant and his personal effects would have been without merit.

**f.   Summary re Ground 1** – Movant fails to show that counsel performed deficiently in challenging the various searches, warrants, etc. Accordingly, Ground 1 is without merit and must be denied.

**2.  Ground 2: Ineffective Assistance re Double Jeopardy**

In his Ground 2, Movant alleges that counsel was ineffective in allowing Movant to be indicted, tried, and convicted in violation of Movant's right to be free from double jeopardy. Movant's theory is that possession is a lesser included offense of transportation, and thus he could not properly have been convicted of both types of offenses. Respondent argues that the possession charges were not lesser included offenses of the transportation offenses because the images in the three possession charges were different than the images in the three transportation charges. (Answer, Doc. 15 at 20.) Movant replies that simultaneous possession of more than one image may only result in one conviction, citing *U.S. v. Polouizzi*, 564 F.3d 142 (2nd Cir. 2009) and *U.S. v. Chiaradio*, 684 F.3d 265, 279 (1st Cir. 2012). In support of his contention that possession is the lesser included offense of transportation he cites *U.S. v.* Kennedy, 643 F.3d 1251 (9th Cir. 2011) and *U.S. v.* Davenport, 519 F.3d 940 (9th Cir. 2008). (Reply, Doc. 21 at 6-8.)

**Multiple Possession Charges** –   Movant argues that the three possession charges amounted to a single offense, citing *Poluizzi* and *Chiaradio*.

In *Polouizzi*, the defendant was convicted of violations of 18 U.S.C. § 2252(a)(4)(B).  That statute proscribes the possession of "*1 or more* books, magazines, periodicals, films, video tapes, or other matter which contain *any visual depiction*" of child pornography. (Emphasis added.)   The *Polouizzi* court concluded that this construction made the focus on the possession of the matter which contained *any* number of images, and thus a single book or other repository containing multiple images would only amount to one violation.  Moreover, because it referred to "1 or more," then "a person who simultaneously possesses multiple books, magazines, periodicals, films, video tapes, or other matter containing a visual depiction of child pornography [is subject] to only one conviction under 18 U.S.C. § 2252(a)(4)(B)."   564 F.3d at 155.  Similarly, the Ninth Circuit had concluded many years before that under § 2252(a)(4)(B) "the 'matter' is the physical medium that contains the visual depiction—in this case, the hard drive of Lacy's computer and the disks found in his apartment."  *U.S. v. Lacy*, 119 F.3d 742, 748 (9th Cir. 1997).

But, here Movant's convictions for possession were under 18 U.S.C. § 2252A(a)(5)(B), not § 2252A(a)(4)(B).   (CR Doc. 97, Judgment.)   This provision proscribes possession of "*any* book, magazine, periodical, film, videotape, computer disk, or any other material that contains an image of child pornography."  18 U.S.C. § 2252A(a)(5)(B) (emphasis added).  In *U.S. v. Hinkeldey*, the Eight Circuit relied upon that very distinction ("1 or more" vs. "any") to distinguish *Polouizzi* in a plain error analysis applying § 2252A(a)(5)(B).  626 F.3d 1010, 1014 (8th Cir. 2010).  Similarly, in *U.S. v. Chiaradio,* 684 F.3d 265 (1st Cir. 2012), upon which Movant relies, the First Circuit distinguished *Polouizzi* on the same basis.

> With respect to possession offenses, section 2252A(a)(5)(B) prohibits knowingly possessing "*any* book, magazine, periodical, film, videotape, computer disk, or any other material that contains an image of child pornography." 18 U.S.C. § 2252A(a)(5)(B) (emphasis supplied). The use of the word "*any*" contrasts sharply

with section 2252(a)(4)(B), which criminalizes possessing "*one or more*" matters containing any image. Id. § 2252(a)(4)(B) (emphasis supplied).

*Chiaradio*, 684 F.3d at 275.  Thus, under § 2252A(a)(5)(B), the possession of multiple materials establishes multiple violations.

Thus, in *U.S. v. Woerner*, 709 F.3d 527 (5th Cir. 2013), the Fifth Circuit addressed this issue under §2252A(a)(5)(B) (which Movant was convicted of violating), and held that each different "material" (containing one or more images) was a separate offense. "The allowable unit of prosecution for § 2252A(a)(5)(B) is each 'material,' or medium, containing an image of child pornography." *Woerner*, 709 F.3d at 540. In that case, two separate convictions were sustained based upon possession of a computer and a flash drive, each containing images.

*Woerner* was founded upon the Fifth Circuit's analysis in *U.S. v. Planck*, 493 F.3d 501, 504 (5th Cir. 2007) ("where a defendant has images stored in separate materials (as defined in 18 U.S.C. § 2252A), such as a computer, a book, and a magazine, the Government may charge multiple counts, each for the type of material or media possessed").  In *U.S. v. Schales*, 546 F.3d 965 (9th Cir. 2008), the Ninth Circuit cited *Planck* approvingly.

Here each of Movant's charges of possession was founded upon a separate media storage device.  Count 4 was founded upon possession of "a compact disc (referred to as CD 1)"; Count 5 on possession of "a compact disc (referred to as CD 2)"; and Count 6 on possession of "a Verbatim 4GB USB thumb drive."  (CR Doc. 35, Superseding Indictment at 2.)  Thus, *Polouizzi* is distinguishable, and *Chiaradio* supports multiple convictions.  Therefore, Movant's conviction was based on three separate violations, each based on a different "material."

Accordingly, any challenge by counsel on this basis would have been futile.

**Lesser Included Offense** – Movant argues that his possession convictions were lesser included offenses of his transportation convictions.  In support of this argument, Movant relies upon *U.S. v. Kennedy*, 643 F.3d 1251 (9th Cir. 2011) and *U.S. v.*

16

*Davenport*, 519 F.3d 940 (9th Cir. 2008).  Those cases conclude that "***possession*** of child pornography, § 2252A(a)(5)(B), is a lesser-included offense of ***receipt*** of child pornography, § 2252A(a)(2)."  *Kennedy*, 643 F.3d at 1258, n. 11 (citing *Davenport*, 519 F.3d at 945) (emphasis added).

Here, however, Movant was not convicted of *possession* and *receipt*, but of *possession* and *transportation*.  As the Court observed in *Kennedy*, that issue has not been resolved in the 9th Circuit.  "Although we have not held that possession of child pornography is a lesser-included offense of transportation of child pornography, the government has not appealed this determination, and therefore we need not reach the issue here; rather, we assume for purposes of this appeal that the district court's analysis was correct."  *Kennedy*, 643 F.3d at 1258, n. 11.  *Cf. Chiaradio*, 684 F.3d at 280 (possession of child pornography not a lesser include offense of distribution).

Moreover, an offense is only a lesser included offense if it and the greater offense are based on the same underlying conduct.   "Stated in reciprocal terms, where separate conduct supports each offense, the Fifth Amendment's Double Jeopardy Clause is not implicated."   *U.S. v. Overton*, 573 F.3d 679, 695 (9th Cir. 2009). Here, the three possession charges were founded upon Movant's possession of three sets of material, containing the images "image 943[1].jpg," "m_p_1.jpg," and "22_03797….".   In contrast, his transportation charges were founded upon Movant's transportation of three separate images, "(pthc) Izzy 02.avi," "3-10.jpg," "dogg_78956…". (CR Doc. 35, Superseding Indictment.)[4]

Accordingly, even if possession is a lesser included offense of transportation of the same images, Movant has failed to show that the underlying conduct was the same, *i.e.* the images *possessed* were the same as the images *transported*.  Consequently, this claim is without merit, and counsel was not ineffective for failing to raise it.

---

[4] Respondents proffer nothing to show that the transported images were not contained on the same "material" (e.g. CD 1, CD2 and the Verbatim drive).  But, unlike the possession provision (§ 2252A(a)(5)(B)), which is focused upon the possession of "material," the transportation provision (§ 2252A(a)(1)) is focused upon the transportation of "any child pornography."

### 3.  Ground 3: Ineffective Assistance re Prosecutorial Misconduct

In his Ground 3, Movant argues trial counsel was ineffective for failing to challenge prosecutorial misconduct based upon: (a) the prosecution of multiplicitous offenses; (b) the use of stories found on materials obtained during the vehicle search to obtain a detention order, deny a travel order, in opening statements, etc., where there was no evidence to link Movant to the authoring or knowing possession of the stories; (c) failure to investigate and disclose evidence of others using Movant's computer; (d) presentation of perjured testimony at the detention hearing; (e) failing to investigate fingerprint and DNA evidence to exonerate Petitioner; (f) permitting the illegal searches and seizures; and (g) failure to "mention" "clean" computers found at Movant's home and in his vehicles.[5]  (Memorandum, Doc. 2 at 7-11.)

### a.  Ground 3(a): IAC re Misconduct re Multiplicitous Offenses

Movant argues counsel was ineffective for failing to assert prosecutorial misconduct for prosecuting multiplicitous offenses.  Ordinarily, charging decisions are uniquely within the discretion of the prosecutor and not subject to judicial intervention.  *See U.S. v. Redondo-Lemos,* 955 F.2d 1296, 1298-99 (9th Cir.1992), *overruled on other grounds* by *U.S. v. Armstrong*, 48 F.3d 1508 (9th Cir.1995).  There are circumstances that result in an exception. *See*  Gershman, *Prosecutorial Misconduct* § 4:1, *et seq.* (2d ed.) (identifying selective, vindictive, and bad faith charging as charging decisions amounting to judicially cognizable prosecutorial misconduct).  However, Movant provides nothing to suggest that a simple decision to charge multiplicitous offenses would be an exception.

Even assuming such a claim would be cognizable, for the reasons discussed

---

[5]  In his Reply, Movant asserts additional grounds for arguing of prosecutorial misconduct, e.g. pursuing a superseding indictment with tougher charges, and threatening the use of stories regarding incest; misrepresenting Movant's wife as his ex-wife. (Reply, Doc. 21 at 8-11.)  Movant has not sought to amend his Motion to add these additional allegations, and they are factually and legally separate and distinct bases for asserting prosecutorial misconduct, and hence ineffective assistance of trial counsel. Consequently, they are not addressed herein.

hereinabove, Movant has failed to show that the charges were multiplicitous.  (*See infra* discussion concerning Ground 2 regarding double jeopardy.)

### b. Ground 3(b): IAC re Misconduct re Use of Stories

Movant argues that the prosecutor engaged in misconduct by using sexually graphic stories involving *inter alia* sexual conduct with children, where there was no evidence to link Movant to the authoring or knowing possession of the stories. Respondent argues that the stories were found on CD-1 and a RiData thumb drive found in Movant's vehicle, that trial counsel challenged their introduction, the trial court issued limiting instructions, the evidence presented was in accordance with those instructions, and the trial court issued a limiting instruction to the jury on their consideration of the evidence.  (Response, Doc. 15 at 21-23.)  Movant replies that Respondent had available to it other evidence to show Movant's knowledge, *i.e.* testimony from Movant's wife, and thus the use of the stories was simply to show a proclivity to commit the child pornography offenses.  (Reply, Doc. 21 at 8-9.)

Indeed, counsel did challenge the introduction of the stories, including the absence of evidence on some of the stories that they were authored by Movant, and that the introduction of the evidence should be precluded from use as bad act evidence under Federal Rule of Evidence 404(b) as unfairly prejudicial.  Counsel argued that while courts had found such evidence to prove intent to possess child pornography such use was subject to an undue prejudice analysis.  Counsel further argued that "the Government has substantial other forensic evidence taken from the examination of the computers and media that would support a finding that the Defendant would have had knowledge of what was contained on the thumb drives, computers, and CDs."  (CR Doc. 57, Response to Notice of Intent at 7.)

In response, the Court concluded that subject to the redactions and other limitations, the evidence was not unduly prejudicial, and that it was admissible.  (CR Doc. 70, Order 11/12/10 at 5-7.)

> The Court also concludes that the stories, as the government has proposed to redact and present them (Doc. 67), satisfy the requirements of Rule 404(b). (1) They tend to prove a material fact – that Defendant is interested in the sexual exploitation of children, a fact that tends to show Defendant knew of the child pornography on his computer and storage devices; (2) the stories were located on the laptop and storage devices found in Defendant's tractor-trailer during the search, and in Defendant's home during the search, and therefore are not too remote in time; (3) the evidence is sufficient to support a finding that Defendant authored the stories and stored them on the laptop and storage devices that also contained child pornography; and (4) Defendant's authorship of the stories is sufficiently similar to the possession of child pornography to be relevant on the question of knowledge.

(*Id.* at 7.)

Under these circumstances, the undersigned cannot find any likelihood that a different outcome would have occurred on the objection to the stories, had counsel made the additional arguments asserted by Movant (e.g. the lack of evidence of Movant's knowledge of his possession of the stories, and the availability of testimony from Movant's wife to show knowledge).

Consequently, there is no reason to believe that an assertion of prosecutorial misconduct on this basis would have been anything but futile.  Consequently, counsel was not ineffective for failing to pursue such a claim.

### c.  Ground 3(c): IAC re Misconduct re Others on Computer

In his Ground 3(c), Movant argues counsel was ineffective for failing to assert a claim of prosecutorial misconduct based upon the failure to investigate and disclose evidence of others using Movant's computer. Respondent argues that the claim is without merit because there was no evidence of such usage, and the defense was provided access to the available evidence (e.g. the seized computer and media). (Response, Doc. 15 at 23.)   Petitioner replies that the investigating agent testified that "they could not say who was using the computer or the media."  (Reply, Doc. 21 at 11.)

Movant misapprehends the duty of the prosecution with regard to exculpatory evidence.  "While *Brady* [*v. Maryland*, 373 U.S. 83, 87 (1963)] requires the Government

to tender to the defense all exculpatory evidence in its possession, it establishes no obligation on the Government to seek out such evidence." *U. S. v. Walker*, 559 F.2d 365, 373 (5th Cir. 1977). *See U.S. v. Polizzi*, 801 F.2d 1543, 1553 (9th Cir. 1986) (prosecution under no obligation to disclose material of which it was not aware nor in possession of).

Here, the testimony of the agent referenced by Movant indicates that the government had no information of use by others. Movant proffers nothing to show that such evidence existed, or that it was in the possession or control of the prosecution. Accordingly, this claim of prosecutorial misconduct would have been without merit, and counsel was not ineffective for failing to pursue it.

### d.  Ground 3(d): IAC re Misconduct re Perjured Testimony

In his Ground 3(d), Movant argues counsel was ineffective for failing to assert a claim of prosecutorial misconduct based upon the presentation of perjured testimony at the detention hearing. Movant argues Agent Shrable misrepresented at the detention hearing that he attended the execution of the search warrant at Movant's home and talked with Movant's wife between that search of the home and the search of the vehicle. Movant argues that Shrable later testified he was authorized to be on leave, that Agent Koski executed the warrant, and that Movant's wife was travelling with him at the time of the alleged conversations. (Memorandum, Doc. 2 at 9.) Respondent argues that Shrable never stated he was present when the search was conducted and clarified on redirect that the conversation may have been later, but in any event the statement at the pre-trial proceeding would not have prejudiced the outcome of the trial. (Response, Doc. 15 at 24 and n. 16.) Movant does not reply.

The prosecutor has a constitutional duty to correct testimony he knows to be false. *Napue v. Illinois*, 360 U.S. 264, 269–70 (1959). "In assessing materiality under *Napue*, we determine whether there is ' 'any reasonable likelihood that the false testimony could have affected the judgment of the jury;' ' if so, then 'the conviction must be set aside.' "

1  *Hayes v. Brown*, 399 F.3d 972, 984 (9th Cir. 2005).  Here, the alleged misrepresentations

2  were not made at trial, but at a pretrial detention hearing.  There is no indication that the

3  jury was made aware of any uncorrected falsehood.  Thus, any such falsehoods could not

4  have affected the judgment of the jury in convicting Movant.  Accordingly, this claim of

5  prosecutorial misconduct would have been without merit, and counsel was not

6  ineffective for failing to pursue it.

7

8  ### e.  Ground 3(e): IAC re Misconduct re Fingerprint and DNA Evidence

9  In his Ground 3(e), Movant argues that counsel was ineffective for failing to

10  assert a claim of prosecutorial misconduct based upon the failure to "follow through on"

11  fingerprint and DNA evidence.[6] Movant asserts that the fingerprints came from someone

12  other than Movant, and that there was DNA material that the prosecution failed to test.

13  (Memorandum, Doc. 2 at 9-10.)  Respondent argues that such evidence would have not

14  altered the outcome because it would have, at best, shown that someone other than

15  Movant touched the materials.  Respondent also argues that trial counsel cross examined

16  Agent Shrable on the failure to pursue the DNA, and the jury nonetheless convicted.

17  (Response, Doc. 15 at 24-25.)  Movant replies that the prosecution made excuses but

18  failed to pursue the material because it would have "shown Defendant['ls actual

19  innocents [sic]." (Reply, Doc. 21 at 10.)

20  Movant overstates the persuasive effect of any such evidence.  As noted by

21  Respondent, it would not have shown Movant's innocence.  At best, it would have

22  shown that someone else had touched the items. While this may have created some

23  inference that a third party may have been responsible for the child pornography, that

24  inference would have been limited.  Movant does not, for example, suggest that anyone

25  touching the items must have been the one placing the child pornography on them.

26  _____

27  [6] Email correspondence provided by Movant between the prosecution and defense counsel reflects that the fingerprint was found "on a plastic case for a camera card."  It also reflects that "[t]here was no pornography found on any of the camera cards." (Memoradum, Doc. 2 at Exhibit 1, Email 11/10/10.)  Thus, the relevance of the finger

28  print evidence would have been further limited.

Indeed, a third party may have innocently touched the items (e.g. at the time of sale, to relocate them in the residence or vehicle, etc.) without ever altering their contents. Indeed, many people could have touched them without doing so. There is no substantial likelihood that such a slight inference would have overcome the other evidence that linked Movant to the child pornography.

More importantly, as with Ground 3(c), Movant simply misapprehends the obligation of the prosecution. Movant does not suggest that the existence of the fingerprints or DNA was not disclosed to the defense, nor that the defense was not able to conduct the DNA testing. He simply complains that the prosecution failed to investigate the information they had. That was not the prosecution's obligation. *See Walker*, 559 F.2d at 373.

Accordingly, this claim of prosecutorial misconduct would have been without merit, and counsel was not ineffective for failing to pursue it.

Moreover, ineffective assistance is not shown "where counsel's actions or omissions reflected tactical decisions, even if better tactics appear in retrospect to have been available." *U.S. v. Stern*, 519 F.2d 521, 524 (9th Cir. 1975). The court need not determine the actual reason for an attorney's actions, as long as the act falls within the range of reasonable representation. *Morris v. California*, 966 F.2d 448, 456-457 (9th Cir. 1991), *cert. denied*, 113 S. Ct. 96 (1992). Here, counsel had a tactical reason for not pressing the issue of the DNA evidence by asserting prosecutorial misconduct. Such an effort would likely have resulted in the prosecution pursuing the testing. At best, the testing might have shown contact with the media by a third party. This would, as discussed above, have been of limited effect. At worst, it could have reflected Movant's DNA. By not challenging the issue, counsel was able to argue the question of whose DNA it was, and the ability to make the implication that the prosecution was hiding something by not pursuing testing.

Indeed, counsel elicited testimony from Agent Shrable on the point:

Q   And there was some cellular material located on some of the storage devices or adapters; is that correct?
A   As reflected in the report from the Arizona Department of Public Safety, that is correct.
Q   And they indicated that if the government desired to do any DNA analysis, that it would be necessary to obtain a blood sample from the defendant; is that correct?
A   That is correct.
Q   And there was no attempt to do that; is that correct?
A   There was not.

(CR Doc. 112, R.T. 11/18/10   at 397-398.)   Counsel made further use of the lack of testing at closing:

You also heard testimony there was some DNA material found on some of the cases for some of the media and that the government did not bother to do any testing on this material.  The excuse given was that they did not have enough time to get the DNA testing done. I would remind you that the evidence here was seized in February 18th of 2010 and it's been nine months since that time.

(CR Doc. 113, R.T. 11/19/10 at 441.)

Accordingly, counsel had a reasonable tactical basis for not pursuing this claim of prosecutorial misconduct, and thus was not ineffective for not doing so.

### f.  Ground 3(f): IAC re Misconduct re Illegal Searches and Seizures

In his Ground 3(f), Movant argues that counsel was ineffective for failing to assert a claim of prosecutorial misconduct based upon the illegal searches and seizures. Respondent points to the lack of merit to the attacks on the searches.  Movant does not reply on this issue.

Even if, assuming *arguendo,* that a prosecutor engages in misconduct justifying relief from a conviction by proceeding with a prosecution involving an illegal search or seizure, then for the reasons discussed hereinabove in connection with Ground 1, Movant has failed to show that there were illegal searches or seizures conducted in this case, or that nay prejudice resulted.

Accordingly, this claim of prosecutorial misconduct would have been without merit, and counsel was not ineffective for failing to pursue it.

/ /

### g.  Ground 3(g): IAC re Misconduct re Clean Computers

In his Ground 3(g), Movant argues that counsel was ineffective for failing to assert a claim of prosecutorial misconduct based upon the prosecution's failure "to mention" that four of the five computers found in the home and vehicle were "clean" of any child pornography.  (Memorandum, Doc. 2 at 10-11.)  Respondent does not respond on this claim, and Movant does not reply.

Just as there is no obligation to investigate for exculpatory evidence, Movant points to no obligation of the prosecution to present or argue exculpatory evidence. The undersigned knows of none.  At most, there is an obligation to disclose the information when it is in the prosecution's possession.  Movant does not suggest that the defense was not provided that information.

Accordingly, this claim of prosecutorial misconduct would have been without merit, and counsel was not ineffective for failing to pursue it.


### h.  Summary re Ground 3

Movant's Ground Three is based on  the contention that trial counsel was ineffective in failing to pursue challenges based on prosecutorial misconduct.  For the reasons discussed hereinabove, Movant has failed to show a viable claim of prosecutorial misconduct.  Accordingly, counsel was not ineffective for failing to pursue such claims, and Ground 3 is without merit.


## 4.  Ground 4: Ineffective Assistance re Failure to Object to Prior Bad Acts

In his Ground 4, Movant argues that trial counsel was ineffective for failing to object to the evidence of the "stories."  Movant argues that there was insufficient evidence to link the stories to Movant, pointing to a brother-in-law as potential source, and arguing that the indication that the stories were authored by "Richard Self" could have been a fraudulent ruse.  Further, Movant argues that the evidence was cumulative, confusing, and unduly prejudicial, serving only to paint him as a "bad man."  In support

of his claim, Movant cites *U.S. v. Johnson*, 439 F.3d 884 (8th Cir. 2006) and *U.S. v. Grimes*, 244 F.3d 375 (5th Cir. 2000).   Respondent argues that the claim is meritless, pointing to counsel's objections to admission of the evidence, and objection at trial, and for the reasons discussed in connection with Ground 3(b).  (Response, Doc. 15 at 25.) Movant replies that trial counsel only opposed the stories as cumulative, repetitive, and misleading, but failed to oppose them on the basis of a lack of attribution to Movant, and to assert the potential of a fraudulent use of Movant's name as an author.

Trial counsel did oppose the introduction of the stories, including arguing that they were not "intertwined" with the charged offenses and thus not necessary to presenting a comprehensible story of the commission, inadmissible under Rule 404(b), and unfairly prejudicial under Rule 403.  (CR Doc. 57, Response at 5-8.) At trial, counsel renewed the objection as to each story admitted. (CR Doc. 112, R.T. 11/18/10 at 351, 352, 354.)

Movant argues that counsel should have objected on the basis of a lack of attribution to Movant.  There was, however, a basis for attribution, including the fact that the stories had been found on Movant's media, purported to be authored by Movant, and reflected characteristics of Movant (e.g. his name, status as a truck driver, and purported status as a veteran of the Vietnam war).  (CR Doc. 112, R.T. 11/18/10 at 350-355.) Although not irrebuttable evidence of Movant's authorship or even ownership of the stories, there was evidence which connected the stories to Movant.  Thus, an objection on that basis would have been futile.

Although such matters would not have supported an "objection," trial counsel did seek to argue to the jury that the stories could not be attributed to Movant. Trial counsel argued at closing that multiple people had access to Movants residence and the computer and other media, and Movant was away for extended periods of time.  (CR Doc. 113, R.T. 11/19/10 at 442-444.)

Movant complains that counsel did not present evidence of a fraudulent use of Movant's name.  Movant proffers nothing to show that counsel was aware of any

1  fraudulent use of Movant's name, or had reason to investigate.  The use Movant points to

2  was a fraudulent scheme to obtain a mortgage on a victim's property, transferring the

3  proceeds into an account in the name of "Richard Self."  (CV-08-0838-PHX-MHM,

4  *Jernigan v. Ryan*, Doc. 18, Report & Recommendation at 2-3.)  Movant proffers nothing

5  to suggest that counsel was aware of this case, had any reason to pursue an investigation

6  that would have led to the case, or that it was anything more than a coincidence that

7  Movant's name was used in that case.

8       Movant suggests challenges under Rule 404(b) based on *Johnson* and *Grimes*.

9  That rule provides: "Evidence of a crime, wrong, or other act is not admissible to prove a

10  person's character in order to show that on a particular occasion the person acted in

11  accordance with the character."

12       In *Johnson*, the court observed that, under the rule, prior bad act evidence may be

13  admitted for purposes other than to prove criminal disposition.   The defendant in

14  *Johnson* was charged with possession of child pornography, did not deny possession, but

15  asserted that the pornography had been inadvertently downloaded without his

16  knowledge.  The prosecution sought to introduce evidence that the defendant possessed

17  paper copies of stories of rape of young girls.  The Eighth Circuit observed:

18 
19 
20 
> Offering the stories added nothing to aid the jury in determining whether child pornography could be inadvertently downloaded. Instead, it encouraged the jury to conclude Johnson intentionally and knowingly sought out images of child pornography because he had a propensity to possess such materials.

21  *Johnson*, 439 F.3d at 888.  Thus, the court concluded that the evidence was offered to

22  prove criminal disposition, in violation of Rule 404(b).

23       Similarly, in *Grimes*, the Fifth Circuit faced a defendant charged with possession

24  of child pornography, who argued that the images had been inadvertently obtained.  The

25  government sought to introduce evidence that narratives of sexual abuse of minors were

26  also found on the computer, which had been downloaded the prior year.  There, however,

27  the court concluded that the narratives were admissible under Rule 404(b), because they

28  were probative of intent to possess the images, an issue other than the defendant's

character.   Nonetheless, the Fifth Circuit went on to find that the portions of the narratives introduced were so graphic as to be unfairly prejudicial.   Thus, *Grimes* would not have supported an argument under Rule 404(b).

Here, trial counsel's argument under 404(b) was not supported by *Johnson* (or *Grimes*) but was supported by an in depth discussion of the Ninth Circuit's opinion in *U.S. v. Curtin*, 489 F.3d 935 (9th Cir. 2007) (*en banc*). (CR Doc. 57, Response at 6-7.)

In *Curtin*, the defendant was charged with crossing state lines to engage in a sexual act with a minor, and when arrested had stories of sex with minors on an electronic device.   The "minor" was actually an undercover agent, posing as a 14 year old girl, with whom the defendant had engaged in internet chats to arrange a meeting. The defense at trial was that the defendant believed the person he was to meet was an adult woman posing as a minor in role-playing and fantasy.   The government sought to introduce the stories to show that the defendant's intent was to engage in sex with a minor, not sex with an adult.   The Ninth Circuit held that the stories "had probative value with respect to the intent element of the specific intent crime for which he was prosecuted."   *U.S. v. Curtin*, 489 F.3d 935, 959 (9th Cir. 2007).   Nonetheless, like the court in *Grimes*, the Ninth Circuit held that the trial court had erred in finding an absence of unfair prejudice under Rule 403, based in large part on the trial court's failure to actually read the stories before ruling, which also included descriptions of bestiality.

Trial counsel, who was litigating in the Ninth Circuit, not the Eighth, might have preferred to rely upon a case such as *Johnson*.   But the controlling authority in the Ninth Circuit was *Curtin*, not *Johnson*.   So, trial counsel diligently tried to distinguish *Curtin* on the basis that it involved a defense of a denial of the requisite intent, while Movant's defense was founded upon a denial of knowing possession. He also attempted to distinguish *Curtin* on the basis that there was other evidence to establish Movant's knowing possession (e.g. the forensic evidence from the computer files, etc.), while in *Curtin* the stories were "critical" to the government's case.   Still, (perhaps realizing the weakness of that argument), trial counsel argued the most beneficial component of

*Curtin*, *i.e.* its mandate for a careful review of the proffered narratives as part of determining unfair prejudice.

Thus, trial counsel did mount as good a defense under Rule 404(b) as the controlling precedent in the Ninth Circuit would permit.

Finally, to the extent that more could have been done, trial counsel could have made a reasonable tactical decision to focus his challenges to the story evidence on their prejudicial effect.  This was in line with the holdings of not only *Curtin*, but of *Grimes* as well.

In sum, Movant fails to show that counsel performed deficiently in objecting to the introduction of the story evidence.  Accordingly, Ground 4 is without merit and must be denied.

## 5.  Ground 5:  Ineffective Assistance re Omitted Evidence

In his Ground 5, Movant argues that trial counsel was ineffective in failing to admit various evidence, including: (a) that other people had access to Movant's residence, computers, computer accounts, and media, and the media (CDs and thumb drives) containing child pornography also contained files related to such third parties; (b) none of his five computers had child pornography in allocated memory; (c) only one of the five computers had child pornography in unallocated space; (d) child pornography was obtained from locations under shared possession with Movant's wife (e.g. her bathroom cabinets, amongst her belongings, and in the center of the top bunk area of the semi truck which she was standing next to when they were stopped; (e) evidence that Movant had purchased the thumb drives to download his wife's pictures; (f) witnesses that he rarely took a computer on the road, and never the one found in the truck, and never took CDs, and always bought types and brands of CDs different from those found; (g) that his thumb drives had disappeared the month before; (h) that illegal activity had occurred in his bank account which resulted in refunds; and (i) that Movant's wife was a perjurer.  (Memorandum, Doc. 24 at 13-16.)

### a. Ground 5(a): Access by Others

In response to Movant's argument in Ground 5(a) concerning the access by third parties to the computers, accounts, and media, Respondent argues that trial counsel elicited a variety of evidence concerning the mutual access.

> Ms. McClellan [trial counsel] elicited evidence that others lived in Defendant's household and could have accessed his AOL account when cross-examining the government's witnesses. In her cross-examination of government witness Dean Sehm, Ms. McClellan elicited testimony that Defendant's ex-wife, Sherry Self, lived in his house while they were married; that Defendant's neighbor had access to Defendant's house; that Defendant was previously married to Mildred Self and that Mildred Self owned a computer; and that Sherry Self and his daughter, Robin Self, would often accompany Defendant on trucking trips for long periods of time. (RT 11/17/2010 170-72.) In her cross-examination of government witness ICE SA John Koski, Ms. McClellan elicited testimony that none of the rooms in Defendant's residence were locked when the search warrant was executed and a fingerprint found on a seized item of evidence did not match Defendant's fingerprints. (RT 11/17/2010 213-14.) In her cross-examination of government witness Sherry Self, Ms. McClellan elicited testimony that a number of people had previously lived in Defendant's residence; that a number of people visited Defendant's residence; that six different people had keys to Defendant's residence; that Defendant was gone for extended periods of time because he was a truck driver; that both she and Robin Self would sometimes accompany Defendant on those trips; and that other persons drove Defendant's Kenworth semi-truck/trailer. (RT 11/17/2010 260-65.) In her cross examination of government witness Richard Kaplan, Ms. McClellan elicited testimony that a person with Defendant's user name and password any person could access his AOL account. (RT 11/17/2010 308.) In her cross-examination of government witness ICE SA David Potosky, Ms. McClellan elicited evidence that SA Potosky did not have actual knowledge of who downloaded the child pornography; that SA Potosky did not know who inserted the thumb drives in the computer; that SA Potosky did not know who conducted the searches for child pornography on Defendant's computer; and that anyone using Defendant's account could have conducted the searches. (RT 11/17/2010 384-85.)

(Response, Doc. 15 at 25-26.)

In reply, Movant asserts, in effect, that counsel only addressed these issues in cross examination, and did not affirmatively introduce evidence to show the mutual access. Movant identifies the following evidence available to counsel: (1) evidence from AOL (reflected in Exhibits 3 and 5 to his Memorandum (Doc. 24)); (2) report from the defense's forensic examiner showing someone else's use; (3) a receipt for the purchase

of six thumb drives by Sharon Self one month before the search of the truck; (4) unidentified witnesses to the mutual access; and (5) an unidentified witness to the use of the computer by his wife. (Reply, Doc. 21 at 13-14.)

**AOL Evidence** – In support of his contention that counsel had exculpatory evidence from AOL, Movant points to Exhibits 3 and 5 to his Memorandum (Doc. 24) in support of his Motion. However, Exhibit 3 is the defense's Forensic Examiner's report and makes no reference to exculpatory information from AOL. Exhibit 5 is Administrative Subpoena to AOL, and simply provides what appears to be a printout of logins. Movant fails to suggest what exculpatory information is reflected in that exhibit.

Moreover, as noted by Respondent, trial counsel did introduce evidence through cross examination of Richard Kaplan, the government's computer forensic examiner, that the use of the AOL account was not an irrefutable connection to Petitioner.

> Q    Just a few questions, Mr. Kaplan.
>            Those records indicate who was being billed for this account; is that correct?
> A    Yes.
> Q    But it does not indicate - - you cannot learn from these records who the person was that was at the computer at this specific time mentioned here. You don't know who that person is; is that correct, based on these records?
> A    That's correct. I'm just reading the records.
> Q    Anyone that was utilizing this IP address who had the correct password and other information needed to access the website on that account could have done that, correct?
> A    Well, there's two different sets of records here. For the AOL set of records you would indeed need the user name and password of the AOL, that AOL account. For the Verizon record you would need the actual piece of hardware or device that would connect you to the Internet in order to be logged on at that time.
> Q    But if you had that hardware, and you had the information you could access it - - any person could; is that correct?
> A    Yes.

(CR Doc. 112, R.T. 11/18/10 at 307-308.) Movant fails to suggest what additional information could have been adduced from the AOL records.

**Forensic Examiner** - The defense's forensic examiner conducted a review of the computer files. Movant does not indicate the basis on which he concludes that the examiner would have shown a third party's use of the computers or media. There is no

indication of such a finding in the copy of the examiner's report provided by Movant. (Memorandum, Doc. 24 at Exhibit 3.)

Moreover, the examiner would have been subject to cross examination on a number of potentially damaging points, including: (a) findings on the Acer Aspire 5720 that reflected 480 hits on the child pornography site DreamZone, including references to Movant's email address, downloads of child pornography, visiting other child pornography sites (*id.* at 12); (b) findings on CD 1 of 1082 child pornography images, and videos from 2006 (*id.* at 18); (c) findings on CD 2 of 36 images of child pornography from February, 2008 (*id.*); (d) findings on one R Data thumb drive of 55 images of child pornography, created on December 31, 2008, approximately a half hour after nude images of Movant and an unknown woman were created (*id*); (e) findings on another R Data thumb drive of 40 WordPerfect files, all containing a header "By Richard Self" and containing incest and child pornography stories (*id.* at 19); (f) findings on one SimpleTech thumb drive of 60 files of child pornography (*id.*); (g) findings on one Verbatim thumb drive of 209 images of child pornography from December 2008 (*id.*); and (h) findings on another Verbatim thumb drive of approximately 5,900 images of child pornography, including banner images for DreamZone and indications that the images originated from that site (*id.*).  Thus trial counsel had a reasonable tactical basis for declining to call the defense's forensic examiner.

**Receipt for Thumb Drives** – Movant argues the thumb drives were purchased by his wife.  Movant proffers nothing to support this contention.

Moreover, Movant fails to show how this evidence was significant.  To be sure, Movant attempts to paint the thumb drives as belonging to his wife, e.g. by arguing her purchase of them, that they were in her thumbdrive case, and that they were in her favorite color.  However, none of this precludes Movant's use of the thumb drives.  The drives were discovered in Movant's vehicle, in a case containing thumbdrives Movant indicates were his own. (Memorandum, Doc. 24, Exhibit 20.)  Moreover, Movant's ex-wife described the thumbdrives, as well as the case, as belonging to Movant.  (CR Doc.

112, R.T. 11/18/10 at 250-251.)

**Witnesses**- Movant makes broad references to a laundry list of unidentified witnesses, and makes assertions that they would have testified to the mutual access to the computers, and the use of his computer by his ex-wife.

With regard to his wife's access to his computer, Movant fails to identify who would have supplied such testimony, simply stating "Defense has a witness that could testify" to her access to the computer.  (Reply, Doc. 21 at 14.)   With regard to the others with access, Movant simply states that "Defense counsel had witnesses."  (*Id.*)

A habeas petitioner may not establish ineffective assistance by simply alluding to potential evidence.   A petitioner may not simply speculate about what a witness' testimony might be, but must adduce evidence to show what it would have been.  *Grisby v. Blodgett*, 130 F.3d 365, 373 (9th Cir. 1997).   "[E]vidence about the testimony of a putative witness must generally be presented in the form of actual testimony by the witness or on affidavit. A defendant cannot simply state that the testimony would have been favorable; self-serving speculation will not sustain an ineffective assistance claim." *U.S. v. Ashimi*, 932 F.2d 643, 650 (7th Cir. 1991).

Presumably, Movant could have been called to testify about much of the information.  However, Movant would have then been subject to cross examination on a variety of issues.

There were witnesses that Movant proposed to the trial court to testify concerning others' access to the computers, and Movant argued that trial counsel wrongly refused to call them, *i.e.* his daughter Robin, his stepdaughter Laura and her husband Jim Holdgrafer.  (CR Doc. 112, R.T. 11/18/10 at 237-239.)   Counsel explained to the trial court:

> MS. McCLELLAN:   Your Honor, we have interviewed Robin Self and James Holdgrafer and it was my conclusion that those witnesses would not be beneficial for his case and that's why I've decided not to call them.  I told Mr. Self that he can testify, and be prepared for that.  And if he wants to testify, that is his decision. But I told him it's my decision about what other witnesses we're going to call and it was my decision not to call them.  If I thought

that they had exculpatory testimony, I would certainly put them on the stand. But in my opinion, they would not be helpful.

THE COURT: Why do you think they would not be helpful?

MS. McCLELLAN: Well, they do not - - they cannot say whether they knew there was any child pornography on those computers. We can't do an alibi, so to speak, for the entire four-year period that the child pornography was - - the different time periods that there was child pornography downloaded. The testimony would not be possible for them to say he never had an opportunity to download. They would confirm that they did not put that child pornography on the computers. And I think other witnesses have verified that Mr. Holdgrafer had access to the home and Mr. Sehm knew he had lived in the home.

And I'm also concerned about Robin Self because of the fact she's in those photographs in the truck that are not being - - but if she testifies I'm concerned there could be cross-examination regarding that issue. And her character. And when they interviewed Mr. Holdgrafer, he said he had read some material. He said he was a good writer. Would be absolutely harmful to the case.

So none of them have information that someone else put child pornography on the computers. So I just - - I do not believe they would be helpful and in some sense they could actually be harmful to the case.

(CR Doc. 112, R.T. 11/18/10 at 240-241.)   Thus, at least as to these witnesses, trial counsel had strong tactical reasons to not call them. The more people who had access to the computer who were called to testify, who would then deny responsibility for the child pornography, the more evidence there would be pointing to Movant. And Movant's daughter bore special risks. The trial court ultimately precluded introduction of the photographs found on one of the thumb drives "of Defendant and his adult daughter naked, in his tractor-trailer, wearing only santa hats," finding that they were "not child pornography and likely would inflame the jury with suspicions of incest," and thus were excludable under Rule 403. (CR Doc. 70, Order 11/12/10 at 9.)

Even if the Court could conclude it might have taken a different approach, that would not justify a finding of ineffective assistance. "Mere criticism of a tactic or strategy is not in itself sufficient to support a charge of inadequate representation." *Gustave v. United States*, 627 F.2d 901, 904 (9th Cir. 1980). Movant proffers nothing to suggest that the decision was outside the wide range of professionally competent assistance.

Moreover, there was substantial, undisputed evidence before the jury of such

access.   Defense counsel elicited testimony from Dean Sehm, Movant's stepdaughter's husband, that Movant's stepson, Jim Holdgrafer had access to Movant's house.  (CR Doc. 111, R.T. 11/17/10 at 171.)  And Sehm testified that Movant's deceased wife had lived in the home and used a computer.  (*Id.*)  Defense counsel elicited testimony from Agent Koski that Holdgrafer had let them into Movant's house to execute the search warrant.  (*Id.* at 213.)   The prosecution elicited testimony from Movant's ex-wife that Movant's special needs daughter lived with them and had a computer that she used in the home, and that the ex-wife's brother had lived with Movant for some time in 2008-2009. (CR Doc. 112, R.T. 11/18/10 at 256-257.)   Defense counsel elicited testimony from Movant's ex-wife that Movant's daughter Robin had lived in his home in 2009, and that Jim and Laura Holdgrafer, Berneta and Dean Sehm, and Robin all had keys to the home and that Laura Holdgrafer's sister, Sandy, and a respite worker also came to the house. (*Id.* at 261-263.)   Through this testimony, counsel was able to provide potential other sources for the child pornography, without having them dispelled by providing opportunities for those sources to disclaim using the computer or other responsibility. Movant proffers no reason to believe that further evidence on this point would have swayed the jury from concluding that the child pornography found was attributable to Movant.

**b. 5(b) and 5(c) Child Pornography in Computer Memory** – Movant argues counsel was ineffective for failing to present evidence that none of his five computers had child pornography in allocated memory.  Movant also argues counsel was ineffective in failing to present evidence that only one of the five computers (Petitioner's Acer 5720) had child pornography in unallocated space.

There was evidence proffered to show that the child pornography was not in allocated space on Petitioner's computer.   On direct examination, the prosecution's computer forensic examiner Potosky testified that he examined the hard drive of Petitioner's Acer laptop (trial exhibit 5A) and although he found child erotica and adult

pornography, he reported no child pornography.  (CR Doc. 112, R.T. 11/18/10 at 336-337.)  On the other hand, he also testified that it had been used to access the Dreamzone child pornography website and a folder containing child pornography on one of the thumb drives.  (*Id.* at 346.)

Movant proffers nothing to suggest that any of this evidence would have altered the outcome of the trial.  The prosecution proffered substantial evidence tending to show that Movant had accessed the Dreamzone child pornography website, as well as the thumbdrives containing child pornography, with his laptop. Moreover, the prosecution proffered substantial evidence tending to show that Movant kept child pornography on removable devices and CD drives, etc., rather than preserving it on his computers.  Not only was the presence of child pornography saved on the computers unnecessary to the prosecution's case, its absence was not inconsistent with the prosecution's theory of the case (*i.e.* that Movant consistently stored his collection of child pornography on other devices).

**c. 5(d)  Shared Access Areas** –  Movant argues that trial counsel was ineffective for failing to present evidence that child pornography was located in areas under shared possession with Movant's wife (e.g. her bathroom cabinets, amongst her belongings, and in the center of the top bunk area of the semi-truck which she was standing next to when they were stopped).

In support of this argument, Movant cites a series of cases attempting to define possession in cases where contraband is not found on the defendant's person, but in an area under shared control with others. For example, Movant cites *Delgado v. U.S*, 327 F.2d 641(9th Cir. 1964).   In that case, a search of the defendant's home revealed marijuana in the drawer of a night stand next to a bed shared by the defendants.  The government failed to introduce any evidence to show possession by either defendant or even both.  "But here it is pure speculation as to whether Rodriguez alone, or Delgado alone, or both of them, had possession. No doubt one of them did; perhaps both did."

327 F.2d at 642.

In contrast, here there was substantial evidence to link the child pornography to Movant (*e.g.* the ties to Movant's computer, his writing on the CDs and thumbdrives, the stories showing his authorship and involving his personal details tending to show his interest in pedophilia, etc.)

Moreover, there was evidence before the jury that permitted the inference that there was shared access.  This was not child pornography, erotica, etc. found in some hidden place to which Movant had no access or which jurors might presume were not accessible to others.  Rather they were found in computers and thumbdrives and bathroom cabinets that a reasonable juror would infer was accessible at least to Movant's wife.  Movant' fails to proffer anything to suggest that direct testimony on this point would have altered the outcome of the proceeding.  *See Strickland*, 466 U.S. at  687-88.


**d. 5(e) Purchase of Thumbdrives** – Movant argues that counsel was ineffective for failing to introduce evidence to show that Movant had purchased the thumb drives to download his wife's pictures.  Movant fails to suggest who would have proffered such testimony.

Moreover, Movant's ex-wife testified that various thumbdrives had been used to download her pictures.  (CR Doc. 112, R.T. 11/18/10 at 251.)  But she also testified that she had never personally used the thumbdrives, but relied on Movant to download pictures to them.  (*Id.*)  Movant fails to suggest what additional exculpatory inference would have arisen from evidence that Movant had purchased thumbdrives specifically for that purpose, and thus fails to show a reasonable probability that direct testimony on this point would have altered the outcome of the proceeding.  *See Strickland*, 466 U.S. at 687-88.


**e. 5(f) Traveling Without Computer and CDs, etc.** - Movant argues that counsel was ineffective for failing to introduce evidence to show that he rarely took a

computer on the road, and never the one found in the truck, never took CDs, bought a different type and brand of CDs, etc..  Movant fails to identify who would have testified on this point.

Moreover, the testimony at trial was that the computer was even specially equipped to be secured to the steering wheel to be used in his truck.  (CR Doc. 112, R.T. 11/18/10 at 248.)

Movant fails to show a reasonable probability that direct testimony on this point would have altered the outcome of the proceeding.  *See Strickland*, 466 U.S. at  687-88.

**f.  5(g)   Disappearance of Thumbdrives** – Movant argues that counsel was ineffective for failing to introduce evidence to show that his thumb drives had disappeared the month before.  Movant fails to identify who would have provided such testimony.  Moreover, Movant fails to suggest how this would have altered the outcome of the proceeding.  Movant does not, for example, suggest a reason why the jury would have inferred from such theft that the child pornography found on the thumbdrives in Movant's possession was not his.  Given the substantial evidence attributing the child pornography to Movant, the undersigned cannot find a reasonable probability that evidence on this point would have altered the outcome of the proceeding.  *See Strickland*, 466 U.S. at  687-88.

**g.   5(h) Illegal Access to Bank Account** - Movant argues that counsel was ineffective for failing to introduce evidence to show that illegal activity had occurred in his bank account which resulted in refunds.  Movant fails to show how this would have been exculpatory.

Perhaps Movant believes that this would have called into question the charges from the Dreamzone website on Movant's bank card.  However, those charges were attributed to Movant by the evidence on his computers (e.g. emails) showing access to and purchasing of access on the Dreamzone site. Movant fails to show a reasonable

probability that evidence on this point would have altered the outcome of the proceeding. *See Strickland*, 466 U.S. at 687-88.

**h. 5(i) Impeachment of Ex-Wife** - Movant argues that counsel was ineffective for failing to introduce evidence to show that Movant's wife was a perjurer. (Memorandum, Doc. 2 at 16.)  In support, Movant references his Exhibits 12 and 17.

Exhibit 12 is a Petition for Order of Protection filed by Movant's ex-wife.  He contends she lied when asserting he had asked her to take his disabled daughter out of the state, and that he had been arrested for sexually abusing his other daughter.

Exhibit 17 is his ex-wife's Petition for Annulment of Marriage, dated March 4, 2010.  She alleged that he was "currently under investigation and is on the run from the FBI, Homeland Security, Immigration and Customs Enforcement for suspected drug smuggling" and that he had a "prior arrest for sexual assault against his daughter." (Memorandum, Doc. 24, Exhibit 17, Petition at 2.)

Federal Rule of Evidence 608(b) provides that "extrinsic evidence is not admissible to prove specific instances of a witness's conduct in order to attack or support the witness's character for truthfulness."  Thus, trial counsel would not have been able to introduce evidence to show that Movant's ex-wife had lied in these two petitions.

Moreover, Petitioner proffers no evidence to counter the contentions asserted in these documents.  He simply provides his own bald assertions that they were false.

To be sure, he provides a letter from his daughter, Robin, denying any molestation of her disabled sister.  (Memorandum, Doc. 24, Exhibit 22.)  However, this was based on her assertion that she was "told the story how she accused my dad of molesting her…[and when confronted] it wasn't true."  (*Id.* at 1-2.)  Thus, any testimony by Robin on this point would have been hearsay, and inadmissible. *See* Federal Rule of Evidence 802, *et seq.*

Movant also provides a statement from Robin denying that Movant molested her or that he "went to jail."  (Memorandum, Doc. 24, Exhibit 13.)  However, counsel would

have had a tactical reason to not present testimony by her, given the nude photos of her and Movant found amongst Movant's computer files.

Moreover, counsel would have had a tactical reason to not impeach Movant's ex-wife on the issue of the molestation allegations, which would have brought the allegations to the attention of the jury, potentially inviting assumptions of molestation and incest.

Movant fails to support this claim by showing evidence available to and usable by trial counsel to impeach Movant's ex-wife.

Moreover, even had counsel successfully impeached Movant's ex-wife on some or all of these points, the undersigned cannot find a reasonable probability that the outcome of the proceeding would have been different.  Her testimony was of little consequence in the proceeding, providing little more than affirmation that the laptop and cellular wifi belonged to Movant (which Movant does not deny) (CR Doc. 111, R.T. 11/17/10 at 229; CR Doc. 112, R.T. 11/18/10 at  247-249), that the thumbdrives and CD discs belonged to Movant and had his handwriting on them (CR Doc. 112, R.T. 11/18/10 at 250-255), and that there had been fictional stories in the home but they did not belong to her (*id.* at 256) (which Movant does not deny).  There was other substantial evidence tying Movant to the thumbdrives and CD discs, *e.g.* the trace evidence on the computers, the "stories" and their connections to Movant, and the evidence of Movant's access to the Dreamzone website.

Accordingly, Movant has failed to support this claim of ineffective assistance.

**i.  Summary re Ground 5**  - Movant's Ground Five is based on  the contention that trial counsel was ineffective in failing to present various evidence.  For the reasons discussed hereinabove, Movant has failed to show ineffective assistance, and Ground 5 is without merit.

/ /

/ /

### 6.  Ground 6: Ineffective Assistance re Probation Officer Interview

In his Ground 6, Movant asserts that trial counsel was ineffective because counsel failed to have the presentence report corrected and refused to let the probation officer interview Movant, members of Movant's family, or any of Movant's friends. Respondent argues that Movant fails to show that such interviews would have altered the sentence, and that the record indicates that Movant was provided an opportunity to be interviewed, but declined.  (Response, Doc. 15 at 27-28.)  Movant replies that defense counsel declined the interview, and that an interview would have permitted him to review the presentence report and there were various inaccuracies in the report.  (Reply, Doc. 21 at 19-23.)

**Errors in Presentence Report** – Movant complains that counsel failed to correct errors in the presentence report.  In particular, Movant asserts issues  concerning: (1) false allegations of an incestuous affair between Movant and his daughter; (2) false allegations that Movant molested his daughter and was arrested for it; (3) an erroneous alias; (4) an error in Movant's date of birth and social security number; (5) multiple references to the same grand theft auto offense for which he was released; (6) multiple references to the same offense of interstate transportation of a stolen vehicle; (7) multiple references to the same assault charge; (8) false allegations of forcible rape by a girl he dated; (9) a failure to appear arrest resulting from various circumstances.

Here, Petitioner was given a sentence "at the bottom of the guidelines." (CR Doc. 114, R.T. 3/14/11 at 11.)   Moreover, he was classified by the Court as having a criminal history category of I, the result of a finding of 0 criminal history points.  (*Id.* at 6; Presentence Report, Doc. 28 at 11.)   *See* Federal Sentencing Guidelines Manual 5A, Sentencing Table.  In sentencing him, the Court considered  "hundreds of photographs and videos" depicting child pornography in Movant's possession, that they were purchased perpetuating the market in them, the addictive fixation on sexual abuse of children reflected in the stories written by Movant, Movant's failure to accept responsibility, and (to Movant's advantage) the incidental nature of the interstate

1    transportation.  (CR Doc. 114, R.T. 3/14/11 at 10-12.)

2          Movant sought a variance or departure based upon his age and ill health, which

3    the Court rejected.  (*Id.* at  5-6.)

4          Movant complains that there were multiple references in the presentence report to

5    various convictions or arrests. That is true. (*See* Presentence Report, Doc. 28 at 11-13,

6    19.)  However, the Report also concluded that none of those were "scoreable," and relied

7    upon them only to note that they were "concerning" because they involved allegations of

8    "crimes of violence," *e.g.* false imprisonment, assault, aggravated battery, rape under

9    threat of harm, assault to commit rape/robbery, etc.  (*Id.* at 19.)

10         To the extent that Movant contends that his participation in the interview would

11   have corrected false allegations concerning incest, rape of his girlfriend, etc.  Movant

12   proffers nothing to suggest that he had anything to provide the probation officer other

13   than his denials to counter the allegations, and fails to proffer anything to show that the

14   outcome would have been different had he provided those denials.

15         Moreover, there is no indication that the Court considered any allegations of (1)

16   incest, (2) molestation, (3) forcible rape, or any of the (5), (8) arrests not leading to

17   convictions, or any of the (6), (7), (9) prior convictions.  There is no indication the Court

18   considered, nor would there be any reason for the Court to have considered or been

19   swayed by the errors in (3) an alias, or (4) Movant's date of birth or social security

20   number. Movant proffers no suggestion how this would have altered the outcome. As

21   noted, the sentence given to Movant was at the bottom of the guidelines.   The

22   undersigned cannot find a reasonable probability that had Movant proffered his denials

23   and corrections on these various disputed issues that he would have received something

24   less than the bottom of the guidelines.

25         Thus, even had counsel objected to these matters and obtained corrections, there

26   is not a reasonable probability that Movant's sentence would have been altered.

27         **Failure to Permit Interviews**  - Movant's argument concerning the interview is

28   in two disparate veins.  The first relates to the interviews themselves.  The second relates

42

to the review of the presentence report.

With regard to the interviews themselves, with one exception, Movant fails to proffer any information he, his family, or his friends would have provided the probation officer that would have altered his sentence.[7]  This portion of the argument is conclusory and without merit.

Moreover, with respect to Movant, as argued by Respondents, there was a real risk that Movant's lack of acceptance of responsibility and/or remorse could have resulted in a worse outcome. *See U.S. v. Herrera-Figueroa*, 918 F.2d 1430, 1434-1435 (9th Cir. 1990).   Moreover, "[i]n conducting the presentence interview, the probation officer is entitled to seek information regarding [allegedly criminal conduct of which the defendant has not been convicted], which information, if inculpatory, may provide the basis for a significant increase in his sentence."  *Id.* at 1435.  Here the prosecution was prepared to present evidence of substantial uncharged conduct.   The prosecution made a record at trial of the additional conduct that they were prepared to offer on rebuttal if Petitioner testified:

> MR. DOKKEN: We've subsequently acquired information from Dreamzone which we would bring in rebuttal, and we do have a rebuttal witness here.
> THE COURT: Right, that was mentioned yesterday morning.
> MR. DOKKEN: With all of the matches, and it matches stuff that we found on the search warrant with M & I Bank, that that was in fact his bank and that was entered with Dreamzone.  All of his personal information would match, and of course that would open the door.
> Additionally, we've done -- we had done additional analysis and we found 7500 images on the one thumb drive and we found a whole lot more sites that he had gone to, and they all have very bad names that make them obvious they're child porn sites, and they're on his computer. I've shown counsel that.
> I've shown the 32 days that he's used that computer to access Dreamzone, and that all of course would be fair game for me to ask on cross-examination. And I showed her what I was planning on asking.

---

[7] Movant argues that the alleged misinformation in the PSR was damaging to his family. The *Strickland* standard is not met by any showing of harm, but rather only by a showing that the outcome of the proceeding was affected.   However unfortunate any such collateral harm might be, it does not provide a basis for a finding of ineffective assistance.

1   (CR Doc. 112, R.T. 11/18/10 at 402.)   For those reasons, counsel could have made a

2   strategic decision to not have Movant meet with the probation officer.

3         Movant does contend that had his daughters been interviewed, they would have

4   countered assertions that Movant had molested them.  Assuming the probation officer

5   and/or the Court would have found such denials credible, there is no indication that this

6   would have altered the outcome of the proceeding.   As noted above, the allegations of

7   molestation were not relied upon by the Court in sentencing Movant.

8         The second part of Movant's argument is that if he had been allowed to go to the

9   interview, he would have been able to correct various errors in the presentence report.

10   However, as discussed hereinabove, Movant has failed to show that those errors affected

11   the outcome of the proceeding.  Moreover, as discussed hereinabove, the risks of such an

12   interview were strong support for strategic decisions to deny the interview.   Further,

13   there was no reason to encounter those risks, given the fact that the report was available

14   to Movant and to counsel, and they were entitled to object to any inaccuracies.  *See* Fed.

15   R. Crim. P. 32(f).

16         To be sure, Movant asserts in his Reply that he never received the report from the

17   probation officer or defense counsel, and never reviewed the report with counsel.

18   (Reply, Doc. 21 at 19-20.)   However, counsel represented to the Court that she had

19   reviewed the presentence report with Movant.   (CR Doc. 114, R.T. 3/14/11 at 3.)

20   Movant did not counter that representation.   When later asked whether he had anything

21   he would like to say, Movant responded "No, sir."   (*Id.* at 8.)   Further, Movant made

22   explicit references to the "Probation Report" in his pre-sentencing letter to the trial court,

23   including referencing the allegations of molestation.  (CR Doc. 96 at 2.) The undersigned

24   finds the latter convincing evidence that Movant had reviewed the report at the time of

25   trial.

26         Ground 6 is without merit, and should be denied.

27   //

28   //

44

**7.  Ground 7: Ineffective Assistance re Evidence of Third Party**

In his Ground 7, Movant argues that counsel was ineffective by failing to (a) present evidence from the forensic expert that someone else could have committed the crime.  (Motion, Doc. 1 at 11.)  Movant further argues counsel failed to:  (b) pursue discovery and disclosures from the prosecution (Memorandum, Doc. 24 at 19); (c) investigate whether another person authored the "stories" (*id.*); (d) object to the "stories" (*id.* at 20); (e) failing to call witnesses for the defense (*id.*); (f) present a defense (*id.*); (g) investigate information that Movant did not own a computer until May 2008, that the other computers were clean, and available for others to use, and that program used to write the stories was not on his computer (*id.* at 20-21); (h) show that the computers could not have been placed on the bottom bunk of the truck (*id.* at 21); (i) impeach the government's witnesses (*id.*); and (j) object to references to his ex-wife as such at trial even though they remained married (*id.* at 22).

Respondents argue that Movant is simply disagreeing with counsel's trial strategy, and the strategy was reasonable, and the outcome at trial would not have been altered.  (Response, Doc. 15 at 28-30.)

Movant replies by arguing the merits of his claims and by asserting additional failures of counsel (e.g. to present bank statements showing illegal activity on account, to impeach his ex-wife, to impeach Agent Shrable, to pursue undisclosed handwritten stories, to present evidence of the disappearance of his ex-wife's brother, to have the jury instructed on his theory of defense etc.).  The undersigned does not reach the purported deficiencies of counsel raised for the first time in the reply. "The district court need not consider arguments raised for the first time in a reply brief." *Zamani v. Carnes*, 491 F.3d 990, 997 (9th Cir. 2007).

**Unsupported Allegations** - Movant fails to support most of his allegations.  He fails to (a) identify what evidence from the forensic examiner would have been exculpatory.  Moreover, the report of the forensic examiner indicates her testimony would have served to substantiate most of the prosecution's forensic evidence, giving

1  counsel a strategic reason to decline to call her.

2  He fails to suggest (b) what additional discovery or disclosures from the

3  prosecution would have provided to assist in his defense.

4  He fails to suggest (c) what additional investigation could have been done to

5  establish that someone else authored the "stories."

6  He fails to suggest (g) what other information was available to show that Movant

7  did not own a computer until May 2008.  He does reference the manufacture date, etc. of

8  the laptop seized from his truck.  That would not however, preclude Movant from having

9  owned a different computer in the past.  For that matter, Movant was not required to own

10  a computer to have downloaded the child pornography.  Similarly, the absence of the

11  WordPerfect program from the computers seized does not establish that he did not have

12  access to a different computer in the past which had the software available, or that he did

13  not have access to a computer capable of saving the documents in a WordPerfect format.

14  Movant fails to suggest who could have testified (h) that the computers could not

15  have been placed on the bottom bunk of the truck.   At best, Movant suggests that it was

16  not his practice to place them there.  That would not have precluded them from having

17  been placed there at the time of seizure.  To the extent that Movant could have testified

18  as to this practice, for the reasons discussed hereinabove, counsel had valid strategic

19  reasons to not call Movant to testify.

20  Moreover, there is not a reasonable probability that this evidence would have

21  altered the outcome.  Movant does not suggest that the computers were not his and his

22  wife's, merely that they were found in an unexpected location.  Perhaps, if the only place

23  evidence of child pornography had been found was on these laptops, there might be

24  some persuasive effect to showing the unusual placement.   Given all the other

25  connections pointing to Movant, there is no reasonable probability that the outcome

26  would have been changed.

27  Finally, Movant fails to suggest any prejudice from counsel's failure to object to

28  references to his ex-wife as such at trial even though they remained married.  Movant's

46

marital status was not an issue in the case, and his ex-wife testified that she had filed for an annulment and the matter was still pending.  (CR Doc. 112, R.T. 11/18/10 at 259, 260.)

**Repetitive Allegations** – The balance of the allegations in Ground 7 are repetitive.

His allegations concerning (d) objections to the "stories" is without merit.  As discussed hereinabove in connection with the related Ground 3(b), arguing counsel was ineffective in failing to assert a claim of prosecutorial misconduct in relation to the "stories," counsel did object to their introduction.  Movant fails to show what additional arguments could have been raised.

His allegations regarding (e) failing to call witnesses for the defense is without merit.  As discussed hereinabove in connection with the related Ground 5(a), arguing counsel was ineffective in failing to present evidence that others had access to the computers, the witnesses proposed by Movant could provide little assistance beyond denying their own culpability, and counsel had valid strategic reasons for not calling them.

Movant's allegation that counsel (f) failed to present a defense is without merit.  Counsel asserted a variety of procedural defenses, including a motion to suppress, and opposing the introduction of various evidence, and cross-examining witnesses in an attempt to convince the jury that the government could not prove its case beyond a reasonable doubt.   While complete failure to defend a criminal case is ineffective assistance, the constitution does not require counsel to manufacture a defense where none exists.  *See U.S. v. Hamilton*, 792 F.2d 837 (9th Cir. 1986).  "The sixth amendment does not require counsel to invent a defense."  *Haynes v. Cain*, 272 F.3d 757, 764 (5th Cir. 2001), *rehr'g granted on other grounds*, 284 F.3d 604 (5th Cir. 2002).

> In many cases, the law and facts will be so overwhelmingly in favor of the government that defense counsel can do little more than try to poke holes in the government's case in cross-examination. The hopelessness of some cases may even relegate the most competent defense counsel to the role of official hand-holder. The Sixth

> Amendment does not hold an attorney responsible for the difficulty of the case he inherits. The choice to pursue a bad strategy makes no comment on an attorney's judgment where no better choice exists.

*Hendricks v. Calderon*, 70 F.3d 1032, 1042 (9th Cir. 1995).

Movant's arguments that (g) counsel failed to show that the other computers were clean, and available for others to use is without merit for the reasons discussed hereinabove in connection with Grounds 5(a), (b), (c), and (d).

Movant's allegations that counsel (i) failed to adequately impeach the government's witnesses is without merit for the reasons discussed hereinabove in connection with Grounds 3(d) (prosecutorial misconduct re perjured testimony) and 5(i) (impeachment of ex-wife).

For the foregoing reasons, Ground 7 is without merit and should be denied.


**8.  Ground 8:  Ineffectiveness Re New Counsel And Sentence**

Liberally construed, in his Ground 8, Movant argues that "counsel" was ineffective for: (a) failing to object to the abuse of discretion in refusing to provide new counsel; (b) failing to object to a conviction for the greater and lesser included offenses (Motion, Doc. 1 at 12); and (c) failing to object to the imposition of multiple special assessment fees despite the decision to impose concurrent sentences (Memorandum, Doc. 24 at 24-25.)

Respondent argues that the claim is really an assertion that the trial court abused its discretion in denying new counsel and that such claims should have been raised on direct appeal and are now procedurally defaulted.  Respondent further argues that the procedural default is not excused by an ineffectiveness of appellate counsel in failing to bring the claim, because the claim is without merit.  Finally, Respondent argues that the request for new counsel would have been without merit and defense counsel performed adequately and Movant fails to show any prejudice.  (Response, Doc. 15 at 30-32.)

In his Reply, Movant reiterates that his claim is one of ineffective assistance, and argues the merits of his request for new counsel.

48

Movant also asserts new claims in his reply regarding: failure to object to the admission of the "stories," and failure to object to his wife testifying against him before the termination of their marriage.  (Reply, Doc. 21 at 29-30.)  The undersigned does not reach these purported deficiencies of counsel raised for the first time in the reply.  *See Zamani v. Carnes*, 491 F.3d 990, 997 (9th Cir. 2007).

**Procedural Default** – Respondent argues that Ground 8 is procedurally defaulted.  That argument is based upon a characterization of the claim as a direct attack on the denial of new counsel.  The Court's service Order did construe Ground 8 as asserting that the trial court "abused its discretion."  (Doc. 4 at 2.)  However, upon evaluation of the Motion to Vacate in light of the Reply (Doc. 21), it is clear that Movant intends to assert a claim of  "Ineffective Assistance of Counsel for failing to Show Abuse of Discretion by the Court." (Reply, Doc. 21 at 27.)   A claim of ineffective assistance is properly brought in the first instance in a motion to vacate pursuant to 28 U.S.C. § 2255, rather than on direct appeal. *See United States v. Pope*, 841 F.2d 954, 958 (9th Cir.1988); *Massaro v. U.S.*, 538 U.S. 500, 509 (2003) ("failure to raise an ineffective-assistance-of-counsel claim on direct appeal does not bar the claim from being brought in a later, appropriate proceeding under § 2255").  Accordingly, the undersigned concludes that Ground 8 is not procedurally defaulted.

Of course, to the extent that Movant might have intended to assert direct challenges on these decisions of the trial court, the claims would be procedurally defaulted for failing to raise them on direct appeal.   The general rule is "that claims not raised on direct appeal may not be raised on collateral review unless the petitioner shows cause and prejudice."  *Massaro v. U.S.*, 538 U.S. 500, 504 (2003).  Thus, a section 2255 movant raising a claim for the first time in post-conviction proceedings is in procedural default, and is precluded from asserting the claim.  *Bousley v. U.S.*, 523 U.S. 614, 621 (1998) (finding default where petitioner challenging his guilty plea did not raise claim in direct appeal); *United States v. Frady*, 456 U.S. 152, 165 (1982) (noting that a motion to vacate or modify a sentence under 28 U.S.C. § 2255 cannot be used as a substitute for a

direct appeal). "Where a defendant has procedurally defaulted a claim by failing to raise it on direct review, the claim may be raised in habeas only if the defendant can first demonstrate either 'cause' and actual 'prejudice,' or that he is 'actually innocent'." *Bousley*, 523 U.S at 622 (citations omitted).   Ineffective assistance of counsel may constitute cause for failing to properly exhaust claims in state courts and excuse procedural default.  *Ortiz v. Stewart*, 149 F.3d 923, 932, (9th Cir. 1998).

To the extent that Movant intended to assert the ineffective assistance of appellate counsel as cause to excuse his failure to present the claims on direct appeal, because the underlying substantive claims are without merit (for the reasons discussed hereinafter), the undersigned could not find that appellate counsel performed deficiently in failing to raise the claims, and could not find prejudice, either to support the prejudice component of the claim of ineffective assistance of appellate counsel, or to support the prejudice component of the assertion of "cause and prejudice," to excuse the procedural default.

**a.  8(a): IAC re New Counsel** – In part (a), Movant argues that counsel was ineffective for failing to object to the denial of new counsel.  Movant argues that there was a breakdown of communications and trust between Movant and trial counsel.  As evidence of that breakdown, Movant points to counsel's failure to investigate and failure to call witnesses.  To sustain this claim, Movant must show not only the trial counsel was obligated to take some action in support of Movant's request for new trial, but that Movant was prejudiced from trial counsel's failure to do so.

Movant does not show that trial counsel performed deficiently at the time of the request for new counsel.  For example, Movant does not suggest what other arguments should have been made, or how they would have altered the outcome of the proceeding. To be sure, Movant argues that the trial court wrongly rejected the request, but he does not assert that the trial court was not armed with the requisite facts or law to address the issue.  To the contrary, he asserts that the trial court held a hearing and had "knowledge that [trial counsel] was no[t] investigating nor was she going to be calling witnesses."

(Memorandum, Doc. 24 at 23.)

Nor does Movant show prejudice from any purported deficiency.[8]   Movant's various claims of deficient performance by trial counsel are addressed throughout this Report & Recommendation.   Movant has failed to show that trial counsel rendered ineffective assistance.   Thus, there is no basis to conclude that had counsel been effective in having herself replaced, that new counsel would have obtained a better result.

**b.  8(b): IAC re Lesser Included Offenses** – In his Ground 8(b), Movant argues that trial counsel was ineffective in failing to challenge his conviction for lessor included offenses and the greater offense.   This is the same argument raised in Ground 2, and for the reasons discussed hereinabove, the claim is without merit.

**c.  8(c): IAC re Special Assessments** – Finally, Movant argues that trial counsel was ineffective for failing to challenge the trial court's imposition of separate special assessments while imposing concurrent sentences.

Here, the judgment against Movant assessed $600 in special assessments against Movant.   (CR Doc. 97 at 1.)   Under 18 U.S.C. § 3103(a)(2)(A), the Court was required to assess $100 for *each* felony offense.   *See U.S. v. Luongo*, 11 F.3d 7, 10 (1st Cir. 1993).

Still, Movant cites a series of cases where the courts found prejudice because (although the defendant was sentenced to concurrent sentences) multiple special assessments were levied. (Memorandum, Doc. 24 at 24.)

The first set of cases involve double jeopardy violations, in which the multiple special assessments established the multiple punishments despite concurrent prison sentences. *See e.g. U.S. v. Robertson*, 606 F.3d 943 (8th Cir. 2010) (requirement of

---

[8] A direct challenge to the denial of a request for new counsel would be based upon an abuse of discretion standard, considering " (1) the timeliness of the motion; (2) the adequacy of the district court's inquiry; and (3) whether the asserted conflict was so great as to result in a complete breakdown in communication and a consequent inability to present a defense." *U.S. v. Mendez-Sanchez*, 563 F.3d 935, 942 (9th Cir. 2009).  Here, however, Movant's claim is presented as one of ineffective assistance, making *Strickland's* requirement of a different outcome the requisite standard.

prejudice when applying plain error review of double jeopardy claim met by multiple special assessments); *U.S. v. Christner*, 66 F.3d 922 (8th Cir. 1996) (same); *U.S. v. Grubbs*, 829 F.2d 18 (8th Cir. 1987) (same).  *See also Rutledge v. U.S.*, 517 U.S. 292 (1996) (multiple special assessments amounted to double punishment for double jeopardy purposes).  Here, however, for the reasons discussed hereinabove in connection with Ground 2, Movant fails to make out a double jeopardy violation, not because of the lack of multiple punishments, but because the offenses are separate offenses.  Thus these double jeopardy cases are inapposite.

The second type of case cited by Movant involved the "concurrent sentence doctrine."

> Where the conviction on one count is found to be valid by the appellate court, or is not challenged on appeal, the court may decline to address issues directed only to the other counts. The court could summarily affirm if a ruling in defendant's favor would not reduce the length of a defendant's entire sentence or the amount of a fine or otherwise prevent some prejudice to the defendant. This is the so-called "Concurrent Sentence Doctrine."

1 Federal Criminal Appeals § 3:54.  *See Ray v. U.S.*, 481 U.S. 736 (1987) (concurrent sentence doctrine inapplicable because of multiple special assessments).  Here, however, Movant has not been denied review of a particular conviction based upon his having received concurrent sentences.  Accordingly, *Ray* is inapposite.

In sum, none of the cases cited by Movant preclude the imposition of multiple special assessments where, as here, the defendant has been properly convicted of multiple offenses.  Accordingly, Movant has failed to show a viable challenge to the multiple special assessments which counsel could have asserted.

**9,  Summary**

For the reasons set forth hereinabove, Movant has failed to provide any ground for relief.  Accordingly, the Motion to Vacate must be denied.

//

//

## IV.  CERTIFICATE OF APPEALABILITY

**Ruling Required** - Rule 11(a), Rules Governing Section 2255 Cases, requires that in habeas cases the "district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."  Such certificates are required in cases concerning detention arising "out of process issued by a State court", or in a proceeding under 28 U.S.C. § 2255 attacking a federal criminal judgment or sentence. 28 U.S.C. § 2253(c)(1).

Here, the Motion to Vacate is brought pursuant to 28 U.S.C. § 2255.  The recommendations if accepted will result in Movant's Motion to Vacate being resolved adversely to Movant.  Accordingly, a decision on a certificate of Appealability is required.

**Applicable Standards** - The standard for issuing a certificate of appealability ("COA") is whether the applicant has "made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).  "Where a district court has rejected the constitutional claims on the merits, the showing required to satisfy § 2253(c) is straightforward: The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."  *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).  "When the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a COA should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Id.*

**Standard Not Met** - Assuming the recommendations herein are followed in the district court's judgment, that decision will be on the merits. Under the reasoning set forth herein, the claims are plainly without merit.

Accordingly, to the extent that the Court adopts this Report & Recommendation as to the Motion to Vacate, a certificate of appealability should be denied.

## V.  RECOMMENDATION

**IT IS THEREFORE RECOMMENDED** that the Movant's Motion to Vacate, Set Aside or Correct Sentence pursuant to 28 U.S.C. § 2255, filed July 29, 2013 (Doc. 1) be **DENIED**.

**IT IS FURTHER RECOMMENDED** that, to the extent the foregoing findings and recommendations are adopted in the District Court's order, a Certificate of Appealability be **DENIED**.

## VI. EFFECT OF RECOMMENDATION

This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals.  Any notice of appeal pursuant to *Rule 4(a)(1), Federal Rules of Appellate Procedure*, should not be filed until entry of the district court's judgment.

However, pursuant to *Rule 72(b), Federal Rules of Civil Procedure,* the parties shall have fourteen (14) days from the date of service of a copy of this recommendation within which to file specific written objections with the Court.  *See also* Rule 10, Rules Governing Section 2255 Proceedings. Thereafter, the parties have fourteen (14) days within which to file a response to the objections.  Failure to timely file objections to any findings or recommendations of the Magistrate Judge will be considered a waiver of a party's right to *de novo* consideration of the issues,  *see United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003)(*en banc*),  and will constitute a waiver of a party's right to appellate review of the findings of fact in an order or judgment entered pursuant to the recommendation of the Magistrate Judge, *Robbins v. Carey*, 481 F.3d 1143, 1146-47 (9th Cir. 2007).

Dated: October 31, 2014

13-8199r RR 14 08 04 on HC.docx

_____
James F. Metcalf
United States Magistrate Judge

54